John Balestriere
Craig Stuart Lanza
**BALESTRIERE PLLC**
225 Broadway, Suite 2700
New York, NY 10007
Telephone: 212-374-5404
Email: clanza@balestriere.net
*Attorneys for Plaintiffs*

JUDGE RAKOFF

07 CV 6431

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
INDEGRAPHIC ASSET MANAGEMENT  :
LLC and OLA HOLMSTROM,        :
                              :          __-CV-__
          Plaintiff,          :
                              :
     -against-                :          **COMPLAINT**
                              :
DANIEL ZANGER,                :          **JURY TRIAL DEMANDED**
                              :
          Defendant,          :
-----------------------------------------------------------x

Plaintiffs Independent Asset Management ("IAM"), and Ola Holmstrom ("Holmstrom," collectively, "Plaintiffs"), by their attorneys, John Balestriere and Craig Stuart Lanza of Balestriere PLLC, complaining of the Defendant, respectfully allege as follows:

### NATURE OF THE CASE

1.  Defendant Daniel Zanger accepted the responsibility to act as a fiduciary when he became involved in a joint venture with IAM. During the course of his partnership with IAM, Zanger breached his contract with IAM over 125 times, acting so recklessly that he greatly damaged IAM's reputation and finances, and squandered

Holmstrom's money. Plaintiffs have been unsuccessful in receiving any compensation for these damages in the negotiations they've had with Zanger, through his attorney, and are thus forced to bring this lawsuit.

## PARTIES

2.  Plaintiff IAM is the trading manager for The Independent Fund Limited ("IFL"), a Bermuda-based hedge fund. IAM is a Delaware LLC and a citizen of the United States and the State of Delaware.

3.  Plaintiff Ola Holmstrom is a minor equity holder of IAM and former investor in IFL and is a citizen of Sweden.

4.  Defendant Daniel Zanger is a multi-millionaire and former trader for IAM and IFL and a citizen of the United States and the State of California.

## JURISDICTION AND VENUE

5.  This Court has subject matter over this case under 28 U.S.C. §§ 1332(a)(1)-(2) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the parties are diverse since Plaintiff IAM is a citizen of Connecticut and Delaware, Plaintiff Holmstrom is a citizen of Sweden, and Defendant is a citizen of California. This Court may properly exercise personal jurisdiction over the parties, because Plaintiffs submit to the jurisdiction of this Court and Defendant has purposefully availed himself of the benefits and protections of the laws of the State of New York.

6.  Specifically, Defendant has submitted himself to jurisdiction in this district by signing in New York City the contract between him and IAM (the

"Agreement"), out of which this dispute arises. Additionally, Defendant has systematic and continuous contact with the State of New York because he spends substantial periods of time in the State for both business and personal activities.

7. Venue is properly laid in the Southern District of New York, under 28 U.S.C. §1391(a)(2), since the claims arose in this District.

## FACTS

8. IAM, established on February 16, 2001, is the trading manager for IFL, a fund registered with the Bermuda Monetary Authority.

9. A trading manager, also known as an investment manager, is a domestic corporate entity which manages the assets of an internationally-based fund.

10. On October 19, 2004, Defendant entered into the Agreement with IAM. The contract was the result of previous negotiations between Defendant and IAM. The contract required that Defendant deposit between $5 million and $50 million into IFL for a term of five years.

11. It was expressly understood between IAM and Defendant that Defendant would keep at least $5 million in IFL at all times.

12. Because IAM was an experienced hedge fund marketer and manager and Defendant was in need of an existing offshore vehicle and someone to help market him as a trader, the parties agreed to a joint-venture between IAM and Defendant where Defendant would invest his own money in IFL and then manage that money. IAM and Defendant would then use Defendant's performance in IFL as a means of marketing Defendant.

13. As compensation for the marketing and management efforts, IAM would receive 50% of the Management fee from IFL and 25% of the Performance Fee.

14. The Management Fee is the amount a Hedge Fund manager, such as IAM, receives annually as compensation for managing the fund. In this case, the Management Fee was 2% of the value of assets under management ("AUM"). IAM was therefore entitled to an annual fee equal to 1% of IFL's AUM.

