**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- X

INDEPENDENT ASSET MANAGEMENT LLC )    Case No. 1:07-cv-06431-JSR
and OLA HOLMSTROM,                )
                                  )
         Plaintiffs,              )
                                  )    ECF
vs.                               )
                                  )
DANIEL ZANGER,                    )
                                  )
         Defendant.               )
                                  )
                                  )
                                  )
                                  )

--------------------------------------------------------- X


**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO**
**<u>DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND ................................................................................... 3

ARGUMENT ....................................................................................... 5

I.     IAM'S CLAIMS MUST FAIL, AS BREACH OF THE AGREEMENT WAS NOT ALLEGED, AND ITS VERY EXISTENCE PRECLUDES IAM'S OTHER CLAIMS ........................................................................ 5

     A.     IAM Does Not Identify Any Provision Of The Agreement That Has Been Breached By Defendant, And IAM Does Not Allege That It Performed Its Obligations Under The Agreement ........................ 5

     B.     IAM's Claims of Breach of Fiduciary Duty, Unjust Enrichment, And Promissory Estoppel Are Barred As A Matter of Law In That The Relationship Of The Parties Was Governed By The Express Agreement ........................................................................................... 8

          1.     The Claim of Breach of Fiduciary Duty Must Fail, As The Parties' Relationship Was Governed By The Agreement............. 8

          2.     IAM's Claim Based On Promissory Estoppel Must Similarly Fail, As It Is Precluded By The Agreement .................. 9

          3.     IAM's Claim Based On Unjust Enrichment Must Also Fail, As It Is Precluded By The Agreement ........................................ 10

II.     HOLMSTROM'S CLAIMS MUST FAIL, AS NO FACTS THAT WOULD ESTABLISH A FIDUCIARY DUTY OWING BY DEFENDANT TO HOLMSTROM WERE ALLEGED, AND THE ALLEGATIONS IF TRUE WOULD NOT ESTABLISH THAT DEFENDANT WAS A THIRD PARTY LEGALLY CAPABLE OF TORTIOUS INTERFERENCE WITH HOLMSTROM'S ALLEGED CONTRACTUAL RELATIONS WITH IAM ................................................... 11

     A.     Holmstrom Does Not Allege Any Fiduciary Duty Of Defendant To Holmstrom ............................................................................... 11

     B.     Based On The Allegations In The Complaint, Defendant Was Not a Third Party, And Therefore Was Not Legally Capable of Tortious Interference With The Contractual Relations Between Holmstrom and IAM ................................................................... 13

CONCLUSION ....................................................................................... 15

NYI-4023189v2

## TABLE OF AUTHORITIES

**Page**

### CASES

*Albert v. Loksen*, 239 F.3d 256, 274-75 (2d Cir. 2001) ...........................................................13, 14

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) ....................................................1, 2

*Cal Distributor Inc. v. Cadbury Schweppes Americas Beverages, Inc.*, No. 06-CIV-0496-RMB, 2007 WL 54534 at *9 (S.D.N.Y. Jan. 5. 2007)....................................................8,9

*In re Chateaugay Corp.*, 10 F.3d 944, 957-58 (2d Cir. 1993) ......................................................10

*Cohen v. Davis*, 926 F. Supp. 399, 404 (S.D.N.Y. 1996) .........................................................14,15

*Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ...............................5

*Drake v. Laboratory Corp. of America Holdings*, No. 02-CV-1924-FB, 2007 WL 776818 at *3-4 (E.D.N.Y. Mar. 13, 2007) .....................................................................................14

*Fisher v. Offerman & Co., Inc.*, No. 95-CIV-2566-JGK, 1996 WL 563141 at *6 (S.D.N.Y. Oct. 2, 1996) ...............................................................................................7

*Holmes v. Lorch*, 329 F.Supp.2d 516, 527 (S.D.N.Y. 2004) .........................................................9

*Kinsey v. Cendant Corp.*, No. 04-CIV-0582-RWS, 2005 WL 1907678 at *7 (S.D.N.Y. Aug. 10, 2005) ...............................................................................................7

*Manhattan Telecom. Corp., Inc. v. Dialamerica Marketing, Inc.*, 156 F. Supp.2d 376, 383 (S.D.N.Y. 2001) .....................................................................................................5

