John Balestriere
Craig Stuart Lanza
**BALESTRIERE PLLC**
225 Broadway, Suite 2700
New York, NY 10007
Telephone: 212-374-5404
Email: clanza@balestriere.net
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

**INDEPENDENT ASSET MANAGEMENT**     :
**LLC and OLA HOLMSTROM,**            :
                                     :     1:07-CV-06431-JSR
                    **Plaintiffs,**  :
                                     :
                                     :     **ECF**
        -against-                    :
                                     :
                                     :
**DANIEL ZANGER,**                   :
                                     :
                    **Defendant,**   :

------------------------------------------------------------- x

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ......................................................................................................................2

ARGUMENT ...........................................................................................................................4

  I.  IAM'S CLAIMS MUST NOT BE DISMISSED .....................................................4

    A. IAM Has Properly Plead Its Breach of Contract Claim ....................................5

    1.  IAM Has Alleged Breaches of Specific Portions of the Agreement ..................5

    2.  Defendant's Behavior Rises to the Level of Willful Malfeasance and Gross Negligence, as Required for Damages Under the Agreement ......................................................7

    3.  IAM Has Properly Alleged That It Performed Its Obligations Under the Contract ................8

    B. IAM'S Claims of Breach of Fiduciary Duty, Unjust Enrichment, and Promissory Estoppel Are Not Barred As a Matter of Law ....................................................................9

    1.  IAM's Claim for Breach of Fiduciary Duty is Not Duplicative, Because a Fiduciary Duty Existed Between IAM and the Defendant Regardless of the Agreement Since IAM and Defendant Were Coventurers ....................................................................9

    2.  Dismissing IAM's Non-Contractual Claims Would Violate the Liberal Alternative Pleading of Fed. R. Civ. P. 8(e)(2) ....................................................................11

    3.  IAM's Claim For Promissory Estoppel Should Not Be Dismissed ..........................12

    4.  IAM's Claim For Unjust Enrichment Should Not Be Dismissed ............................13

  II.  HOLMSTROM'S CLAIMS MUST NOT BE DISMISSED ..............................14

    A. Holmstrom Properly Alleges Defendant's Fiduciary Duty to Holmstrom ..............14

    B. Holmstrom's Claim for Tortious Interference Must Stand ..............................16

  III. PRAYER FOR RIGHT TO AMEND IN THE ALTERNATIVE ........................18

CONCLUSION .......................................................................................................................19

i

## TABLE OF AUTHORITIES

PAGE

### CASES

*Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 1996)------------------------------------------------16

*American Tel. & Tel. Co. v. City of New York*, 83 F.3d 549, 556 (N.Y. 1996) --------------------- 7

*Baii Banking Corp. v. Atlantic Richfield Co.*, No. 86-CIV-6651-JFK, 1990 WL 151124 at *5 (S.D.N.Y. Oct. 3, 1990) -------------------------------------------------------------------------------------12

*Bower v. Weisman*, 639 F.Supp. 532, 539 (S.D.N.Y. 1986)--------------------------------------------- 2

*Breed v. Insurance Co. of North America*, 385 N.E.2d 1280, 1282, 413 N.Y.S.2d 352, 355 (N.Y. 1978)------------------------------------------------------------------------------------------------------------- 5

*Bridgeway Corp. v. Citibank, N.A.*, 132 F.Supp.2d 297, 305 (S.D.N.Y. 2001) -------------------11

*Cal Distrib., Inc. v. Cadbury Schweppes Am. Beverages, Inc.*, No. 06-CIV-0496-RMB, 2007 WL 54534 at *9 (S.D.N.Y. Jan. 5, 2007)--------------------------------------------------------------10

*Colnaghi, U.S.A., Ltd. v. Jewelers Protection Services, Ltd.*, 611 N.E.2d 282, 284  (N.Y. 1993)- ------------------------------------------------------------------------------------------------------------------ 7

*Cyberchron Corp. v. Calldata Systems Development, Inc.*, 831 F.Supp. 94, 112 (E.D.N.Y.1993) ------------------------------------------------------------------------------------------------------------------13

*Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996)--------------------------------------------------16

*First Investors Corp. v. Liberty Mut. Ins. Co*, 152 F.3d 162, 168 (2d Cir. 1998) ------------------ 5

*Forum Ins. Co. v. Zeitman*, No. 91-CIV-7980-LLS, 1995 WL 546949, at *2 (S.D.N.Y. Sept. 13, 1995) ------------------------------------------------------------------------------------------------------10

