**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- x

INDEPENDENT ASSET MANAGEMENT LLC
and OLA HOLMSTROM,

       Plaintiffs,

vs.

DANIEL ZANGER,

       Defendant.

Case No. 1:07-cv-06431-JSR

ECF

-------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1
ARGUMENT .................................................................................................................................. 2

    I.    IAM HAS NOT COMPETENTLY ALLEGED A BREACH OF ITS
        AGREEMENT WITH DEFENDANT .................................................................. 2

        A.    IAM Does Not Allege Facts That Would Establish "Willful
               Malfeasance, Fraud, Theft, or Gross Negligence" By Defendant,
               And Thus As A Matter of Law Is Not Entitled to Relief for Breach
               of This Contract ....................................................................................... 2

    II.    IAM'S BREACH OF FIDUCIARY DUTY CLAIM MUST BE
         DISMISSED, AS IT IS DUPLICATIVE OF THE BREACH OF
         CONTRACT CLAIM, THERE WAS NO JOINT VENTURE, AND NO
         ALLEGED FIDUCIARY DUTY COULD REQUIRE THAT
         DEFENDANT PERSONALLY COVER A MARGIN CALL ............................ 5

    III.   IAM HAS NOT PROPERLY PLED CLAIMS FOR PROMISSORY
         ESTOPPEL AND UNJUST ENRICHMENT ....................................................... 7

    IV.   HOLMSTROM'S CLAIMS MUST FAIL, AS NO FACTS THAT
         WOULD ESTABLISH A FIDUCIARY DUTY OWING BY
         DEFENDANT TO HOLMSTROM WERE ALLEGED, AND NO FACTS
         ESTABLISHING TORTIOUS INTERFERENCE BY DEFENDANT
         WITH THE ALLEGED IAM-HOLMSTROM AGREEMENT WERE
         ALLEGED ............................................................................................................ 8

    V.    PLAINTIFFS SHOULD NOT BE GRANTED LEAVE TO AMEND THE
         COMPLAINT ..................................................................................................... 10

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Pages**

### FEDERAL CASES

*American Tel. & Tel. Co. v. City of N.Y.,*
    83 F.3d 549, 556 (2d Cir. 1996)..................................................................................1

*Baii Banking Corp. v. Atlantic Richfield Co.,*
    No. 86-CIV-6651-JFK, 1990 WL 151124 at *3-5 (S.D.N.Y. Oct. 3, 1990) ........................7

*Bridgway Corp. v. Citibank, N.A.,*
    132 F. Supp.2d 297, 305 (S.D.N.Y. 2001)..................................................................7

*Cal Distributor, Inc. v. Cadbury Schweppes Americas Beverages, Inc.,*
    No. 06-CIV-0496-RMB, 2007 WL 54534 at * 9 (S.D.N.Y. Jan. 5, 2007)..........................6

*Labajo v. Best Buy Stores, L.P.,*
    478 F. Supp.2d 523, 531 (S.D.N.Y. 2007)..................................................................7

*Leeward Const., Inc. v. Sullivan W. Cent. School Dist.,*
    No. 05-CIV-8384-SCR, 2006 WL 1722577 at *5 (S.D.N.Y. Jun. 20, 2006) ......................7

*Leonelli v. Pennwalt Corp.,*
    887 F.2d 1195, 1198 (2d Cir. 1989).........................................................................10

*Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.,*
    No. 98-CIV-6907-MBM, 2000 WL 335557 at *10 (S.D.N.Y. Mar. 30, 2000)...................9

*Paper Corp. of the U.S. v. Schoeller Technical Papers, Inc.,*
    742 F.Supp. 808, 812 (S.D.N.Y. 1990).......................................................................7

*Seiden Associates, Inc. v. ANC Holdings, Inc.,*
    754 F. Supp. 37, 37-40 (S.D.N.Y. 1991) .....................................................................7

### STATE CASES

*Loughran v. Markle,*
    242 A.D. 331, 334; 275 N.Y.S. 721, 725 (3d Dep't 1934)..................................................1

