```
                              7A4GZANC.txt
                                                                            1
       7A4GZANC
  1    UNITED STATES DISTRICT COURT
  1    SOUTHERN DISTRICT OF NEW YORK
  2    ------------------------------x
  2
  3    INDEPENDENT ASSET MANAGEMENT
  3    and OLA HOLMSTROM
  4
  4                  Plaintiffs,
  5
  5            v.                              07 CV 6431 (JSR)
  6
  6    DANIEL ZANGER,
  7
  7                  Defendant.
  8
  8    ------------------------------x
  9                                            New York, N.Y.
  9                                            October 4, 2007
 10                                            4:00 p.m.
 10
 11    Before:
 11
 12                     HON. JED S. RAKOFF,
 12
 13                                     District Judge
 13
 14                          APPEARANCES
 14
 15    BALESTRIERE PLLC
 15         Attorneys for Plaintiff
 16    BY:  CRAIG STUART LANZA
 16
 17    JONES DAY
 17         Attorneys for Defendant
 18    BY:  MATTHEW E. SZWAJKOWSKI
 18         THOMAS H. SEAR
 19
 19
 20
 20
 21
 22
 23
 24
 25
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                            2
       7A4GZANC
  1              (Case called)
  2              (In open court)
  3              THE DEPUTY CLERK:  Will counsel please state their
  4    appearances for the record.
  5              MR. LANZA:  Good afternoon, your Honor.  Craig Lanza
  6    on behalf of Independent Asset Management and Ola Holmstrom.
  7              THE COURT:  Good afternoon.
  8              MR. LANZA:  And, your Honor, I am here with an intern
  9    from our office Matt Shu.
 10              MR. SEAR:  And Tom Sear for the defendant Daniel
 11    Zanger.
 12              MR. SZWAJKOWSKI:  Matthew Szwajkowski for the
                                   Page 1
```

```
                              7A4GZANC.txt
13      defendant Daniel Zanger.
14              THE COURT:  Good afternoon.  All right.  We're here on
15      the motion to dismiss.  Let me hear first from moving counsel.
16              MR. SEAR:  Thank you, your Honor.  Your Honor, I'll be
17      brief, because we certainly have I think made the points that
18      we wanted to make in our two briefs, and I know your Honor is
19      exceptionally diligent.
20              THE COURT:  Assuming that I agree with you that
21      certain of the claims should be dismissed -- and I don't think
22      I agree that all of them should, but I think some perhaps
23      should -- why shouldn't it be without prejudice to your claim?
24              MR. SEAR:  Your Honor, I think because a fair reading
25      of the complaint reflects that counsel was fulsome and
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                   (212) 805-0300
                                                                        3
        7A4GZANC
 1      expansive in alleging grievances which we don't think amount to
 2      a legally sufficient claims but grievances.  And secondly,
 3      counsel expanded on them, in our view, in the opposition
 4      papers, the point being that we think they have said everything
 5      that they have to say and that there's no indication of
 6      additional facts that could be pled that would --
 7              THE COURT:  Well, for example, if you say that they
 8      have failed to indicate which provision or provisions of the
 9      contract they believe have been breached, they in their
10      response indicate that they think they have, in essence,
11      alleged violations of paragraphs 1(e) and 13 of the contract
12      and perhaps 1(g) as well.  So why shouldn't they be -- to the
13      extent that you have made an argument that the breach of
14      contract claim should be dismissed because of the failure to
15      allege the specific breaches in the specific paragraphs of the
16      breach, assuming, for the sake of argument, that I agree with
17      that, then you'll have to amend to add those three paragraphs
18      in.
19              MR. SEAR:  Well, I think a fair reading -- I guess the
20      answer is I don't -- I haven't heard anything or read anything
21      from the plaintiffs that would indicate any facts that could be
22      added that would state a claim under those portions of the
23      contract.  I mean, one of the points that we make, Judge, is
24      that the contract is pretty clear that they have a breach that
25      would entitle IAM to recover affirmatively.  They have to state
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                   (212) 805-0300
                                                                        4
        7A4GZANC
 1      facts which would, if true, establish first negligence or
 2      intentional malfeasance, theft or fraud, the point being that I
 3      think at this point there has to be some indication of what
 4      facts they would plead that would make alleged breaches of
 5      those provisions of the contract constitute gross negligence or
 6      intentional malfeasance.  There's been no suggestion of any
 7      such facts.
 8              Indeed, the affirmative --
 9              THE COURT:  Well, the allegation is that Mr. Zanger,
10      quote, induced 125 margin calls and refused to cover a final
11      margin call, and they say those constitute various problems,
12      but including breaches of provisions in the contract.  So if
13      you're saying you don't think on any possible view those could
14      constitute breaches of contract, I understand that argument.
15              MR. SEAR:  That's the argument.  I mean, the
16      contract -- let me give you a chance, Judge --
17              THE COURT:  So paragraph 1(e), for example, says that
                                    Page 2
```

```
                              7A4GZANC.txt
 18      your client, quote, shall remain in full compliance at all
 19      times with prime broker limits, rules or guidelines, and they
 20      say those margin calls constitute a violation of various rules
 21      and guidelines.
 22               MR. SEAR:  I don't think they do, Judge.  I think they
 23      say that the 125 -- I don't see any allegation in the complaint
 24      that says the 125 margin calls violated any guidelines, rules
 25      or limits.
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
                                                                         5
         7A4GZANC
