```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------x
INDEPENDENT ASSET MANAGEMENT LLC and   :
OLA HOLMSTROM,                         :
                                       :       07 Civ. 6431 (JSR)
            Plaintiffs,                :
                                       :       MEMORANDUM
            -v-                        :
                                       :
DANIEL ZANGER,                         :
                                       :
            Defendant.                 :
--------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

By Order dated October 5, 2007, the Court granted the motion of defendant Daniel Zanger to dismiss the complaint, but without prejudice to plaintiffs Independent Asset Management LLC ("IAM") and Ola Holmstrom amending the complaint by October 23, 2007 as to four of the causes of action. Plaintiffs timely amended their complaint in due course, and defendant then filed a new motion to dismiss. By Order dated December 4, 2007, the Court denied the motion as to the two claims propounded by IAM but granted the motion with prejudice as to the two claims propounded by Holmstrom. This Memorandum states the reasons for the October 5 and December 4 rulings.

By way of background, IAM is the trading manager for a hedge fund called The Independent Fund Limited ("IFL"). Amended Complaint ¶ 2.[1] On October 19, 2004, Zanger and IAM entered into a contract that provided that over a period of five years Zanger would deposit between $5 million and $50 million into IFL's "Class Z shares" and would manage that money. Id. ¶¶ 11, 13-14. This somewhat unusual

---

[1] Although there are substantial differences between the original and amended complaints, the background facts are common to both.

agreement was supposed to provide Zanger with "an existing offshore investing vehicle as well as someone to market him as a trader." Id. ¶ 12. IAM and Zanger were to split the fees earned from the fund. Id. ¶¶ 15-17. Plaintiff Holmstrom invested $500,000 in IFL's Class Z shares on March 1, 2006. Id. ¶ 25.

According to plaintiffs, Zanger immediately began to engage in aggressive, volatile trading that led to over 100 margin calls. Id. ¶¶ 24, 29. In late 2006, Zanger refused to cover two day trade calls, which had the effect of effectively shutting IFL down. Id. ¶¶ 39-45. Zanger then redeemed his Class Z shares, id. ¶ 48, while Holmstrom lost about $170,000 of his $500,000 investment and IAM lost $6 to 8 million "in revenue . . . and lost opportunities," id. ¶ 50.

Based on these essential facts, IAM, in the original complaint, brought claims for breach of fiduciary duty, unjust enrichment, breach of contract, and promissory estoppel, Complaint ¶ 28-39, and Holmstrom brought claims for breach of fiduciary duty and tortious interference, id. ¶¶ 40-45. Zanger moved to dismiss all of the claims. At oral argument on this motion, Zanger's counsel stipulated that Zanger would not assert the invalidity of the agreement between himself and IAM as a defense. See transcript, 10/4/07. Because IAM had concededly pleaded its unjust enrichment and promissory estoppel claims only as alternatives to its breach of contract claim, the Court, on the basis of defense counsel's stipulation, dismissed those claims with prejudice in the October 5, 2007 Order. However, while the Court also dismissed the remaining four claims -- i.e., IAM's claims for breach of contract and breach of fiduciary duty and Holmstrom's claims for breach of fiduciary duty

and tortious interference -- it did so without prejudice to plaintiffs' repleading them, if it could, in an amended complaint that might cure the facial deficiencies. See Order, 10/5/07.

Plaintiffs duly repleaded all four claims in their amended complaint, and defendants, in turn, renewed their motion to dismiss. We consider each claim in turn:

IAM's breach of contract claim. To plead a claim for breach of contract, IAM must adequately allege 1) a contract between itself and Zanger, 2) performance of the contract by itself, 3) breach by Zanger, and 4) damages. See Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000). Zanger challenges the sufficiency of IAM's amended breach of contract claim with respect to the third and fourth prongs, i.e., breach and damages. However, IAM's amended complaint has provided sufficient new allegations respecting these two elements to survive a motion to dismiss, albeit only after the claim is narrowed.

The primary (but not only) breach alleged in the amended complaint is to the effect that Zanger, by trading in such volatile fashion, induced numerous margin calls as well as two "day trading calls," and thereby breached Paragraph 13 and Paragraph 1(e) of the Zanger-IAM agreement. See Amended Complaint ¶¶ 19, 31, 32.

