# Exhibit A

```
 1                                                              1
 2    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 3    -------------------------------x
 4    INDEPENDENT ASSET MANAGEMENT LLC
      and OLA HOLMSTROM,
 5
                Plaintiffs,
 6
           v.                              1:07-CV-06431-JSR
 7
      DANIEL ZANGER,
 8
                Defendant.
 9
      -------------------------------x
10
                                    March 3, 2008
11                                  10:30 a.m.
12
13
14         Deposition of JOSEPH J. PORCO, taken by
15    defendant, pursuant to notice, at the offices of
16    Jones Day, 222 East 41st Street, New York, NY
17    10017, before Joseph B. Pirozzi, a Registered
18    Professional Reporter and Notary Public of the
19    State of New York.
20
21
22
23
24
25
```

| | Porco | 10 |

1    ability to expand into other classes and shares.
2             He interacted with Dan when he was able
3    to get Dan to respond. And he interacted with
4    counsel, with the administrator, with the board
5    of directors of the fund, with Appleby Sperling,
6    the Bermuda counsel, dealt with issues as they
7    arose with every aspect of the operation, if
8    there were forms that needed to be done with the
9    BMA, or whatever would arise.
10        Q.   And did Mr. Szele follow Dan's trading
11   activities on a frequent and constant basis?
12        A.   Yes. As frequent as he could. There
13   was some lapse in response and then there was
14   some issues of nondisclosure which arose from
15   Dan.
16        Q.   Was Mr. Szele able on a daily basis to
17   access the trading records of Dan from Goldman,
18   Sachs?
19        A.   In real time, I don't believe so. I
20   believe by day end, you know.
21        Q.   Yes.
22        A.   He could see, you know, after the fact.
23   But they were to have a very specific
24   understanding of limits and drawdowns and such

```
                              Porco                            11
```

1  that were to be followed, and I believe that's,
2  in part, part of the problems, that Dan exceeded
3  those limitations.
4      Q.   Am I correct, though, that on a daily
5  basis at day end, Mr. Szele had full access of
6  all of the trading information through Goldman,
7  Sachs of Dan's trades?
8      A.   I believe the trades were visible at
9  day end, yes.  Some of the stuff would be
10 swept -- Goldman would sweep some money out to a
11 couple of other houses that Dan utilized and some
12 of that may have trailed behind.  It may not have
13 been there at the same exact time of any trades
14 that he did at Goldman.
15     Q.   Let me show you what we have premarked
16 as Zanger Exhibit 1.
17          (Zanger Exhibit 1 was marked for
18     identification)
19     Q.   And Zanger 1 purports to be a financing
20 statement for Independent Fund Limited for 2006.
21 And Zanger Exhibit 2 purports to be such a
22 statement for December 2005.
23          (Zanger Exhibit 2 was marked for
24     identification)