15. The Performance Fee is the amount a hedge fund manager is paid based on the performance of the fund. In this case, the Performance Fee was 20% of all returns of the fund. Thus, IAM was entitled to 5% of all returns of the fund.

16. Because Defendant had a reputation as a volatile trader, IAM needed several assurances that Defendant would trade responsibly. Defendant agreed to these assurances. The agreement expressly outlined Defendant's obligations regarding the rules and regulations of any exchanges, governments, or financial service providers which IFL dealt with. In addition, Defendant agreed, among other points, that he would have a limited amount of drawdowns and no margin calls and not engage in high risk trading.

17. A drawdown is an unrealized or realized loss which is calculated as a fund's decline from its historical peak. It is commonly used in the world of trading as an indicator of risk.

18. A margin call occurs when an investor has borrowed money to buy stocks and the value of the stocks falls below a pre-agreed upon amount. It is considered very negative and usually occurs because of over-aggressive investing.

19. Immediately after execution of the agreement, it became clear that Defendant was unwilling to honor his promises. Defendant only deposited the minimum amount of $5 million into the account, and then began to manage the account in a very aggressive and very volatile manner. This soon led to significant losses.

20. Despite many attempts, due to Defendant's poor performance IAM was only able to find one investor. On March 1, 2006, Holmstrom invested $500,000 in IFL based on the marketing efforts of IAM.

21. Very early on, Defendant began to complain of the terms of the deal, accusing IAM of "making money" off of Defendant. These exchanges are well documented in transcripts of instant messenger communications. Defendant did not seem to believe that IAM's constant attempts at finding investors and managing the fund deserved remuneration.

22. Defendant then induced over 125 margin calls, each of which was a direct violation of his agreement with IAM.

23. Defendant constantly ran afoul of the requirements of the agreement and the exchange he was trading on.

24. Initially, Defendant covered his not permitted margin calls by electronically transferring or "wiring" his own money to cover the call. However, the manner in which Defendant wired the money was inconsistent with the rules of the broker and fund administrator, providing another violation of the Agreement. As such, Defendant's wires were treated as additional subscriptions of IFL and when Defendant attempted to take the additional money out of the fund, his withdrawals were treated as

redemptions and Defendant was required to wait three to four weeks before he could receive the money.

25. On November 16 and December 7, 2006, Defendant created large day trading violations. Defendant intentionally refused to cover the margin call stating, "No more three to four week waits." (see Exhibit B). Because Defendant refused to cover the margin call, IFL was required to trade on a cash-only basis and the entire fund was effectively shut down.

26. Since IFL had effectively ceased operations, Defendant was allowed to redeem his shares. Thus, by engaging in further misconduct by refusing to cover the large margin call, Defendant was able to escape a five year contract in only two years.

27. As a result of Defendant's actions, Ola Holmstrom lost about 34% of his investment or about $170,000. IAM is estimating conservatively 6-8 million dollars in revenue lost and lost opportunities, and in conjunction with debt and other obligations which now cannot be handled for lack of revenues from the 5 year deal.

## COUNT I – BREACH OF FIDUCIARY DUTY
## (BROUGHT BY IAM AGAINST DEFENDANT)

28. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 27 of this Complaint as if fully set forth herein.

29. Defendant breached his fiduciary duty to IAM by intentionally refusing to cover the deficit of a margin call that had been caused by Defendant himself. Defendant's breach of fiduciary duty caused IAM to incur debts and other damages as a result of the fact that IFL had been effectively shut down.

## COUNT II – UNJUST ENRICHMENT
## (BROUGHT BY IAM AGAINST DEFENDANT)

30. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31. IAM provided Defendant with its management and marketing expertise in exchange for which IAM was to receive remuneration through IFL. By effectively destroying IFL, Defendant denied IAM any opportunity to be repaid.

## COUNT III – BREACH OF CONTRACT
## (BROUGH BY IAM AGAINST DEFENDANT)

32. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33. Defendant breached his contract with IAM 125 times by recklessly causing margin calls and by intentionally refusing to cover the final day trading violation margin call of $2.85 million. IAM was damaged in multiple ways by Defendant's final uncovered margin call which shut down the fund. As a result, IAM was denied the opportunity to receive the benefit of five years' worth of Management Fees and Performance Fees of the fund, based on a minimum AUM of $5 million.