*Member Services Life Insurance Co. v. American National Bank and Trust Co. of Sapulpa*, 130 F.3d 950, 957 (10th Cir. 1997) ...................................................................11

*Page Mill Asset Management v. Credit Suisse First Boston Corp.*, No. 98-CIV-6907-MBM, 2000 WL 335557 at *10-11 (S.D.N.Y. Mar. 30, 2000) ...................................11, 12

*Regions Bank v. Wieder & Mastroianni, P.C.*, 423 F. Supp.2d 265, 270 (S.D.N.Y. 2006) ..........12

*R.H. Damon & Co., Inc. v. Softkey Software Products, Inc.*, 811 F. Supp. 986, 989-91 (S.D.N.Y. 1993)...............................................................................................................2, 8

*Roselink Investors LLC v. Shenkman*, 386 F.Supp.2d 209, 228 (S.D.N.Y. 2004)........................14

*Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000) ....................................................5

*Thermal Imaging, Inc. v. Sandgrain Securities, Inc.*, 158 F.Supp.2d 335, 343-44
(S.D.N.Y. 2001) ......................................................................................................11, 12

## STATUTES

Fed. R. Civ. P. 12(b)(6).......................................................................................................1, 2

Fed. R. Civ. P. 9(b) ...............................................................................................................7

Defendant Daniel Zanger (the "Defendant") submits this memorandum of law in support of his motion to dismiss the Complaint dated July 16, 2007, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The claims of Independent Asset Management, LLC ("IAM"), the trading manager of a Bermuda based fund called Independent Fund Limited ("IFL"), center on allegations that Defendant breached an agreement between IAM and Defendant to manage the Class Z shares of IFL. Specifically, it is alleged that Defendant breached this agreement by inducing margin calls (in connection with securities acquired via leverage that decreased in value), and that Defendant did not "cover" or repay one of these margin calls with his own personal funds. IAM also asserts that Defendant should be liable under the theories of unjust enrichment and promissory estoppel, and that Defendant breached fiduciary duties owed to it. The claims of Ola Holmstrom ("Holmstrom"), an alleged equity investor in IFL, allege that Defendant violated fiduciary duties that he owed to Holmstrom, and that Defendant tortiously interfered with Holmstrom's investor agreement with IFL. It is conceded that this Court has jurisdiction over these claims, and that New York law should apply.

The Complaint must be dismissed in its entirety for failure to state a claim upon which relief may be granted. For a complaint to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the "[f]actual allegations [contained therein] must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (citations omitted).

IAM has no cause of action against Defendant.  The allegations contained in the Complaint, even if regarded as true for the purposes of this motion,[1] do not establish that Defendant breached the Agreement.  IAM has not pled a breach by the Defendant of any provision of the Agreement.  By the very terms of the Agreement between Defendant and IAM, attached hereto as Exhibit A,[2] Defendant was not precluded from investing on margin, nor was the induction of margin calls precluded under the contract.  Also, the terms of the Agreement posited that Defendant would be liable under the Agreement only in the case of fraud, theft, or gross negligence, and none of these have been pled at all, much less with the level of particularity required to state a cognizable claim.  Still further, the breach of contract claim has been insufficiently pled as a matter of law, as IAM's Complaint does not contain any allegation that IAM performed its own obligations under the contract.

IAM's allegations sounding in breach of fiduciary duty, unjust enrichment, and promissory estoppel must fail as well.  Because there was an express Agreement between Defendant and IAM -- a contract which created and memorialized the full extent of the relationship between the parties -- Defendant did not owe IAM any fiduciary duties separate and apart from the duties and obligations created under the contract, nor can Defendant be liable for unjust enrichment or promissory estoppel.

---

[1] For the purposes of this motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, all allegations contained in the Complaint are assumed to be true. *See Bell Atlantic Corp.*, 127 S.Ct. at 1965.