*Holmes v. Lorch*, 329 F. Supp.2d 516, 527 (S.D.N.Y. 2004)----------------------------------- 12, 13

*Kinsey v. Cendant Corp*, No. 04-CIV-0582-RWS, 2005 WL 1907678 at *7 (S.D.N.Y. Aug 10, 2005)-------------------------------------------------------------------------------------------------------7, 13

*Labajo v. Best Buy Stores, L.P.*, 478 F.Supp.2d 523, 531 (S.D.N.Y. 2007)-------------------------11

*Leeward Const., Inc. v. Sullivan W. Cent. School Dist.*, No. 05-CIV-8384-SCR, 2006 WL 1722577 at *5 (S.D.N.Y. Jun. 20, 2006) -----------------------------------------------------------------12

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F.Supp. 1220, 1231 (S.D.N.Y.1991) 10

*Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928) ---------------------------------------------------10

*Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*, No. 98-CIV-6907-MBM, 2000 WL 335557 at *10 (S.D.N.Y. Mar. 30, 2000)---------------------------------------------------10, 14, 15

*R.H. Damon & Co., Inc. v. Softkey Software Prods., Inc.*, 811 F.Supp. 986, 991 (S.D.N.Y. 1993)------------------------------------------------------------------------------------------------------------- 8

*Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 264 (2d Cir.1984)---------------------------------13

*Seiden Associates, Inc. v. ANC Holdings, Inc.*, 754 F.Supp. 37, 39 (S.D.N.Y. 1991)------------12

ii

*Smart Egg Pictures, S.A. v. New Line Cinema Corp.*, 213 A.D.2d 302, 302  (1st Dep't 1995)--------------------------------------------------------------------------------- 10

*Tevdorachvili v. Chase Manhattan Bank*, 103 F.Supp.2d 632 (E.D.N.Y. 2000) ------------------- 7

*Thermal Imaging, Inc. v. Sandgrain Sec., Inc.*, 158 F.Supp.2d 335, 343 (S.D.N.Y. 2001)------------------------------------------------------------------------------------------10, 14, 15

*William Kaufman Org., Ltd. v. Graham & James LLP*, 269 A.D.2d 171, 173,  (1st Dept. 2000) ----------------------------------------------------------------------------------------------10

## STATUTES

Fed R. Civ. P. 12(b)(6) ............................................................................................. 2

Fed R. Civ. P. 8(a)(2) ............................................................................................... 8

Fed R. Civ. P. 8(a)(2)..............................................................................11,12,14

Fed. R. Civ. P. 15(a) ............................................................................................... 18

Plaintiffs Independent Asset Management ("IAM"), and Ola Holmstrom ("Holmstrom," collectively, "Plaintiffs"), by their attorneys, John Balestriere and Craig Stuart Lanza of Balestriere PLLC, respectfully submit this Memorandum of Law in opposition to Defendant Daniel Zanger's ("Zanger" or "Defendant") motion to dismiss the Complaint dated July 16, 2007, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

IAM, the trading manager for the Bermuda-based Independent Fund Limited ("IFL"), and Holmstrom[1] have been compelled to bring this action as a result of Defendant's intentional malfeasance. While acting as IFL's investment manager, and in direct violation of the explicit terms of his contractual obligations, Defendant violated the rules of IFL's administrator and prime broker so egregiously that Defendant's effectively shut IFL down. As a result of this misconduct, IAM has lost of in excess of $6 million dollars in lost revenue and Holmstrom has lost approximately $170,000, or about 34% about of the funds which he placed in Defendant's trust and care.

Defendant alleges that the Complaint should be dismissed, in its entirety, for failure to state a claim upon which relief must be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant's argument fails.

---

[1] Defendant objects to the simultaneous representation of IAM and Holmstrom by the same counsel. Defendant's objection serves its own interest, but not either of Plaintiffs' interests. Indeed, both parties, IAM and Holmstrom, after full disclosure, have waived any potential conflicts.