*Tilden of N.J., Inc. v. Regency Leasing Sys., Inc.,*
    230 A.D.2d 784, 785-86; 646 N.Y.S.2d 700, 701 (2d Dep't 1996)......................................6

### STATUTES

Fed. R. Civ. P. 8 (e)(2).......................................................................................................7

## TABLE OF AUTHORITIES

**Pages**

### SECONDARY AUTHORITIES

69 Am. Jur.2d *Securities* § 489 (2007) ..................................................................................2

Defendant Daniel Zanger ("Defendant") respectfully submits this Reply Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **PRELIMINARY STATEMENT**

The essence of this action is an alleged breach of contract. The only relevant factual allegations concerning Defendant's obligations arise out of the contract between IAM and Defendant, and those parties explicitly provided that all their rights and obligations were set forth in the contract. Those sophisticated parties explicitly provided that neither party would be entitled to any relief upon the other party's breach, beyond the ability to terminate the contract, unless "willful malfeasance, fraud, theft, or gross negligence" was demonstrated. Thus, the contract set a very high standard for recovery, as willful malfeasance requires a "corrupt intent" (*see Loughran v. Markle*, 242 A.D. 331, 334; 275 N.Y.S. 721, 725 (3d Dep't 1934)), and gross negligence requires "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *See American Tel. & Tel. Co. v. City of N.Y.*, 83 F.3d 549, 556 (2d Cir. 1996) (citation omitted). IAM does not even claim to have alleged any fraud or theft by Defendant, and despite its protestations to the contrary, IAM has not competently alleged any facts which, if true, would reflect, much less establish, willful malfeasance or gross negligence on the part of Defendant as is required to state a claim for the breach of this contract.

All of IAM's other claims fail as a result of this Agreement, the existence and validity of which is undisputed, and because sufficient facts supporting those other claims have not been pled.

Similarly, the claims of Ola Holmstrom ("Holmstrom") fail. No facts alleging the existence of a fiduciary relationship between Holmstrom and Defendant have been pled, and

Defendant was not a stranger or third party to the alleged agreement between IAM and Holmstrom and thus cannot be held to have tortiously interfered with that alleged agreement.

## ARGUMENT

**I.  IAM HAS NOT COMPETENTLY ALLEGED A BREACH OF ITS AGREEMENT WITH DEFENDANT**

   **A.  IAM Does Not Allege Facts That Would Establish "Willful Malfeasance, Fraud, Theft, or Gross Negligence" By Defendant, And Thus As A Matter of Law Is Not Entitled to Relief for Breach of This Contract**

IAM has not alleged facts that if true would constitute "willful malfeasance, fraud, theft, or gross negligence" on the part of Defendant, and therefore the claim for breach of contract should be dismissed for failure to state a cause of action. The allegations specifically set forth in the Complaint for breach of contract (Count III) are:

– Defendant induced over 125 margin calls.[1] *See* Plaintiffs' Mem. at 3, 6, 8, 15; Compl. ¶ 33.

– Because Defendant refused to cover the final margin call, IFL was required to trade on a cash-only basis and the entire fund was effectively shut down. *See* Plaintiffs' Mem. at 1, 3; Compl. ¶ 33.

As discussed in Defendant's initial brief, there simply is no prohibition in the Agreement on trading in a manner that results in margin calls, and Defendant had no obligation to use his own funds to cover a margin call (as opposed to using fund monies or selling fund securities to cover the call). Thus, these alleged acts do not constitute any breach of the contract, much less "willful malfeasance" or "gross negligence."

---

[1] A "'margin call' is a demand by a creditor on a customer for a deposit of additional cash or securities in order to eliminate or reduce a margin deficiency," which results when the value of a security that has been purchased on a leveraged basis drops below a certain level. 69 Am. Jur. 2d *Securities* § 489 (2007).

2

The totality of all the other far ranging allegations concerning Defendant's alleged wrongful activity with respect to IAM, viewing the Complaint and Opposition Memorandum in the most expansive way possible, are as follows:

- Defendant acted in direct violation of the explicit terms of his contractual agreement. *See* Plaintiffs' Mem. at 1.