  1               THE COURT:  So supposing that is their position that
  2      it did, you would agree then they should be given leave to
  3      replead.  Yes?
  4               MR. SEAR:  I still think they should have come forward
  5      already and given you an indication that that's what they were
  6      saying.  I don't understand them to say that the existence of
  7      125 margin calls that were covered that they say were induced
  8      by Mr. Zanger constitute a breach of the contract when the
  9      contract itself explicitly provides in 1(a) for 4-to-1
 10      leverage, which is inconsistent with the inducing of those
 11      margin calls being a breach of the agreement.
 12               Let me go on to say they do say that the circumstances
 13      surrounding the final margin call --
 14               THE COURT:  Well, paragraph 23 of their complaint they
 15      say, quote, defendant constantly ran afoul of the requirements
 16      of the agreement and the exchange he was trading.  Now, I don't
 17      know what they have specifically in mind, but if it violated
 18      the exchange rules and that's what they have in mind and they
 19      have some specific rules in mind and they think that,
 20      therefore, by violating those rules, he violated both 1(e) and
 21      13, why shouldn't they be given leave to replead?
 22               MR. SEAR:  Judge, I understand that leave to replead
 23      is literally given.  I have the sincere belief that able
 24      counsel for the plaintiffs, if they had specific rules of the
 25      exchanges or prime brokers that they say were breached by the
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
                                                                         6
         7A4GZANC
  1      125 margin calls, we would have heard of it.
  2               THE COURT:  All right.  Well, let's find out.  Let me
  3      interrupt you.  Are there specific rules?
  4               MR. LANZA:  Yes, your Honor, there are.
  5               THE COURT:  What?
  6               MR. LANZA:  There were rules from the prime broker.
  7      There's a whole host of exchanges from the prime broker --
  8               THE COURT:  Give me a rule that you say they broke.
  9               MR. LANZA:  Well, the margin calls themselves were
 10      considered violations by the prime broker.  In effect, what
 11      happened here --
 12               THE COURT:  Wait a minute.  Well, you say that the
 13      defendant constantly ran afoul of the requirements for the
 14      agreement and the exchange he was trading on.  What is the
 15      requirements of the exchange that you are referring to?
 16               MR. LANZA:  Judge, what we meant by that was the prime
 17      broker as well as the administrator.  This was what was
 18      contemplated by the exchange.  This is the vehicle for which
 19      IFL was able to make those trades.  Because of the --
 20               THE COURT:  Excuse me.  So are you saying that there's
 21      no express rule of any exchange that they violated directly?
 22               MR. LANZA:  No, your Honor.  I'm saying I can't at
                                    Page 3
```

```
                                          7A4GZANC.txt
23      this time cite chapter and verse as to what that rule is, but I
24      can say --
25                THE COURT:  Well, that's the gauntlet that your
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                        7
        7A4GZANC
 1      adversary has laid down in his papers.  If you are not ready to
 2      tell me today in court in oral argument after requesting leave
 3      to replead, when will you be ready?  I mean, this is your
 4      opportunity.
 5                MR. LANZA:  Well, your Honor, it really would just
 6      require taking a look at the e-mail exchanges from the prime
 7      broker to IFL specifically to Independent Asset Management
 8      saying you are in violation of our rules.  You've done this 125
 9      times, or saying --
10                THE COURT:  Do they say that?
11                MR. LANZA:  They do say that.  There are exchanges
12      from a woman named Giovana Artura who works for Goldman, Sachs
13      who was consistently irate over these margin calls, and they
14      were --
15                THE COURT:  Well, being consistently irate doesn't
16      state a breach of contract.  It may, you know, give her lots of
17      stress, but I understand that's part of being an employee of
18      Goldman, Sachs anyway.  But does she say you violated the
19      rules?
20                MR. LANZA:  Yes, your Honor.  It's our understanding
21      that she does, and she actually indicates which rules were
22      violated by these margin calls.
23                THE COURT:  All right.
24                MR. LANZA:  In addition, Judge, if I may, if we were
25      allowed to replead, one other fact which we saw as something
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                        8
        7A4GZANC
 1      that buttressed our argument and didn't necessarily need to
 2      come in because of the sort of plain-statement rules that are
 3      here, but a very significant fact is the fact that Dan Zanger
 4      wasn't compliant with IAM.  There were a number of exchanges,
 5      for example, where these margin calls were never recorded.
 6      They only found out --
 7                THE COURT:  Let me go back to Mr. Sear.  Mr. Sear,
 8      your adversary, though arguably less prepared than he ideally
 9      might have been, says that there are specific e-mails that
10      identify specific rules that allegedly were violated.  Why
11      shouldn't he be given the opportunity to put that into his
12      complaint?
13                MR. SEAR:  Because the standard for the alleged breach
14      of contract here is one where they have to plead facts which,
15      if true, would establish intentional malfeasance or gross
16      negligence.
17                THE COURT:  No.  No.  We're talking about the breach
18      of contract.
19                MR. SEAR:  Yes.  That's the standard under the
20      contract, Judge.
21                THE COURT:  The --
22                MR. SEAR:  That's the only way -- it's very important,
23      Judge.
24                THE COURT:  No.  I understand what you're saying, but
25      I don't understand how that can be a basis for a dismissal.  In
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                 Page 4
```