Paragraph 13 provides that "IAM and DZ [Daniel Zanger] each agree to stay in compliance with all U.S. federal, state and local laws, as well as ... all rules and regulations of any exchanges on which they trade." Agreement Between Daniel Zanger and Independent Asset Management, Exhibit 1 to Amended Complaint ("Agreement") ¶ 13. As to the margin calls, the amended complaint alleges that Zanger breached this provision because the margin calls that he induced

3

violated Securities and Exchange Commission Regulation T and New York Stock Exchange Rule 431.  Amended Complaint ¶ 30.  But Regulation T only requires, in relevant part, that "[a] margin call shall be satisfied within one payment period after the margin deficiency was created or increased."  12 C.F.R. § 220.4(c)(3)(i).  Since Regulation T allows a period of time in which to satisfy the call, Regulation T is not violated until that period of time has expired and the call remains unsatisfied.  See, e.g., Pearlstein v. Scudder & German, 429 F.2d 1136, 1139-40 (2d Cir. 1970); Citizens & S. Sec. Corp. v. Braten, 733 F. Supp. 655, 658 (S.D.N.Y. 1990); see also 69 Am. Jur. 2d Securities Regulation-Federal § 489; William E. Aiken, Jr., Annotation, Civil Liability of Securities Brokers or Dealers for Violation of Margin Requirements of § 7 of Securities Exchange Act of 1934 (15 U.S.C.A. § 78g) and Regulation T Promulgated Thereunder (12 CFR §§ 220.1 et seq.), 35 A.L.R. Fed. 381 (1977).  Similarly, Rule 431 of the New York Stock Exchange provides for a specific period of time within which a margin call must be satisfied.  N.Y. Stock Exch. Rule 431(f)(6) ("The amount of margin or 'mark to market' required by any provision of this Rule shall be obtained as promptly as possible and in any event within fifteen business days from the date such deficiency occurred, unless the Exchange has specifically granted the member organization additional time.").

The amended complaint does not allege that Zanger's 100 or so margin calls were not ultimately satisfied within the prescribed period.  Accordingly, as to the margin calls, the amended complaint fails to adequately allege a breach of Paragraph 13 of the Agreement.

4

The "day trading calls," however, are a different story. According to the amended complaint, in November 2006, two of Zanger's trades led to "day trading calls" that were not satisfied within the period prescribed by Rule 431. Amended Complaint ¶¶ 37-44. These allegations are sufficient to make out a breach of Paragraph 13 of the agreement as to these calls.

Paragraph 1(e) of the Agreement presents different problems. That paragraph provides that "DZ shall remain in full compliance at all times with Prime Broker limits, rules or guidelines." Agreement ¶ 1(e). The Prime Broker in this case, Goldman Sachs Execution & Clearing, L.P. ("GSEC"), had a Customer Futures and Options Agreement that provided in part that:

> Customer agrees at all times to maintain adequate margins in the account so as continually to meet the original and maintenance margin requirements established by GSEC in its sole discretion from time to time. GSEC's margin requirements may exceed the margin requirements set by any exchange or other regulatory authority and need not be uniform as among customers or commodities.... Customer agrees to deposit margins and pay premiums immediately upon GSEC's request.

Customer Futures and Options Agreement, Exhibit 3 to Amended Complaint ("Prime Broker Agreement") ¶ 2. IAM alleges that this provision was violated by 66 of the "house margin calls" between August 2005 and November 2006. Zanger, who bears the burden on this motion to dismiss, responds not by providing evidence of the actual "original and maintenance margin requirements established by GSEC," but rather by asserting in conclusory fashion that these requirements "follow[] the rubric" of Regulation T and Rule 431 "by allowing a trader to correct margin deficiencies that commonly arise." Memorandum of Law in Support of Defendant's Motion to Dismiss the

5

Amended Complaint at 8. Although if either party had bothered to provide the Court with GSEC's actual requirements, this dispute might have been resolvable here, neither party has done so, and so IAM's allegations concerning margin calls are sufficient to state a claim for the breach of Paragraph 1(e).