## COUNT IV – PROMISSORY ESTOPPEL
## (BROUGHT BY IAM AGAINST DEFENDANT)

34. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35. Defendant made a clear and definite promise to IAM that he would keep his investment in the fund for a minimum of five years.

36. IAM justifiably relied on this promise to its detriment by taking on debt in anticipation of Defendant's five year commitment to the fund.

37. IAM's reliance was of a substantial and definite character.

38. Enforcement of Defendant's promise is in the best interest of justice.

39. IAM was damaged by its reliance on Defendant's promise.

## COUNT V – BREACH OF FIDUCIARY DUTY
## (BROUGHT BY HOLMSTROM AGAINST DEFENDANT)

40. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41. Defendant breached his fiduciary duty to Ola Holmstrom. Defendant was a manager of Ola Holmstrom's funds in IFL. Defendant placed his own interests first by refusing to cover the 125th margin call that Defendant recklessly created. As a result of Defendant's actions, Holmstrom suffered damages in the amount of approximately $170,000 dollars.

## COUNT VI – TORTIOUS INTERFERENCE
## (BROUGHT BY HOLMSTROM AGAINST DEFENDANT)

42. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43. There existed an understanding between IAM and IFL and Holmstrom, of which Defendant was aware, whereby Holmstrom agreed to provide IFL with $500,000 based on the understanding that the funds would be managed less aggressively.

44. Because of Defendant's aggressive trading, IAM was in breach of its agreement with Holmstrom to manage his investments in a less aggressive manner.

45. Defendant's behavior tortiously interfered with the contract between IAM and Holmstrom, forcing IAM to breach against Holmstrom and resulting in damages to him in the amount of $170,000 dollars.

**WHEREFORE**, Plaintiff prays that this Court enter judgment against Defendant as follows:

(a) awarding compensatory damages on Counts I, II, III, and IV in an amount to be determined at trial;

(b) awarding compensatory damages on Counts V and VI in an amount to be determined at trial but not less than the $170,000 of damages which Holmstrom suffered from Defendant's misconduct;

(c) awarding punitive damages on Counts I-VI in an amount to be determined at trial;

(d) awarding attorney's fees and costs incurred by Plaintiffs in bringing this lawsuit as a result of Defendant's deliberate breaches of fiduciary duty, breaches of contract, and tortious interference with contract; and

(e) granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
July 16, 2007

By: _____
John Balestriere
Craig Stuart Lanza
**BALESTRIERE PLLC**
225 Broadway
Suite 2700
New York, NY 10007
Telephone 212-374-5404
Email:clanza@balestriere.net

10

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern District of New York

INDEPENDENT ASSET MANAGEMENT LLC
and OLA HOLMSTROM

V.

DANIEL ZANGER

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER: 07 CV 6431

JUDGE RAKOFF

TO: (Name and address of Defendant)

Daniel Zanger
21814 San Miguel Street
Woodland Hills, CA 91364

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

John Balestriere
Craig Stuart Lanza
BALESTRIERE PLLC
225 Broadway, Suite 2700
New York, NY 10007
Telephone: 212-374-5404
Email: clanza@balestriere.net

an answer to the complaint which is served on you with this summons, within ___sixty (60)___ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

(By) DEPUTY CLERK

DATE  JUL 16 2007

AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL $0.00 |

**DECLARATION OF SERVER**

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____  _____
                  Date                      *Signature of Server*

                                          _____
                                          *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Plaintiff _Independent Asset Management UC + Ola Holmstrom_

-v-

and

Defendant _Daniel Zanger_

Case No.

Rule 7.1 Statement

Pursuant to Federal Rule of Civil Procedure 7.1 [formerly Local General Rule 1.9] and to enable District Judges and Magistrate Judges of the Court to evaluate possible disqualification or recusal, the undersigned counsel for _Independent Asset Management_ (a private non-governmental party) certifies that the following are corporate parents, affiliates and/or subsidiaries of said party, which are publicly held.

Date: 7/16/07

Signature of Attorney

Attorney Bar Code:

CL - 2452

Form Rule7_1.pdf