[2] Although Plaintiffs have neglected to attach the Agreement that serves as the basis of the claim of breach of contract, this Agreement may be submitted by Defendant in connection with its motion under Rule 12(b)(6) as 1) plaintiffs have undisputed notice of the contents of such documents, and 2) such documents are integral to the plaintiff's claim. *See R.H. Damon & Co., Inc. v. Softkey Software Products, Inc.*, 811 F. Supp. 986, 989 (S.D.N.Y. 1993).  Here, it is undisputed that IAM has notice of the Agreement to which it was a party, and nothing is more integral to a breach of contract claim than the contract itself.

Holmstrom has also not sufficiently pled a cause of action against Defendant. Holmstrom does not allege any facts that would establish any fiduciary duties owed to him by Defendant.  There is no allegation that Defendant agreed to manage Holmstrom's funds or was party to an agreement with Holmstrom, or that any relationship of trust and confidence was reposed in Defendant by Holmstrom with reciprocal acceptance.  The factual allegations state that Defendant merely agreed to manage certain funds in IFL, pursuant to an express understanding with IAM.

Holmstrom's claim of tortious interference with Holmstrom's contractual relationship with IAM must also fail.  The allegations in the Complaint on this score solely relate to Defendant's activities pursuant to and within the scope of Defendant's agreement with IAM, and describe Defendant's work within the scope of his agency with IAM in order to fulfill his contractual duties to that entity.  As such, Defendant is not alleged to have been a third party in the context of the business relations between IAM and Holmstrom, and Defendant was therefore legally incapable of tortious interference with the contractual relations between IAM and Holmstrom.[3]

## BACKGROUND

On October 19, 2004, Defendant and IAM entered an agreement (the "Agreement"), whereby IAM granted Defendant the right to manage Class Z shares within IFL upon his purchase of at least $5 million of said Class Z shares.  (Agreement ¶ 1; Exhibit A to Declaration

---

[3]  It should be noted that the simultaneous representation of IAM and Holmstrom by plaintiffs' counsel is rife with potential conflicts, given that this claim is based on a breach of the investor agreement between IAM and Holmstrom.  Under Count VI of the Complaint (tortious interference), it is alleged that "[b]ecause of Defendant's aggressive trading, IAM was in breach of its agreement with Holmstrom to manage his investments in a less aggressive manner." (Compl. ¶ 44).  This statement is remarkable given that IAM and Holmstrom are co-plaintiffs in this action.

of Matthew E. Szwajkowski in Support of Defendant's Motion to Dismiss the Complaint).  In consideration of this management right, IAM was to be allocated 50% of the Management Fee awarded in connection with the capital managed by Zanger in Class Z shares, and 25% of the Performance Fee.  (*Id.* ¶ 2).  As stated in the Complaint, this was a joint venture in which "Defendant would invest his own money in IFL and then manage that money," (Compl. ¶ 12), and the purpose of the arrangement was for IAM and Defendant to "use Defendant's performance in IFL as a means of marketing Defendant."  *Id.*  Additionally, the Complaint alleges, Defendant agreed that he would have a "limited amount of drawdowns" and "no margin calls," and that he would "not engage in high risk trading."  (*Id.* ¶ 16).  Upon execution of the Agreement and pursuant to its terms, Defendant invested $5 million in IFL.  (*Id.* ¶ 19).  On March 1, 2006, Holmstrom invested $500,000 in IFL.  (*Id.* ¶ 20).

The Complaint also alleges that Defendant induced over 125 margin calls, "each of which was a direct violation of his agreement with IAM."  (*Id.* ¶ 22).  Furthermore, it is alleged that the Defendant electronically transferred his personal funds to repay these margin calls, and that these transfers also constituted violations of the Agreement.  (*Id.* ¶ 24).  Lastly, Plaintiffs claim that Defendant engaged in "further misconduct" (*Id.* ¶ 26) when Defendant finally refused to personally repay a margin call (*Id.* ¶ 25), causing IFL to shut down.  *Id.*

## ARGUMENT

I.    **IAM'S CLAIMS MUST FAIL, AS BREACH OF THE AGREEMENT WAS NOT ALLEGED, AND ITS VERY EXISTENCE PRECLUDES IAM'S OTHER CLAIMS**

    A.    **IAM Does Not Identify Any Provision Of The Agreement That Has Been Breached By Defendant, And IAM Does Not Allege That It Performed Its Obligations Under The Agreement**

IAM does not allege the breach of any provision of the Agreement by Defendant.  Also, IAM has not alleged that it has performed its obligations under the Agreement, and thus its claim for breach of contract must be dismissed.