1

## BACKGROUND

Defendant is an experienced trader who has traditionally utilized an aggressive, high-risk style.  On or about October 19, 2004, Defendant entered into a five-year contract (the "Agreement") with IAM where the parties agreed to participate in a joint venture.  IAM would provide marketing and an offshore investment vehicle, IFL for Defendant.  In exchange IAM would receive a percentage of the fees that Defendant received. (*See* Compl. ¶¶ 1-3, 12.)  Defendant and IAM agreed that Defendant would invest between $5 and $50 million of his own funds into the Class Z shares and IAM would attempt to attract additional investors based on Defendant's performance. (*See* Compl. ¶ 10.) IAM had a significant stake in Defendant's behavior.  Its fees were dependent on Defendant's performance and it placed its reputation with investors on the line. (*See* Compl. ¶ 13-15.)  Accordingly, IAM and Defendant agreed that Defendant would manage the shares with a less volatile investing style than he had used in previous investments. (*See* Compl. ¶ 16.)  To that end, Defendant agreed to respect the rules of the exchanges that he traded on and the rules of the prime brokers that he used. (*Id.*)

Almost immediately after the Agreement was signed, Defendant began to renege on his promises. (*See* Compl. ¶ 19.)  He deposited into his account the minimum $5 million investment and began trading it in an extremely aggressive, high-risk manner.  This soon lead to significant losses. (*See id.*)  Defendant then complained of the terms of the joint venture and expressed a desire to avoid his contractual obligations.

Defendant, in instant message correspondences, accused IAM of "making money" off of him. (Compl. ¶ 21.) Despite Defendant's erratic behavior, IAM honored its side of the venture and marketed Defendant as best it could and successfully found Holmstrom, who was willing to invest $500,000 upon the understanding that the shares would be managed in a less aggressive manner than they had been up to that point. (*See* Compl. ¶ 20.)

Shortly thereafter, Defendant, in violation of the terms of the contract, failed to disclose its positions to IAM and continued to trade ultra-aggressively.  Defendant, in further violation of his agreement with IAM, constantly violated the rules of the exchanges that he traded on, and induced over 100 margin calls. (*See* Compl. ¶ 22-23.) Defendant then covered these margin calls by wiring in his own money, an act which again violated the rules of the prime broker. (*See* Compl. ¶ 24.) Consistent with the prime broker's rules, the Agreement and IFL's offering memorandum, these wires were treated as additional subscriptions to the fund, and when Defendant wished to take the money back out he was required to wait the standard, contractually mandated three to four weeks. (*See id.*)

In December 2006, Defendant intentionally caused his 125th margin call and refused to cover it, declaring, "No more three to four week waits." (Compl. ¶ 25.) This refusal to cover the margin call forced IFL to trade on a cash-only basis, effectively shutting down the entire fund. (*See* Compl. ¶ 26.)  In the aftermath of Defendant's actions, only two years after the venture had begun, Defendant was allowed to redeem all of his shares as IFL had *de facto* ceased operations.  Thus, Defendant was able to get

3

out of a five year agreement by effectively shutting down IFL. All in violation of the agreement he signed with IAM.

In addition, Holmstrom, his sole investor, had lost about $170,000, or around 34% of his original investment with Defendant. (*See* Compl. ¶ 27.) IAM lost substantially more, as the venture it entered into with Defendant was intended to last five years and it entered into debt and other obligations in anticipation of five years of revenue from the Defendant's shares. (*See id.*) The debt, revenue lost, and other opportunities due to the fact that IFL is no longer operating is conservatively estimated at $6-8 million.

IAM and Holmstrom now bring this action in an attempt to redress the harm done to them.

## ARGUMENT

### I.    IAM'S CLAIMS MUST NOT BE DISMISSED

Defendant has an extremely high standard to meet, as "courts are wary of dismissal in view of the policy of the federal rules which seeks to have determinations reached on the merits." *Bower v. Weisman*, 639 F.Supp. 532, 539 (S.D.N.Y. 1986) (citing *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208, 213 (". . . a motion to dismiss is viewed with disfavor in the federal courts . . . .")). Therefore, at this early stage of the proceedings, "allegations are accepted as true, and the complaint is construed in a light most favorable to the pleader." *Bower*, 639 F.Supp at 539.

A.    **IAM Has Properly Plead Its Breach of Contract Claim**

Defendant correctly contends that to show a breach of contract, a party must show: (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245-246 (2d Cir. 2000) (citing *First Investors Corp. v. Liberty Mut. Ins. Co*, 152 F.3d 162, 168 (2d Cir. 1998)). IAM has clearly met this burden because IAM has alleged the breach of specific portions of the Agreement by Defendant and has alleged that it performed its obligations under the Agreement. Accordingly, IAM's claim for breach of contract must stand.

Moreover, Plaintiffs are not required, at this early stage, to set forth in painstaking detail each and every exchange rule violated by Defendant, nor to describe each accusation made by him against IAM. In fact, all that IAM is required to set out in its Complaint is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). The Complaint is intended merely to "put the defendants on notice of the claims against them." *R.H. Damon & Co., Inc. v. Softkey Software Prods., Inc.*, 811 F.Supp. 986, 991 (S.D.N.Y. 1993). IAM has clearly met this standard and, consequently, its breach of contract claim must not be dismissed.