- Defendant violated the rules of IFL's administrator. *See* Plaintiffs' Mem. at 1.

- Defendant violated the rules of IFL's prime broker. *See* Plaintiffs' Mem. at 1, 6.

- In violation of the Agreement, Defendant failed to disclose its positions to IAM. *See* Plaintiffs' Mem. at 3, 6.

- In violation of the Agreement, Defendant traded "aggressively." *See* Plaintiffs' Mem. at 3, 6, 16, 17.

- Defendant was "'unwilling to honor' promises to trade in a responsible manner." *See* Plaintiffs' Mem. at 8; Compl. ¶ 19.

- Defendant "made scandalous accusations against IAM which are 'well documented in transcripts,'" which included accusing IAM of "making money" off of Defendant. *See* Plaintiffs' Mem. at 2-3, 8; Compl. ¶ 21.

- Defendant "constantly ran afoul of the requirements of the agreement. . .". *See* Compl. ¶ 23.

- Defendant "constantly ran afoul of the requirements. . . of the exchange he was trading on." *See* Plaintiffs' Mem. at 3, 6; Compl. ¶ 23.

- Defendant wired money to IFL to *cover* margin calls, the manner of which was inconsistent with the rules of the broker and fund administrator. *See* Plaintiffs' Mem. at 3, 6, 7; Compl. ¶ 24.

- Defendant created large day trading violations on November 16 and December 7, 2006, and "intentionally refused" to cover this final margin call.[2] *See* Plaintiffs' Mem. at 3, 6, 7, 8, 11, 15; Compl. ¶¶ 25, 29, 33, 41.

---

[2] Thus, amazingly, Plaintiffs have simultaneously argued that Defendant was guilty of willful malfeasance by the act of *refusing* to cover a margin call, and that he was also guilty of willful malfeasance by *actually* covering margin calls. Irrespective of this logical misstep, these alleged acts do not constitute "willful malfeasance, fraud, theft, or gross negligence."

3

- Since IFL had effectively ceased operations, Defendant was allowed to redeem his shares. Therefore, Defendant was allowed to escape a five year contract in only two years. *See* Plaintiffs' Mem. at 3, 4; Compl. ¶ 26.

- Defendant made a clear and definite promise to IAM that he would keep his investment in the fund for a minimum of five years. *See* Plaintiffs' Mem. at 3, 4, 13; Compl. ¶ 35.

However, even if the breach of contract claim was based on those allegations, none of them would come close to stating a claim for breach of this contract. In fact:

- There was no provision of the contract requiring Defendant to trade conservatively or to refrain from "aggressive trading."

- There was no prohibition disallowing Defendant from redeeming his shares, especially given that IFL had shut down.

- Defendant made no "clear and definite promise" in the contract that he would keep his funds invested for a minimum of five years.

Furthermore, there is no indication which exchange rules, Prime Broker rules, or rules of the IFL administrator Defendant allegedly breached, any specification of how or why they were breached, or whether the alleged breaches were minor and inconsequential. Such amorphous claims do not constitute competent allegations of willful malfeasance or gross negligence. Still further, the alleged non-disclosure by Defendant of "its [sic] positions" is equally amorphous and without any actual substance or specificity, and does not competently allege willful malfeasance or gross negligence. In addition, on their face, the so-called "scandalous" accusations are not scandalous, and there is no basis in the agreement for the claim that even "scandalous" accusations are prohibited. Lastly, the allegations that Defendant acted in direct violation of the explicit terms of his contractual agreement, and that he was unwilling to honor promises to trade in a responsible manner, are rendered meaningless by their utter lack of specificity.

In arguing that they have pled willful malfeasance and gross negligence, IAM claims that they have in fact pled "intentional malfeasance," apparently based on Defendant's alleged

4

inducement of margin calls, Defendant's alleged actions to cover margin calls, and Defendant's failure to cover the last margin call with his personal funds.[3]  Whatever intentional acts were involved, no facts have been pled to show that these acts involved malfeasance.  To the contrary, Defendant's use of leverage cannot be considered to be malfeasance, as the Agreement expressly contemplated Defendant's use of leverage.