7A4GZANC.txt

9

7A4GZANC
1  other words, he says there are a bunch of e-mails saying that
2  your client repeatedly violated the rules. So why doesn't that
3  motion to dismiss constitute a sufficient basis to constitute
4  gross negligence?
5           MR. SEAR: Because by itself, that factual allegation,
6  as general as it is, if true, does not rise to the level of
7  establishing, if true, gross negligence, which under New York
8  law applicable here -- I think we both agree on that -- is
9  conduct that smacks of intentional wrongdoing or intentional
10 malfeasance, which is intentional wrongdoing.
11          Keep in mind, your Honor, this is a situation in
12 which --
13          THE COURT: No. Let's be clear. Gross negligence,
14 not only under the law of New York but everywhere, does not
15 require as much intentionality as a nonnegligent intent.
16          MR. SEAR: Right. The phrase that is used in the case
17 that I think both sides cite is it smacks of intentional
18 wrongdoing.
19          THE COURT: There's nothing like a good smacking, but
20 it's hard to know what that means in the context of a
21 complaint.
22          MR. SEAR: Well, we have cited in our brief, your
23 Honor, the cases which say you've got to plead gross negligence
24 or intentional malfeasance, sticking with gross --
25          THE COURT: Well, I'm not arguing with you at the
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

10

7A4GZANC
1  moment that they have necessarily pled -- it seems to me
2  crystal clear at least some of their claims are not adequately
3  pled. Without going through each and every claim for the
4  moment, the question I'm posing is why shouldn't they be given
5  another bite at the apple?
6           MR. SEAR: I have to say I'm surprised to hear counsel
7  say what he just said, because I would have expected it. If
8  they had that, we would have heard that before. This is news
9  to me in terms of the alleged violations I guess of -- I think
10 he is saying of the exchange based upon the 125 margin calls.
11 My understanding is there's nothing wrong with margin calls.
12 You have to cover a margin call. Margin calls were covered
13 here. Whenever you trade on leverage, which is explicitly
14 contemplated under this, you're invariably going to end up with
15 margin calls.
16          THE COURT: Well, I'm going to interrupt you, because
17 I think it is unlikely that they will be able to replead at
18 least some of their claims, but I really think I would be
19 inclined to face a well-accepted Second Circuit precedent if I
20 didn't give them one more shot.
21          Now, there are some claims -- and let's turn to
22 them -- where it's not a question of adding more pleadings.
23 And I'm referring to the ones that are inconsistent with an
24 express contract claim like a breach of fiduciary duty and
25 unjust enrichment and a promissory estoppel claim.
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