It should also be noted the amended complaint alleges still other breaches that, while less significant, are sufficient to support the cause of action.[2]

As to the element of damages, IAM has pled enough to survive a motion to dismiss on this issue as well. For example, the amended complaint sets forth the theory that Zanger's alleged breaches of the contract, and particularly his inducing of the two "day trading calls" that he deliberately did not meet, led to IFL's being shut down, which in turn deprived IAM of the opportunity to profit from the continued existence of the fund. See id. ¶ 62. This is a

---

[2] Zanger argues that there was no breach in any event, because the Agreement between Zanger and IAM provided that neither party would be liable for breach absent "wilful malfeasance, fraud, theft, or gross negligence." Agreement ¶ 9. Even assuming this provision is otherwise applicable, however, the allegations of the amended complaint evidence gross negligence, that is, "'conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing.'" Am. Tel. & Tel. Co. v. City of New York, 83 F.3d 549, 556 (2d Cir. 1996) (quoting Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd., 81 N.Y.2d 821, 823-24 (1993)). For instance, the amended complaint alleges that Zanger caused over 100 margin calls that violated GSEC limits, thus breaching his agreement with IAM over 100 times. Amended Complaint ¶ 29. These facts alone make out an allegation of gross negligence. Further, IAM alleges that Zanger intentionally caused the two day trading calls in late 2006 that he deliberately did not meet, for the purpose of shutting down IFL and redeeming his shares. Id. at ¶ 66-67. These facts, as pled, make out an allegation of intentional wrongdoing. Accordingly, the breach of contract claim cannot be dismissed on the basis of a failure to plead facts that might amount to gross negligence or wilful malfeasance.

plausible allegation of damages, and for the purposes of a motion to dismiss no more specific allegations are required. That IAM may not be able to prove the damages that it alleges -- as Zanger argues -- is not a reason to dismiss the claim.

IAM's breach of fiduciary duty claim.[3]  Under New York law, IAM, to succeed on its amended breach of fiduciary duty claim, "must demonstrate: (1) that a fiduciary duty existed between plaintiff and defendant; and (2) that defendant breached that duty." Regions Bank v. Wieder & Mastroianni, P.C., 423 F. Supp. 2d 265, 270 (S.D.N.Y. 2006). In determining whether a fiduciary duty exists, the focus is on whether one person has reposed "trust or confidence in another" and whether the second person accepts the trust and confidence and "thereby gains a resulting superiority or influence over the first." Id.

In the amended complaint, IAM has alleged that the agreement between IAM and Zanger, which contemplated that Zanger "would invest his own money in IFL and manage that money" in exchange for IAM using its experience as a "hedge fund marketer and manager" to "market [Zanger] to outside investors," created a joint venture between the parties. Amended Complaint ¶¶ 1, 12-13, 64. As a matter of New York law, joint venturers owe each other a fiduciary duty. See Smart Egg

---

[3] Although in its response to the motion to dismiss the amended complaint IAM failed to specifically address Zanger's arguments supporting dismissal of IAM's amended breach of fiduciary duty claim, the Court declines to treat IAM's opposition to the second motion to dismiss as waived. Zanger made the same basic arguments relating to the breach of fiduciary duty claims in both its first and second motions, and IAM clearly responded to the first motion. Accordingly, the Court treats IAM's original opposition as relating to both the first and second motions to dismiss the fiduciary duty claim.

Pictures, S.A. v. New Line Cinema Corp., 624 N.Y.S.2d 150, 151 (App. Div. 1995). IAM has also alleged that Zanger "wanted to get out of [the] joint venture" and "recklessly caused excessive margin calls and then intentionally refused to cover such calls in order to shut IFL down." Amended Complaint ¶¶ 65, 67. This allegation of self-interested behavior, if true, would be a breach of Zanger's fiduciary duty to IAM as a joint venturer.[4]

Holmstrom's breach of fiduciary duty claim. Unlike the claims of IAM, Holmstrom's claims require dismissal. As to Holmstrom's breach of fiduciary duty claim, the allegations in the original complaint were insufficient to establish that a fiduciary duty existed between Zanger and Holmstrom. The original complaint contained little mention of Holmstrom; indeed, in relation to the breach of fiduciary duty claim, it mentioned Holmstrom only twice. First, it stated that "Despite many attempts, due to [Zanger]'s poor performance IAM was only able to find one investor [for the fund].

---

[4] The breach of fiduciary duty claim need not be dismissed in this case merely because there is also a breach of contract claim, because, reading the complaint most favorably to IAM, IAM has alleged a breach of fiduciary duty that is premised on slightly different facts than the breach of contract claim. See William Kaufman Org., Ltd. v. Graham & James LLP, 703 N.Y.S.2d 439, 442 (App. Div. 2000) ("A cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand."). It would be especially inappropriate to dismiss the claim founded on fiduciary duty at this point in the litigation, when the exact duties of the parties under the contract have not yet been determined, and thus it may well be that a fiduciary duty arising from the parties' alleged relationship as co-venturers would be separate from and independent of the duties under the contract. See Mandelblatt v. Devon Stores, Inc., 521 N.Y.S.2d 672, 676 (App. Div. 1987) ("It is well settled that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a [fiduciary] duty arising out of the relationship created by contract but which is independent of the contract itself.").