IAM has not alleged an actual breach of the Agreement by Defendant.  For a breach of contract claim to survive, the plaintiff must demonstrate: 1) a contract, 2) performance of the contract by one party, 3) breach by the other party, and 4) damages.  *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245-246 (2d Cir. 2000) (citations omitted).  When determining the rights or obligations of the parties thereto, a proper interpretation of a written contract shall "give effect to the intention of the parties as expressed in the unequivocal language [that] they have employed."  *Id*., at 245 (citations omitted).  Although the Agreement has not been attached to the Complaint, it is of course critical to the breach of contract claim and is "necessarily incorporated in the [Complaint]."  *See Manhattan Telecom. Corp., Inc. v. Dialamerica Marketing, Inc.*, 156 F. Supp.2d 376, 383 (S.D.N.Y. 2001); *see also Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (documents not attached to or expressly incorporated by reference in the Complaint may be submitted by defendants in connection with a 12(b)(6) motion where plaintiffs have actual notice of the contents of such documents and the documents were "relied upon" by plaintiffs when framing the complaint).

Although IAM has enumerated vague and conclusory instances of Defendant's alleged behavior that supposedly displeased IAM, nowhere in the Complaint is Defendant specifically

alleged to have violated an identifiable term of the Agreement.  Indeed, the Complaint does not refer to any contractual language that would support Defendant's alleged non-compliance with his obligations.  First, IAM alleges that Defendant breached the Agreement by inducing over 125 margin calls, "each of which was a direct violation of his agreement with IAM."  (Compl. ¶ 22).  However, the actual and express terms of the Agreement belie IAM's claim that this conduct represents a breach of the Agreement, and in fact contemplate just the opposite -- by expressly permitting the use of margin and leverage by Defendant in his agreed-upon role as manager of the Class Z shares.  The Agreement expressly states that "[l]everage shall be limited to 4 to 1 initially but may be promptly modified as performance results are monitored and as Prime Broker and IAM feel comfortable with strategy."  (Agreement ¶ 1(a)).  In addition, the parties agreed that "higher leverage is perhaps desirable and appropriate for [Defendant] and IAM will make every effort to quickly allow higher leverage limits either through IFL or through IAM's BVI offshore Fund."  *Id.*, ¶ 6.  Thus, contrary to IAM's conclusory allegation that leverage-resultant margin calls *of any kind* constituted a "direct violation" of the Agreement (Compl. ¶ 22, *see also* Compl. ¶ 33), nowhere in the Agreement is there a prohibition on the induction of leverage-resultant margin calls or even any arguably ambiguous language that could possibly be interpreted as such.

The Complaint also alleges that Defendant "engag[ed] in further misconduct by refusing to cover" a margin call with his own personal funds.  (Compl. ¶ 26, *see also* ¶ 33).  Once again, IAM does not point to a specific provision in the Agreement of which this alleged conduct would be violative.  In fact, nothing in the Agreement obligated Defendant to cover any extant or potential margin calls arising as a result of Defendant's trading activities pursuant to the Agreement.

The Complaint goes on to allege that "[d]efendant constantly ran afoul of the requirements of the agreement . . .".  (Compl. ¶ 23).  Such a conclusory, unsupported statement cannot support a cognizable claim for breach of contract.

Thus, even if it is conceded that Defendant engaged in the behaviors complained of, IAM does not point to a single provision of the Agreement that would have been violated by this conduct.  In fact, the plain terms of the Agreement were to the contrary, and expressly permitted Defendant to utilize margin and leverage (while remaining silent on Defendant's alleged duty to cover margin calls with his personal funds).