1.    **IAM Has Alleged Breaches of Specific Portions of the Agreement**

There is no question that the Plaintiffs' Complaint states that Defendant has violated Section 1(e) of the Agreement through Defendant's violation of the rules of the prime broker that the Defendant traded through. Defendant incorrectly contends that IAM has "enumerated vague and conclusory instances of Defendant's alleged behavior

5

. . . ." and failed to properly allege a breach of the Agreement. (Pl.'s Mem. 5.)  To the contrary, Plaintiffs' claims are crystal clear.  The Agreement mandates that Defendant "remain in full compliance at all times with Prime Broker limits, rules or guidelines." (Agreement ¶ 1(e)).  In addition, Defendant was bound to "comply with all rules and regulations of any exchanges" on which he traded. (Agreement ¶ 13.)  In fact, these provisions of the Agreement are specifically referenced in Plaintiffs' allegations. (Compl. ¶ 22-23.)  Plaintiffs further allege that, in violation of the Agreement, Defendant induced over 125 margin calls and thereby "constantly ran afoul of the requirements of . . . the exchange he was trading on." (Compl. ¶ 23.)  Then, when Defendant attempted to correct these violations by wiring in his own funds, "the manner in which Defendant wired the money was inconsistent with the rules of the broker and fund administrator." (Compl. ¶ 24.)  Indeed, points 22 through 24 of Plaintiffs' allegations refer to specific provisions of the Agreement and indicate, with reference to concrete facts, the manner in which Defendant violated such provisions. (Compl. ¶ 22-24.)

In addition, Plaintiffs also specifically allege breaches of other provisions of the Agreement.  The Agreement provides that Defendant "must remain transparent and compliant on all levels at all times to IFL and IAM." (Agreement ¶ 1(g).) IAM has indisputably alleged that Defendant, against his clear agreement with IAM, managed his funds in "in a very aggressive and very volatile manner." (Compl. ¶ 19.)  Indeed, Defendant, despite an agreement to trade conservatively, induced over 125 margin calls. (*See* Compl. ¶ 22.)  Defendant then *refused* to cover a margin call, which ultimately

caused IFL to operations. (*See* Compl. ¶ 25.)    Defendant's agreement to be fully compliant with IAM at all times is quite clear, and that agreement has just as clearly been violated.

Consequently, Plaintiffs have alleged multiple breaches of contract and IAM's claim for breach of contract must stand.

### 2.    Defendant's Behavior Rises to the Level of Willful Malfeasance and Gross Negligence, as Required for Damages Under the Agreement

The clause in the Agreement, whereby each party shall not hold the other accountable for damages save in the presence of "fraud, theft or gross negligence," does not bar Plaintiffs' action. (*See* Agreement ¶ 9)    Plaintiffs allege that Defendant "intentionally refused" to cover his final margin call, which clearly amounts to willful malfeasance. (Agreement ¶ 9; Compl. ¶ 25.)    In addition, as Defendant, a professional trader, knew or, at the very least should have known, that wiring his money into IFL to cover a margin call would be in violation of exchange rules, making that an act of willful malfeasance as well. (*See* Compl. ¶ 24.)    It is further alleged that Defendant induced 125 margin calls in violation of the Agreement, such violations, performed by an experienced trader, go far beyond mere negligence. (Compl. ¶ 24).

Plainiffs have clearly alleged that Defendant's actions constituted gross negligence, which is "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *American Tel. & Tel. Co. v. City of N.Y.*, 83 F.3d 549, 556 (N.Y. 1996), (quoting *Colnaghi, U.S.A., Ltd. v. Jewelers Protection Services, Ltd.*, 611 N.E.2d 282, 284, 595 N.Y.S.2d 381, 383 (N.Y. 1993)).    Moreover, whether conduct rises to

7

the level of gross negligence is a question not of law but of fact. *See American Tel. & Tel. Co.*, 83 F.3d at 556.

Defendant's reliance on *Kinsey v. Cendant Corp.* is misplaced. No. 04-CIV-0582-RWS, 2005 WL 1907678 at *7 (S.D.N.Y. Aug 10, 2005). In *Kinsey*, the plaintiff's claim of gross negligence rested solely on language in the complaint that the defendant had "acted recklessly and/or with conscious disregard." *Id.* (citations omitted). This, of course, is the very definition of a conclusory allegation and was deemed insufficient by the court because without "factual allegations showing more, heated language and indignation will not suffice to bootstrap . . . a cause of action for . . . gross negligence . . . ." *Tevdorachvili v. Chase Manhattan Bank*, 103 F.Supp.2d 632 (E.D.N.Y. 2000).