Furthermore, the Agreement contained an explicit integration clause.  Therefore, Plaintiff may not now claim that Defendant agreed to refrain from "aggressive" or less conservative trading.  No provision in the Agreement prohibited "aggressive" or less conservative trading, and in fact the Agreement itself contemplated the use of leverage in a 4 to 1 ratio. (Agreement ¶ 1(a)).

## II.   IAM'S BREACH OF FIDUCIARY DUTY CLAIM MUST BE DISMISSED, AS IT IS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM, THERE WAS NO JOINT VENTURE, AND NO ALLEGED FIDUCIARY DUTY COULD REQUIRE THAT DEFENDANT PERSONALLY COVER A MARGIN CALL

IAM asserts that its "claim for breach of fiduciary duty is not premised on the same facts as its breach of contract claims."  Plaintiffs' Mem. at 9.  However, IAM's breach of fiduciary duty claim is based upon one of the exact factual allegations contained in its breach of contract claim – Defendant's alleged "refus[al] to cover" the final margin call.[4]

---

[3] IAM's allegation that Defendant intentionally refused to cover a margin call with his own personal funds cannot be considered to be intentional malfeasance, as opposed to a mere intentional *act*, in the absence of an obligation, in the contract or otherwise, to do so.

[4] In Count III, Breach of Contract (Brought by IAM Against Defendant), IAM alleges that "Defendant breached his contract with IAM 125 times by recklessly causing margin calls and by intentionally refusing to cover the final day trading violation margin call of $2.85 million. IAM was damaged in multiple ways by Defendant's final uncovered margin call which shut down the fund.  As a result, IAM was denied the opportunity to receive the benefit of five years' worth of Management Fees."  (Compl. ¶ 33).  Compare Count I, Breach of Fiduciary Duty (Brought by IAM Against Defendant), which states that "Defendant breached his fiduciary duty to IAM by intentionally refusing to cover the deficit of a margin call that had been caused by Defendant himself.  Defendant's breach of fiduciary duty caused IAM to incur debts and other damages as a result of the fact that IFL had been effectively shut down."  (Compl. ¶ 29).

Next, IAM attempts to discredit the principle that a breach of fiduciary duty claim cannot stand when it is "premised upon the same facts and seeks damages for the same alleged wrong as the breach of contract claim" (*see Cal Distributor, Inc. v. Cadbury Schweppes Americas Beverages, Inc.*, No. 06-CIV-0496-RMB, 2007 WL 54534 at *9 (S.D.N.Y. Jan. 5, 2007). That was the exact holding of the case, which IAM simply disregards. *Id*.

Still further, IAM claims that it was engaged in a joint venture with Defendant, and that as a result Defendant owes fiduciary duties as a matter of law which are "above and beyond the duties required under mere contractual obligations." Plaintiffs' Mem. at 10-11. IAM does not reference any provision of the Agreement that would evince an intent to enter into a joint venture, or a provision for the sharing of profits and losses.[5] Therefore, no joint venture was alleged to have existed and may not be the basis for a claim of breach of fiduciary duty "above and beyond" Defendant's contractual duties.

Finally, totally apart from the existence of the Agreement that controlled the terms of the relationship between IAM and Defendant, even if IAM's allegations would support some fiduciary duty owing to IAM by Defendant related to care and loyalty with regard to his trading, there is no support for the proposition that Defendant had a duty to cover margin calls from his own funds.

---

[5] The required elements of a joint venture are an "agreement manifesting the intent of the parties to be associated as joint venturers, a contribution by the coventurers to the joint undertaking (*i.e.*, a combination of property, financial resources, effort, skill, or knowledge), some degree of joint proprietorship or control over the enterprise, and a provision for the sharing of profits and losses." *See Tilden of N.J., Inc. v. Regency Leasing Sys., Inc.*, 230 A.D.2d 784, 785-86; 646 N.Y.S.2d 700, 701 (2d Dep't 1996) (citation omitted).