11

7A4GZANC
1           But my question for you, Mr. Sear, is you have
2  asserted or do you intend or at least want to keep open the
3  option of asserting that the contract itself is invalid? If

```
                              7A4GZANC.txt
 4      you do, then they'd complete that in the alternative agreement.
 5              MR. SEAR:  We do not.  We rest on the contract.  We
 6      defended on the contract.  We think the contract provisions
 7      provide a defense to all of these claims.  And so I appreciate
 8      what you are saying, your Honor.
 9              THE COURT:  All right.  So let me turn, if I may --
10      and I will come right back to you in a minute -- to your
11      adversary.  And given that assertion, isn't it crystal clear
12      that the fiduciary duty of unjust enrichment and promissory
13      estoppel claims have to go?
14              MR. LANZA:  Given that assertion and in the case with
15      the unjust enrichment and promissory estoppel claims, provided
16      the other side is willing to stipulate that the contract is a
17      valid --
18              THE COURT:  Yeah.  What they are stipulating is they
19      will not assert the invalidity of the contract.  Correct?
20              MR. SEAR:  Correct.
21              MR. LANZA:  However, Judge, I believe the fiduciary
22      duty arises from a totally different standard.  This is a joint
23      venture.  There are cases out there -- for example, the other
24      side relies on a case called Cadbury.
25              THE COURT:  Okay.  I agree with you that the fiduciary
                      SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                        12
        7A4GZANC
 1      duty is a different -- not necessarily the same analysis.  I
 2      know there are many, many arguments that both sides make here,
 3      and I don't mean to cut you short, but you did give me very
 4      full papers on both sides.  What I think I should do is issue
 5      no later than Tuesday of next week a bottom-line order with an
 6      opinion to follow saying which claims are gone, period, which
 7      claims are not gone, period, and which claims are gone without
 8      prejudice to replead it.
 9              Why don't we talk now on that third category of -- a
10      contract claim would be a good example -- how long you want to
11      replead the ones that I'm going to dismiss without prejudice.
12              MR. LANZA:  Well, your Honor, we wouldn't need much
13      time.  I mean, it's a question of me going back to my client,
14      going through what's there.  He has already sent me things that
15      involve exchanges between him and Goldman, Sachs.
16              THE COURT:  So two weeks?
17              MR. LANZA:  That seems reasonable, Judge.
18              THE COURT:  So two weeks from Tuesday would be October
19      23rd.  Then the movant against some of the repleaded claims,
20      maybe adopting large parts of your existing --
21              MR. SEAR:  We very well may.  I'm --
22              THE COURT:  Well, I'll give you that opportunity.  So
23      assuming you wanted to, could you do that within two weeks
24      after?
25              MR. SEAR:  Yes.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                        13
        7A4GZANC
 1              THE COURT:  So that would be November 6th, answering
 2      papers November 20th, reply papers November 27th.  I don't
 3      think I need oral argument at that point.  And I would get you
 4      a bottom-line ruling on that by December 7th in honor of Pearl
 5      Harbor day.
 6              So what I think you ought to do -- and you don't have
 7      to submit it to me today.  Wait till you get my bottom-line
 8      ruling.  But prepare a new case management plan -- because I
                                  Page 6
```

```
                            7A4GZANC.txt
 9    know you are going to bring one -- premised on all discovery
10    kicking in after December 7th, after which you'll know where it
11    stands, and with all discovery to be completed within five
12    months thereafter.  Okay?
13              MR. SEAR:   Thanks very much.
14              MR. LANZA:  Thanks, your Honor.
15                                  oOo
16
17
18
19
20
21
22
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

♀