8

On March 1, 2006, Holmstrom invested $500,000 in IFL based on the marketing efforts of IAM." Complaint ¶ 20. Second, it stated that Zanger "breached his fiduciary duty to Ola Holmstrom. [Zanger] was a manager of Ola Holmstrom's funds in IFL. [Zanger] placed his own interests first by refusing to cover the [final] margin call that [Zanger] recklessly created. As a result of [Zanger]'s actions, Holmstrom suffered damages in the amount of approximately $170,000 dollars." Id. ¶ 41. Even read liberally, these allegations do not reasonably imply that Holmstrom placed his trust and confidence in Zanger, or indeed even that Holmstrom knew that Zanger was managing the fund. Also missing is any allegation that Zanger accepted the trust and confidence of Holmstrom, that Zanger even knew of Holmstrom's existence, or that Zanger had any "superiority or influence" over Holmstrom. The facts that are alleged -- that Zanger managed a fund for IAM and that Holmstrom invested in IAM's fund -- cannot, by themselves, create a fiduciary duty between Zanger and Holmstrom, even when added to allegations that Zanger mismanaged the fund.

The amended complaint fails to remedy the problem. It does add two new allegations -- that Zanger "accepted the responsibility to act as a fiduciary when he ... agreed to manage Holmstrom's money," Amended Complaint ¶ 1, and that "[a]s manager of Holmstrom's money, [Zanger] owed a fiduciary duty to Holmstrom," id. ¶ 70 -- but these are wholly conclusory. Moreover, even if the Court liberally reads the allegation that Zanger "agreed to manage Holmstrom's money" as an allegation that Zanger knew that Holmstrom was investing money in the fund and affirmatively agreed to manage that money, there are

9

no facts alleged which would indicate that Holmstrom reposed any trust and confidence in Zanger or that Holmstrom was even aware of the fact that Zanger would be the person managing his money.

<u>Holmstrom's tortious interference claim.</u>  Under New York law, to succeed on a claim of tortious interference with contractual relations, Holmstrom must show "(a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff."  <u>Albert v. Loksen</u>, 239 F.3d 256, 274 (2d Cir. 2001).  The New York Court of Appeals has describe the "intention" required by the third prong as "an intention to harm plaintiff without economic or other lawful excuse or justification."  <u>Alvord & Swift v. Stewart M. Muller Constr. Co.</u>, 385 N.E.2d 1238, 1241 (N.Y. 1978).  While Holmstrom makes the conclusory allegation that Zanger "intentionally and improperly caused IAM to breach the contract against Holmstrom," Amended Complaint ¶ 75, Holmstrom alleges no facts that would show that Zanger engaged in the complained-of conduct for the purpose of causing IAM to breach its contract with Holmstrom, let alone that he acted with an intent to harm Holmstrom.  Instead, the amended complaint alleges that Zanger engaged in the conduct out of pure self-interest, i.e., because he "wanted to get out of [the] joint venture because [he] felt that IAM was 'making money' off of him" and he wanted to "redeem his money."  <u>Id.</u> ¶¶ 65, 67.

For the forgoing reasons, Zanger's first motion to dismiss was granted in its entirety, <u>see</u> Order, 10/5/07, and Zanger's second

M. Muller Constr. Co., 385 N.E.2d 1238, 1241 (N.Y. 1978). While Holmstrom makes the conclusory allegation that Zanger "intentionally and improperly caused IAM to breach the contract against Holmstrom," Amended Complaint ¶ 75, Holmstrom alleges no facts that would show that Zanger engaged in the complained-of conduct for the purpose of causing IAM to breach its contract with Holmstrom, let alone that he acted with an intent to harm Holmstrom. Instead, the amended complaint alleges that Zanger engaged in the conduct out of pure self-interest, i.e., because he "wanted to get out of [the] joint venture because [he] felt that IAM was 'making money' off of him" and he wanted to "redeem his money." Id. ¶¶ 65, 67.

For the forgoing reasons, Zanger's first motion to dismiss was granted in its entirety, see Order, 10/5/07, and Zanger's second motion to dismiss was granted with respect to Holmstrom's claims but denied as to IAM's claims, see Order, 12/4/07.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       March 18, 2008

11