Furthermore, importantly, the Agreement contains an express provision which states that Defendant is not liable in the absence of "fraud, theft, or gross negligence."[4]  (Agreement ¶ 9). Mere "conclusory allegation[s] that Defendants 'acted recklessly and/or with conscious disregard' [do] not meet the standard required to adequately plead a gross negligence claim." *See Kinsey v. Cendant Corp.,* No. 04-CIV-0582-RWS, 2005 WL 1907678 at *7 (S.D.N.Y. Aug. 10, 2005) (citations omitted).  Similarly, claims of fraud may not be based on "speculation and conclusory allegations."  *See Fisher v. Offerman & Co., Inc.*, No. 95-CIV-2566-JGK, 1996 WL 563141 at *6 (S.D.N.Y. Oct. 2, 1996) (citations omitted); *see also* Fed. R. Civ. P. 9(b) ("[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.")  The Complaint does not contain any allegation that Defendant committed fraud or theft, and since not even "speculative" or "conclusory" allegations are sufficient to state a cognizable claim, it is true *a fortiori* that utter silence as to a claim of fraud or theft does not

---

[4] The provision in question states that "[n]either party will hold, or attempt to hold, the other party liable for any damages or losses suffered as a result of the other party's conduct as contemplated hereunder, except to the extent that such conduct constitutes willful malfeasance, fraud, theft, or gross negligence.  In particular, but without affecting the generality of the preceding, IAM will not hold DZ [Defendant] liable for any trading losses in its accounts, unless due to fraud, theft, or gross negligence of DZ." (Agreement ¶ 9).

adequately plead or allege such a claim.  Also, although the Complaint alleges that Defendant acted "so recklessly that he greatly damaged IAM's reputation and finances," (Compl. ¶ 1), there is no factual basis for the conclusory allegations contained in the Complaint.  In short, IAM must allege a factual basis for "fraud, theft, or gross negligence" on the part of Defendant in order to state a claim for breach of contract in connection with the Agreement, and IAM has not done so.

It should also be noted that in pleading a claim for breach of an express contract, "the complaint must contain some allegation that the plaintiffs actually performed their obligations under the contract."  *See R.H. Damon & Co.*, 811 F. Supp. at 991 (citations omitted).  IAM merely alleges that "Defendant breached his contract with IAM 125 times by recklessly causing margin calls and by intentionally refusing to cover the final day trading violation margin call of $2.85 million," that "IAM was damaged in multiple ways by Defendant's final uncovered margin call which shut down the fund," and that "[a]s a result, IAM was denied the opportunity to receive the benefit of five years' worth of Management Fees and Performance Fees of the fund, based on a minimum AUM of $5 million."  (Compl. ¶ 33).  Nowhere is it alleged that IAM actually performed its own duties and obligations under the contract.  Therefore, the claim for breach of contract must be dismissed as a matter of law.

### B.     IAM's Claims of Breach of Fiduciary Duty, Unjust Enrichment, And Promissory Estoppel Are Barred As A Matter of Law In That The Relationship Of The Parties Was Governed By The Express Agreement

#### 1.     The Claim of Breach of Fiduciary Duty Must Fail, As The Parties' Relationship Was Governed By The Agreement

IAM cannot merely reiterate and repackage its claim of breach of contract under the rubric of a breach of fiduciary duty claim.  "A cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand."  *See Cal Distributor Inc. v. Cadbury Schweppes Americas Beverages, Inc.*, No. 06-CIV-0496-RMB, 2007 WL 54534 at *9

(S.D.N.Y. Jan. 5. 2007) (citations omitted).  Thus, a claim for breach of fiduciary duty that is

"premised upon the same facts and seeks damages for the same alleged wrong as the breach of

contract claim" must be dismissed as a matter of law.  *See id.*  The rationale for this rule is that

"parties to an express contract are bound by an implied duty of good faith, but breach of that

duty is merely a breach of the underlying contract."  *See id.*  The allegation of breach of fiduciary

duty contained in the Complaint mirrors the breach of contract claim,[5] and does not add any new

facts or additional allegations other than merely renaming the claim.  (Compl. ¶¶ 29, 33).

Therefore, IAM's claim for breach of fiduciary duty must be dismissed.

### 2.    IAM's Claim Based On Promissory Estoppel Must Similarly Fail, As It Is Precluded By The Agreement

Similarly, IAM may not make a cognizable claim on the basis of the theory of promissory

estoppel, since an enforceable contract governed the relationship between IAM and Defendant.