Unlike *Kinsey*, Plaintiffs pleadings do not rely on conclusory allegations, heated language or indignation. Defendant stands accused of being "unwilling to honor" promises that he trade in a responsible manner. (Compl. ¶ 19.) He has made scandalous accusations against IAM which are "well documented in transcripts." (Compl. ¶ 21.) He induced over 125 margin calls and constantly ran afoul of exchange rules, the last of which he *intentionally* refused to cover. (*See* Compl. ¶¶ 22, 23, 24.) These acts, committed by an experienced player in the financial markets such as Defendant, clearly rise to the level of either willful malfeasance or gross negligence.

### 3. IAM Has Properly Alleged That It Performed Its Obligations Under the Contract

IAM has properly asserted that it "actually performed [its] obligation under the contract." *Id.* (citations omitted).

8

Under the Agreement, IAM was required to "grant [Defendant] the right to manage Class Z shares within IFL . . . ." (Compl. ¶ 1.)   There is no dispute that Defendant, in fact, managed IFL's Class Z shares. (*See* Pl.'s Mem. 1, 3-4; *see also* Compl ¶¶ 19, 22-27.)  In addition, IAM states in the Complaint that it marketed Defendant and found an investor, Holmstrom, to invest $500,000 in Defendant's Class Z shares. (*See* Compl. ¶ 20.)  Defendant reaped benefits from this, in the form of the ability to receive management and performance fees off of Holmstrom's funds.  IAM has plainly performed its side of the contract.

For this reason, and those discussed above, IAM's claim for breach of contract against Defendant must not be dismissed as a matter of law.

### B.    IAM'S Claims of Breach of Fiduciary Duty, Unjust Enrichment, and Promissory Estoppel Are Not Barred As a Matter of Law

#### 1.    IAM's Claim for Breach of Fiduciary Duty is Not Duplicative, Because a Fiduciary Duty Existed Between IAM and the Defendant Regardless of the Agreement Since IAM and Defendant Were Coventurers

Defendant alleges that IAM seeks to "merely reiterate and repackage" the breach of contract claim "under the rubric of breach of fiduciary duty claim." *(Pl.'s* Mem. 8.) IAM's breach of fiduciary duty claim, however, is not merely duplicative of its claim for breach of contract because IAM's claim for breach of fiduciary duty is not premised on the same facts as its breach of contract claims.

Defendant asserts that a claim for breach of fiduciary duty "cannot stand" when it is "merely duplicative" and "premised upon the same facts and seeks damages for the same alleged wrong as the breach of contract claim." *Cal Distrib., Inc. v. Cadbury*

9

*Schweppes Am. Beverages, Inc.*, No. 06-CIV-0496-RMB, 2007 WL 54534 at \*9 (S.D.N.Y. Jan. 5, 2007) (citing *William Kaufman Org., Ltd. v. Graham & James LLP*, 269 A.D.2d 171, 173, 703 N.Y.S.2d 439, 442 (1st Dept. 2000)).   However, in *Cal Distrib.*, the court found that the correct circumstances had not "been alleged that would give rise to a fiduciary relationship between the Plaintiffs and Cadbury." *Id.*

Here, even absent Defendant's agreement with IAM, Defendant owed a fiduciary duty to IAM and breached that duty.

To show a breach of fiduciary duty, a plaintiff must show the existence of a fiduciary duty and a breach of that duty. *See Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*, No. 98-CIV-6907-MBM, 2000 WL 335557 at \*10 (S.D.N.Y. Mar. 30, 2000) (citing *Forum Ins. Co. v. Zeitman*, No. 91-CIV-7980-LLS, 1995 WL 546949, at \*2 (S.D.N.Y. Sept. 13, 1995)).   The analysis of whether a person is a fiduciary turns on "whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first," and whether that trust or confidence has been accepted by the other party. *See Thermal Imaging, Inc. v. Sandgrain Sec., Inc.*, 158 F.Supp.2d 335, 343 (S.D.N.Y. 2001) (citing *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F.Supp. 1220, 1231 (S.D.N.Y.1991)). (*See also* Pl'.s Mem. 11.) In a joint venture, the coventurers owe each other fiduciary duties as matter of law. *See Smart Egg Pictures, S.A. v. New Line Cinema Corp.*, 213 A.D.2d 302, 302, 624 N.Y.S.2d 150, 151 (1st Dep't 1995). *See also Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928) ("Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty"). Once the fiduciary relationship is established, the parties owe each other "the

10

punctilio of an honor the most sensitive" and "undivided loyalty." *Meinhard*, 164 N.E. at 546.