6

### III. IAM HAS NOT PROPERLY PLED CLAIMS FOR PROMISSORY ESTOPPEL AND UNJUST ENRICHMENT

Despite acknowledging that "quasi-contractual claims such as unjust enrichment and promissory estoppel are not grounds for relief when there is an express agreement between the parties" (Plaintiffs' Mem. at 11-12), Plaintiffs cite a host of cases for the proposition that such quasi-contractual claims are permitted to be pled in the alternative to a breach of contract claim under the policy of Fed. R. Civ. P. 8 (e)(2). These cases are inapposite, however, in that they involved factual situations in which the very existence or validity of the express agreement itself was in dispute.[6]

Here, there has been no allegation that the express Agreement at issue was invalid, ineffectual, or non-existent – in fact, IAM seeks recovery based on the contract and Defendant is relying upon the contract's terms and validity as a basis to defend against all of Plaintiffs' claims.

---

[6] *See Bridgway Corp. v. Citibank, N.A.*, 132 F. Supp.2d 297, 305 (S.D.N.Y. 2001) ("[b]ecause there is a dispute as to defendant's obligations under the contract, however, plaintiff's unjust enrichment claim survives"); *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp.2d 523, 531 (S.D.N.Y. 2007) ("[w]hen there is a bona fide dispute as to the existence of a contract, a party may proceed upon a theory of unjust enrichment, and an unjust enrichment claim may be alleged alongside a breach of contract claim (citations omitted). *This* is permissible under the liberal alternative pleading policy under Rule 8(e)(2) of the Federal Rules (emphasis added)"); *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 754 F. Supp. 37, 37-40 (S.D.N.Y. 1991) (when defendants asserted that the contract at issue did not bind them, breach of contract and unjust enrichment were allowed to be pled in the alternative (relying on, *inter alia*, *Paper Corp. of the U.S. v. Schoeller Technical Papers, Inc.*, 742 F.Supp. 808, 812 (S.D.N.Y. 1990) (stating that "where, as here, the existence of the contract is in dispute, [Plaintiff] can plead *quantum meruit* in the alternative pursuant to Rule 8(e) of the Federal Rules of Civil Procedure"))); *Leeward Const., Inc. v. Sullivan W. Cent. School Dist.,* No. 05-CIV-8384-SCR, 2006 WL 1722577 at *5 (S.D.N.Y. Jun. 20, 2006) (because the Court did not know whether Defendant would "challenge the terms or existence of the contract," alternative pleading in *quantum meruit* by plaintiff was allowed); *Baii Banking Corp. v. Atlantic Richfield Co.*, No. 86-CIV-6651-JFK, 1990 WL 151124 at *3-5 (S.D.N.Y. Oct. 3, 1990) (despite defendant's denial of a valid contract, plaintiff presented evidence demonstrating that "if the purchase confirmation did in fact establish a contract, it could have been a contract in which the defendant undertook to complete [the purchase]," and plaintiff was also allowed to plead an alternate theory of recovery based on promissory estoppel).

7

Still further, with regard to IAM's allegation of promissory estoppel, IAM posits that this promissory estoppel claim "must be analyzed assuming that the Agreement is non-existent." Plaintiffs' Mem. At 13. Yet, it also claims that the very basis for alleged promissory estoppel was "a clear promise. . . made by Defendant that he would keep his funds in IFL for a minimum of five years" (*Id*.) – a promise allegedly contained within the four corners of the written Agreement at issue. Also, IAM has pled that Defendant "was allowed to redeem his shares" (Compl. ¶ 26), which is inconsistent with the allegation that Defendant breached a promise to keep his funds invested for five years. *See* Plaintiffs' Mem. at 13; Compl. ¶ 35.

Similarly, even if IAM's claim of unjust enrichment was not precluded by the express Agreement, which it is, IAM has not pled any facts concerning any enrichment that Defendant received, unjust or otherwise.