Under New York law, promissory estoppel has three elements: 1) a clear and

unambiguous promise, 2) reasonable and foreseeable reliance, and 3) an injury sustained by the

party asserting the estoppel as a result of the reliance.  *See Holmes v. Lorch*, 329 F.Supp.2d 516,

527 (S.D.N.Y. 2004) (citations omitted).  It is axiomatic that the theory of promissory estoppel

"is a rule applicable only in the absence of an enforceable contract."  *See id.*.  There has been no

attempt by IAM to demonstrate that the Agreement was not enforceable.  IAM merely states that

---

[5]  In Count III, Breach of Contract (Brought by IAM Against Defendant), IAM alleges
that "Defendant breached his contract with IAM 125 times by recklessly causing margin calls
and by intentionally refusing to cover the final day trading violation margin call of $2.85 million.
IAM was damaged in multiple ways by Defendant's final uncovered margin call which shut
down the fund.  As a result, IAM was denied the opportunity to receive the benefit of five years'
worth of Management Fees."  (Compl. ¶ 33).  Compare Count I, Breach of Fiduciary Duty
(Brought by IAM Against Defendant), which states that "Defendant breached his fiduciary duty
to IAM by intentionally refusing to cover the deficit of a margin call that had been caused by
Defendant himself.  Defendant's breach of fiduciary duty caused IAM to incur debts and other
damages as a result of the fact that IFL had been effectively shut down."  (Compl. ¶ 29).

"[d]efendant made a clear and definite promise to IAM that he would keep his investment in the fund for a minimum of five years," (Compl. ¶ 35), and that "IAM justifiably relied on this promise to its detriment by taking on debt in anticipation of Defendant's five year commitment to the fund." (Compl. ¶ 36).

However, despite IAM's conclusory allegations to the contrary (*see* Compl. ¶¶ 35, 36) Defendant was under no contractual obligation to keep his funds invested in IFL for a minimum period of time. There is simply no provision in the Agreement requiring such a five year period of investment. Still further, the Complaint does not allege how IAM could justifiably rely on such an alleged promise when the contract that provided for the investment did not require that it be maintained for five years. The contract itself specifically provides that "[t]his Agreement comprises the entire understanding between the parties and supercedes [sic] all other oral or written agreements." (Agreement ¶ 20).

Finally, the Complaint does not allege that Defendant's actions were in violation of any such alleged commitment. Instead, the Complaint specifically alleges that Defendant "was allowed to redeem his shares" because "IFL had effectively ceased operations." (Compl. ¶ 26). Indeed, the Agreement itself expressly sanctioned Defendant's ability to redeem by "acknowledg[ing] that [Defendant] has control of – redeeming from or remaining in IFL – the assets it has placed or raised into Class Z, under the terms and guidelines of this Agreement." (Agreement ¶ 4). For all of these reasons, IAM's promissory estoppel claim fails as a matter of law.

### 3.    IAM's Claim Based On Unjust Enrichment Must Also Fail, As It Is Precluded By The Agreement

Unjust enrichment in New York is only available "in the absence of an agreement." *In re Chateaugay Corp.*, 10 F.3d 944, 957-58 (2d Cir. 1993) (citation omitted). Indeed, it is a

"hornbook rule" that quasi-contractual remedies such as unjust enrichment "are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue." *See Member Services Life Insurance Co. v. American National Bank and Trust Co. of Sapulpa*, 130 F.3d 950, 957 (10th Cir. 1997) (citation omitted). Thus, since the relationship between IAM and Defendant was governed by their express Agreement as discussed above, IAM's claim based on the theory of unjust enrichment must also fail.