In the present case, IAM has clearly pled that it and Defendant were "involved in a joint venture." (Compl. ¶ 1; *see also* Compl. ¶ 12.)  As such, a duty of loyalty existed between Defendant and IAM that would have existed without the Agreement *and* goes above and beyond the duties required under mere contractual obligations.  In addition, Plaintiffs further allege that Defendant "breached his fiduciary duty by refusing to cause a margin call that had been caused by Defendant himself." (Compl. ¶ 29).

Accordingly, Defendant's breach of fiduciary duty has been properly alleged and IAM's claim for breach of fiduciary duty must not be dismissed.

### 2.    Dismissing IAM's Non-Contractual Claims Would Violate the Liberal Alternative Pleading of Fed. R. Civ. P. 8(e)(2)

Under the liberal alternative pleading of Rule 8(e)(2) of the Federal Rules of Civil Procedure, IAM's non-contractual claims must not be dismissed.

Rule 8(e)(2) states that

> *A party may set forth two or more statements of a claim or defense alternately or hypothetically*, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. *A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.* All statements shall be made subject to the obligations set forth in Rule 11.

Fed. R. Civ. P. 8(e)(2) (emphasis added). Although quasi-contractual claims such as unjust enrichment and promissory estoppel are not grounds for relief when there is an

11

express agreement between the parties, such claims are permitted to exist "as an alternative to the breach of contract claim" in case, in the course of litigation, the contract is found to be invalid. *Bridgeway Corp. v. Citibank, N.A.*, 132 F.Supp.2d 297, 305 (S.D.N.Y. 2001). *See also Labajo v. Best Buy Stores, L.P.*, 478 F.Supp.2d 523, 531 (S.D.N.Y. 2007) (pleading both breach of contract and unjust enrichment "is permissible under the liberal alternative pleading policy under Rule8(e)(2) . . . ."); *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 754 F.Supp. 37, 39 (S.D.N.Y. 1991) ("Both Fed. R. Civ. P. 8(e)(2) and the pleading rules of New York State law permit the pleading of contradictory claims alleging both breach of a contract or, in the alternative, a quasi contract.") (footnote omitted).

At this stage of the litigation, neither IAM nor the Court knows "whether Defendant will challenge the terms or existence of the contract." *Leeward Const., Inc. v. Sullivan W. Cent. School Dist.*, No. 05-CIV-8384-SCR, 2006 WL 1722577 at *5 (S.D.N.Y. Jun. 20, 2006). And, if IAM "is found to be unentitled to recovery based on its other claims, injustice would result if the finder of fact were unable to consider" the quasi-contractual theories of relief. *Baii Banking Corp. v. Atlantic Richfield Co.*, No. 86-CIV-6651-JFK, 1990 WL 151124 at *5 (S.D.N.Y. Oct. 3, 1990). As such, IAM's claims for breach of fiduciary duty, unjust enrichment, and promissory estoppel should not be dismissed.

### 3.    IAM's Claim For Promissory Estoppel Should Not Be Dismissed

IAM's claim for promissory estoppel should not be dismissed.

12

As discussed above, this claim is not, as Defendant claims, precluded by IAM's breach of contract claim. It is permitted to remain as an alternate pleading in case. As such, its validity as a claim must be analyzed assuming that the Agreement is nonexistent. *Leeward Const., Inc*, 2006 WL 1722577 at *5.

To sustain a claim for promissory estoppel, three elements must be established: (1) a clear promise, (2) reasonable reliance, and (3) an injury sustained as a result of the reliance. *See Holmes v. Lorch,* 329 F. Supp.2d 516, 527 (S.D.N.Y. 2004) (citing *Reprosystem, B.V. v. SCM Corp.,* 727 F.2d 257, 264 (2d Cir.1984)). (*See also* Pl'.s Mem. 9.) IAM properly alleges all of the elements of promissory estoppel.

A clear promise was made by Defendant that he would keep his funds in IFL for a minimum of five years. (Compl. ¶ 35.) IAM justifiably relied on this promise to its detriment. (Compl. ¶ 36.) IAM was injured as a result of this reliance. (Compl. ¶ 39.) Defendant's arguments that there is "no such provision in the Agreement," that the Agreement "expressly sanction Defendant's ability to redeem," and his reliance on the Agreement's merger clause are all irrelevant because promissory estoppel is a quasi-contractual claim that is plead alternatively to its breach of contract claim. (*See* Pl.'s Mem. 10.) For these reasons, IAM's claim for promissory estoppel must not be dismissed.