IV. **HOLMSTROM'S CLAIMS MUST FAIL, AS NO FACTS THAT WOULD ESTABLISH A FIDUCIARY DUTY OWING BY DEFENDANT TO HOLMSTROM WERE ALLEGED, AND NO FACTS ESTABLISHING TORTIOUS INTERFERENCE BY DEFENDANT WITH THE ALLEGED IAM-HOLMSTROM AGREEMENT WERE ALLEGED**

There are simply no facts alleged in the Complaint that in any way would support the somewhat amazing and conclusory allegation in Plaintiffs' opposition brief that Holmstrom was a client of Defendant. Rather, Holmstrom alleges in the Complaint that he had a contract with IAM, which was the trading manager for IFL, and that IAM had an agreement with Defendant to manage certain shares in IFL – and as discussed in earlier papers, that alone does not create a fiduciary duty from Defendant to Holmstrom.

Furthermore, even if facts alleging a fiduciary relationship had been pled, which they have not, no facts have been alleged that if true would constitute a breach of that duty. Plaintiffs' Mem. at 15 alleges that Defendant breached his fiduciary duty to Holmstrom by, among other things, "intentionally and knowingly refusing to abide by their agreed upon investment strategy,"

creating 125 margin calls, and failing to cover the last margin call.  First, no facts are alleged in the Complaint to support any agreed-upon investment strategy between Defendant and Holmstrom.  Secondly, there is no basis for the allegation that trading in a manner which led to margin calls that were then covered violated any agreed upon obligation or duty on the part of Defendant.  Still further, even if Defendant owed a duty of care directly to Holmstrom with respect to trading IFL's funds, which he did not, there is no factual basis alleged that Defendant was required to cover a margin call with his personal funds, as opposed to covering a margin call by using fund monies or liquidating securities owned by the fund to generate monies to cover the call.

For the reasons set forth in Defendant's initial brief, Defendant was not a third party or a "stranger" to the alleged agreement between IAM and Holmstrom and thus is not legally capable of tortiously interfering with these alleged contractual relations.  *See Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*, No. 98-CIV-6907-MBM, 2000 WL 335557 at *10 (S.D.N.Y. Mar. 30, 2000) (where CS First Boston had an agreement with CMST with respect to causing the redemption of certain bonds and therefore agreed to be responsible to CMST for performance of CMST's obligation to Page Mills in connection with the bond redemption, CSFB was not a "stranger" to the contractual obligation created by the indenture between CMST and Page Mill).

Moreover, even if Defendant had been a third party to the IAM-Holmstrom agreement, which he was not, Holmstrom has not competently alleged "intentional interference" with that agreement based on "aggressive trading," when Defendant's trading agreement places no restriction on how aggressively he would manage the Class Z shares and in fact expressly contemplated the use of leverage.  Also, Holmstrom alleges no facts, and there is no fair basis to conclude, that mere "aggressive trading" would constitute intentional interference in any event.

9

### V.  PLAINTIFFS SHOULD NOT BE GRANTED LEAVE TO AMEND THE COMPLAINT

Leave to amend a complaint under Rule 15(a) of the Federal Rules of Civil Procedure "will be denied when an amendment is offered in bad faith, would cause undue delay or prejudice, or would be futile." *See Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1198 (2d Cir. 1989).  Through their counsel, Plaintiffs have asserted an extraordinarily broad array of alleged factual and legal theories, and there is no evidence of the existence of any additional facts or theories which might be pled that would competently state a cause of action.  Therefore, as any amended pleading would be futile, Plaintiffs should not be granted leave to amend the Complaint.

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed without leave to amend.

Dated: September 28, 2007                              Respectfully submitted,


*s/ Matthew E. Szwajkowski*
Thomas H. Sear (TS-5570)
Matthew E. Szwajkowski (MS-8362)
JONES DAY
222 East 41st Street
New York, NY 10017-6702
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
mszwajkowski@jonesday.com

*Attorneys for Defendant Daniel Zanger*

10

<u>CERTIFICATE OF SERVICE</u>

The foregoing document was served on the following counsel of record on September 28, 2007 via the method listed below:

**<u>E-Mail, Federal Express, and Hand Delivery</u>**

John Balestriere
Craig Stuart Lanza
Balestriere PLLC
225 Broadway, Suite 2700
New York, NY 10007
clanza@balestriere.net

                              s/ *Matthew E. Szwajkowski*_____