II.     **HOLMSTROM'S CLAIMS MUST FAIL, AS NO FACTS THAT WOULD ESTABLISH A FIDUCIARY DUTY OWING BY DEFENDANT TO HOLMSTROM WERE ALLEGED, AND THE ALLEGATIONS IF TRUE WOULD NOT ESTABLISH THAT DEFENDANT WAS A THIRD PARTY LEGALLY CAPABLE OF TORTIOUS INTERFERENCE WITH HOLMSTROM'S ALLEGED CONTRACTUAL RELATIONS WITH IAM**

  A.     **Holmstrom Does Not Allege Any Fiduciary Duty Of Defendant To Holmstrom**

Holmstrom has not alleged any fiduciary duty owed to him by Defendant. To succeed on a claim for breach of fiduciary duty, plaintiff must demonstrate the existence of a fiduciary duty between the parties and a breach of that duty by the defendant. *See Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*, No. 98-CIV-6907-MBM, 2000 WL 335557 at *10 (S.D.N.Y. Mar. 30, 2000) (citations omitted). In New York, a fiduciary duty may be found "when one [person] is under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation." *See Thermal Imaging, Inc. v. Sandgrain Securities, Inc.*, 158 F.Supp.2d 335, 343 (S.D.N.Y. 2001) (citations omitted). Although the existence of a fiduciary relationship cannot be determined "by recourse to rigid formulas" under New York law (*see id.* (citations omitted)), the analysis centers on "whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first," and whether that trust or confidence has been reciprocally accepted by the trusted party. *See id.* (citations omitted).

Under these principles, when a party is "at most a client of a client," and the parties entered into no direct transaction, "the relationship . . .is far too attenuated to give rise to a fiduciary duty," and the claim must be dismissed as a matter of law. *See id.* at 343-344 (where plaintiff (pledgor of stock pursuant to a breached loan agreement with pledgee) alleged that the third party brokerage firm of pledgee had breached a fiduciary duty by receiving the pledged shares, there was "no direct business relationship, let alone a fiduciary relationship," no implied fiduciary relationship, and no justifiable repose of trust or confidence (as plaintiff had had little contact with the third party broker); furthermore, any hypothetical fiduciary duty owed by the broker to the customer-pledgee "did not extend to a third party in privity with [pledgee].").  Also, a bond issuer's affiliate that was "responsible for the issuer's performance of its duties with respect to the redemption of the bonds" pursuant to a trust agreement owes no fiduciary duties to a bondholder, and such claims must be dismissed as a matter of law. *See Page Mill Asset Mgmt.*, No. 98-CIV-6907-MBM, 2000 WL 335557 at *10-11.  Similarly, if a defendant who allegedly owes fiduciary duties did not accept a relationship of trust or confidence with the plaintiff, the defendant did not breach a fiduciary duty and is entitled to judgment as a matter of law. *See Regions Bank v. Wieder & Mastroianni, P.C.,* 423 F. Supp.2d 265, 270 (S.D.N.Y. 2006) (mortgage banker acting as a settlement agent to close mortgage loans did not owe fiduciary duties to lender bank).

In this case, Holmstrom has not alleged that Defendant entered into an express or implied agreement with Holmstrom, nor has Holmstrom alleged that Defendant accepted a relationship of trust or confidence with Holmstrom (such as would be the case in a typical broker-client relationship whereby a broker places a client's investments in exchange for a commission or fee). Per the allegations, Defendant had no agreement or relationship with Holmstrom, remunerative

or otherwise, and there have been no allegations of any direct dealings whatsoever between these parties. The Complaint alleges that Defendant agreed with IAM—which allegedly had contracted to manage IFL—to manage certain funds in IFL (*see* Compl. ¶¶ 8, 12). Holmstrom allegedly invested in IFL. Regardless of whatever duties IAM owed Holmstrom or whatever duties Defendant owed IAM, there are no facts alleged that would create a fiduciary duty owing from Defendant to Holmstrom. Thus, Holmstrom's breach of fiduciary duty claim should be dismissed.

Finally, the sole factual basis for the alleged breach of fiduciary duty of Defendant with respect to Holmstrom is that defendant failed to cover the "125th margin call" (Compl. ¶ 41) with his own funds. Even if Defendant owed some sort of direct duty to Holmstrom, which he did not, given the allegations in the Complaint, there are no facts alleged that would support a duty to Holmstrom on Defendant's part to cover with his own personal funds a margin call on securities owned by IFL. For all of these reasons, Holmstrom's claim of breach of fiduciary duty must be dismissed.