### 4.    IAM's Claim For Unjust Enrichment Should Not Be Dismissed

IAM's claim for unjust enrichment should not be dismissed.

Defendant argues that unjust enrichment must be barred because "the relationship between IAM and Defendant was governed by their express agreement"

and that unjust enrichment is a "quasi-contractual" remedy available only in the absence of such agreement. (*See* Pl.'s Mem. 11.) Plaintiffs do not dispute the assertion that quasi-contractual remedies such as unjust enrichment and promissory estoppel are only valid in the absence of an express, valid, and enforceable agreement. However, as discussed above, unjust enrichment is being pled alternatively, a right granted under the liberal pleading rules of Rule 8(e)(2) of the Federal Rules of Civil Procedure. Accordingly, IAM's claim for unjust enrichment should not be dismissed.

## II. HOLMSTROM'S CLAIMS MUST NOT BE DISMISSED

### A. <u>Holmstrom Properly Alleges Defendant's Fiduciary Duty to Holmstrom</u>

Holmstrom has properly alleged the fiduciary duty owed to him by Defendant.

As discussed above, to prove a breach a fiduciary duty a party must show the existence of a fiduciary duty and a breach of the duty. *See Page Mill Asset Mgmt.*, 2000 WL 335557 at *10. Whether or not a party is a fiduciary to another cannot be determined by "rigid analysis", but is based on "whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first," and whether that trust or confidence has been accepted by the other party. *See Thermal Imaging, Inc.*, 158 F.Supp.2d at 343. As a manager of Holmstrom's investment, Defendant had placed himself unambiguously in a position of superiority and influence over Holmstrom. In fact, it is difficult to think of a more intimate position of trust than someone who manages the money of another. Holmstrom placed $500,000 in IFL's Class Z shares with the full knowledge that Defendant would be the one managing the

funds and Holmstrom trusted Defendant to manage his funds responsibly. (*See* Compl. ¶ 20.) Defendant violated Holmstrom's trust by placing his interests above Holmstrom's and intentionally engaging in conduct which he knew was likely to harm Holmstrom. (*See* Compl. ¶ 41.)

There is no doubt that Defendant owed Holmstrom a duty of loyalty, and that he blatantly breached that duty. Defendant breached his fiduciary duties to Holmstrom by, among other things: (1) intentionally and knowingly refusing to abide by their agreed upon investment strategy; (2) creating 125 margin calls,; and (3) refusing to cover the deficit caused by the last margin call, an action which he knew would result in Holmstrom losing $170,000.

Defendant's reliance on *Thermal Imaging* and *Page Mill Asset Management* are misplaced. *See* 158 F.Supp.2d at 343-44; 2000 WL 335557 at *10. Holmstrom was not a "client of a client" to Defendant. Defendant and IAM were engaged in "joint-venture . . . where Defendant would invest his own money in IFL and then manage that money. IAM and Defendant would then use Defendant's performance in IFL as a means of marketing Defendant." (Compl. ¶ 12.) Defendant was not an employee of IAM nor, as Defendant argues elsewhere, an agent. (*See* Pl.'s Mem. 14-15.) IAM's role was to "help market" Defendant as a trader and to provide an "existing offshore vehicle" for him to engage in the managing of funds. (Compl. ¶ 12.) Holmstrom was a client of Defendant. Moreover, it was Defendant, not IAM, who was solely responsible for managing Holmstrom's money -- the Agreement states that Defendant "will be the *sole* manager on assets it has brought in for Class Z and IAM has no intention to replace or terminate

15

[Defendant] from the management of Class Z shares so long as [Defendant] remains within the guidelines outlined herein." (Agreement ¶ 4, emphasis added.)

There is no doubt that Defendant was solely in control of Holmstrom's funds, that he violated the trust inherent in that position, and Holmstrom suffered significant harm as a result. Accordingly, Holmstrom's claim for breach of fiduciary duty must stand.

### B.    Holmstrom's Claim for Tortious Interference Must Stand

Holmstrom's claim for tortious interference with contractual relations must stand.

To establish a claim of tortious interference, a plaintiff must show: (1) a valid contract exists, (2) the third party has knowledge of the contract, (3) the third party intentionally and improperly caused a breach of the contract against the plaintiff, and (4) damages. *See Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 1996) (citing *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir.1996)).