**B.    Based On The Allegations In The Complaint, Defendant Was Not a Third Party, And Therefore Was Not Legally Capable of Tortious Interference With The Contractual Relations Between Holmstrom and IAM**

Holmstrom's claim for tortious interference with contractual relations cannot stand. The elements of a claim of tortious interference with contractual relations are: 1) that a valid contract exists, 2) that a "third party" has knowledge of the contract, 3) that the third party intentionally and improperly procured the breach of the contract, and 4) that the breach resulted in damage to the plaintiff. *Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001) (citations omitted).

The Complaint alleges that Defendant was aware of an "understanding" between IAM and Holmstrom. (Compl. ¶ 43). Holmstrom does not claim that the alleged "understanding"

between IAM and Holmstrom constituted a valid contract, as required to state a claim for tortious interference with contractual relations.  *See id.*

Also, the Complaint contains no allegations which, if true, establish that Defendant intentionally and improperly procured the breach of an alleged agreement between IAM and Holmstrom, as required to state a claim for tortious interference with contractual relations.  "By definition, 'the interference [alleged] must be intentional, not merely negligent or incidental to some other, lawful, purpose,'" or the allegation shall fail as a matter of law.  *See Drake v. Laboratory Corp. of America Holdings,* No. 02-CV-1924-FB, 2007 WL 776818 at *4 (E.D.N.Y. Mar. 13, 2007) (citation omitted).  Here, Holmstrom has not alleged that Defendant engaged in any conduct other than "aggressive trading" (Compl. ¶ 44), pursuant to the express and lawful Agreement between Defendant and IAM.  Even if considered to be true, the allegation of Defendant's "aggressive trading" cannot be said to rise to the level of "intentional" interference – at most, it is incidental to the lawful purpose expressed in the Agreement.  Thus, here too, Holmstrom fails to sufficiently state a claim for tortious interference with contractual relations by Defendant, and his claim must be dismissed.

Still further, an agent cannot be a "third party" for purposes of a claim of tortious interference with contractual relations by a complaining party against the agent's principal or employer.  *See Albert,* 239 F.3d at 275.  Notwithstanding this rule, liability may result if the agent has "exceeded the bounds of his authority" (s*ee Drake*, No. 02-CV-1924-FB, 2007 WL 776818 at *3 (citations omitted)), or has "committed an independent tortious act against the plaintiff" (*see Roselink Investors LLC v. Shenkman*, 386 F.Supp. 2d 209, 228 (S.D.N.Y. 2004); *see also Cohen v. Davis*, 926 F. Supp. 399, 404 (S.D.N.Y. 1996) (citations omitted) ("[a] supervisor is considered to have acted outside the scope of his employment [for purposes of the

"third party" requirement of a claim of tortious interference with contract] if there is evidence that the supervisor's manner of interference involved independent tortious acts such as fraud or misrepresentations, or that he acted purely from malice or self-interest")).

Here, Holmstrom has not alleged that Defendant operated outside the scope of his agency with IAM in order to tortiously interfere with the Holmstrom-IAM agreement, or that an independent tortious act was committed by Defendant.  No behavior or conduct on the part of Defendant is alleged other than that Defendant simply conducted trades under the auspices of his express agreement with IAM—an Agreement which memorialized and defined his business relationship and agency with IAM.  Because there has been no allegation that Defendant was working outside the scope of his agency with IAM, and no allegation that Defendant committed an independent tortious act, Holmstrom has not alleged that Defendant was a "third party" to the IAM-Holmstrom business relationship as required to state a claim for tortious interference with contractual relations.  Therefore, on this ground also the claim must be dismissed.

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

Dated: September 14, 2007

Respectfully submitted,


*s/* Matthew E. Szwajkowski
Thomas H. Sear (TS-5570)
Matthew E. Szwajkowski (MS-8362)
JONES DAY
222 East 41st Street
New York, NY 10017-6702
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
mszwajkowski@jonesday.com

*Attorneys for Defendant Daniel Zanger*

CERTIFICATE OF SERVICE

The foregoing document was served on the following counsel of record on September 14,

2007 via the method listed below:

**E-Mail, Federal Express, and Hand Delivery**

John Balestriere
Craig Stuart Lanza
Balestriere PLLC
225 Broadway, Suite 2700
New York, NY 10007
clanza@balestriere.net

*s/ Matthew E. Szwajkowski*