Defendant incorrectly disputes that Holmstrom has not plead the first three of these elements. First, Defendant argues that Holmstrom has not properly pled that the "understanding" between IAM and Holmstrom that Holmstrom's funds would be managed responsibly constituted a valid contract. (*See* Compl. ¶ 43; Pl.'s Mem. 13-14.) In the context of the Complaint,[2] it is clear that "understanding" means a contract.

---

[2] The relevant paragraph reads, in full: "There existed an understanding between IAM and IFL and Holmstrom, of which Defendant was aware, whereby Holmstrom

Holmstrom allowed IAM to place his funds in IFL, under the management of Defendant, pursuant to a certain understanding. In addition, certain fees would be taken out of Holmstrom's funds which would then go to both IAM and Defendant. It is plain that, at the very least, such an arrangement would involve an oral contract.

Defendant then argues that Holmstrom has failed to "establish that Defendant intentionally and improperly procured the breach" of the agreement between Holmstrom and IAM. Once again, it is plain that if all allegations alleged in the Complaint are found to be true, Defendant will have committed intentional violation of such an agreement. Defendant is not merely being accused of aggressive trading, as he claims. (*See* Pl.'s Mem. 14.) He is being accused of intentionally disregarding a clear agreement to manage his funds in a responsible and relatively conservative manner. As an experienced investment professional, he can be assumed to understand such a mandate well enough that a stark deviation from it could only be intentional. He knew that IAM brought Holmstrom's investment into the Class Z shares pursuant to a legally binding understanding. He then proceeded to act in direct opposition to that understanding. As such, IAM was in breach of the promises it made to Holmstrom, and Holmstrom was harmed. All of the elements of tortious interference are properly established.

Finally, Defendant argues that he was not a third party to the agreement between Holmstrom and IAM because he was an agent of IAM. (*See* Pl.'s Mem. 14-15.) As

---

agreed to provide IFL with $500,000 based on the understanding that the funds would be managed less aggressively." (Compl. ¶ 43.)

discussed above, Defendant was not an agent of IAM and IAM was not the principal of defendant.  IAM and Defendant were engaged a relationship that was contemplated by the parties as a joint venture. (*See* Compl. ¶¶ 1, 12.)  Defendant was in no way, as he suggests, an employee of IAM, nor was IAM his supervisor. As such, Holmstrom does not need to allege that Defendant operated outside the scope of his agency as no such agency relationship existed. Even if he was an agent of IAM, the allegations in the Complaint would consist of him acting outside the bounds of such agency.  Defendant's claim that he is accused on "simply conduct[ing] trades" is disingenuous. (*See* Pl.'s Mem. 15.) He is being accused of blatantly and intentionally stepping outside the clear terms which he agreed to when he entered into his respective relationships with IAM and Holmstrom.  He agreed to trade in a certain way, violated this agreement, and then refused to take responsibility for such actions.  As such, Holmstrom's claim for tortious interference must stand.

## III.    PRAYER FOR RIGHT TO AMEND IN THE ALTERNATIVE

After a response to a complaint has been made, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. Rule 15(a).   "However, Rule 15(a) specifies that "leave shall be freely given when justice so requires," and the Supreme Court has emphasized that amendment should normally be permitted." *Nerney v. Valente & Sons Repair Shop,* 66 F.3d 25, 29 (2d. Cir 1995).   Thus, if the Court disagrees with Plaintiffs' arguments and believes that the Complaint should be dismissed, Plaintiffs respectfully request the right to amend the

18

Complaint so that it pleads Plaintiffs' causes of action in a manner found proper by this Court.

## CONCLUSION

For the foregoing reasons, the Complaint should not be dismissed, either in whole or in part.

Dated:  New York, New York                          Respectfully submitted,
       September 25, 2007


                                                s/ Craig Stuart Lanza
                                                _____
                                                John Balestriere (JB- 3247)
                                                Craig Stuart Lanza (CL-2452)
                                                **BALESTRIERE PLLC**

**BALESTRIERE PLLC**
225 Broadway
Suite 2700
New York, NY 10007
Telephone 212-374-5404
Email:clanza@balestriere.net
*Attorneys for Plaintiffs*

## CERTIFCATE OF SERVICE

The foregoing document was served on the following counsel of record on

September 25, 2007 via the methods listed below:

**E-Mail, Federal Express**

Thomas H. Sear
Matthew E. Szwajkowski
JONES DAY
222 East 41st Street
New York, NY 10017-6702
Telephone: (212) 326-3939
mszwajkowski@jonesday.com

*Attorneys for Defendant Daniel Zanger*

**s/Craig Stuart Lanza**