# Exhibit E

# Goldman Sachs Execution & Clearing, L.P.

## CORPORATE AUTHORIZATION

**CERTIFICATION**

I, _Roslyn O'Brien_, Secretary of _The Independent Fund Limited_, a ~~Corporation~~ limited liability ~~organized company~~, organized under the laws of the ~~State of~~ _Bermuda, hereafter called_ (the "Corporation") do hereby certify ~~that at a meeting~~ _by unanimous written resolutions dated 7th_ of the Board of Directors of the Corporation ~~duly held on the~~ day of _September_, 20_05_, the resolutions set forth below were duly adopted, that said resolutions have not been amended, rescinded or revoked and are in no way in conflict with any of the provisions of the charter or by-laws of said Corporation.

I further certify that the Corporation is duly organized and has the power to take the action called for by the resolutions set forth below and that each of the following has been duly elected and is now legally holding the office set opposite his name.

_George B. Szele_, President, _John McCorvey III_, Vice President
_Roslyn O'Brien_, Secretary/~~Treasurer~~, _Donna Phillips_, Assistant Secretary

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the seal of the Corporation this _9th_ day of _September_, 20_05_.

(Seal of Corporation
to be affixed here.)

_Roslyn O'Brien_
Secretary

**CORPORATE RESOLUTIONS**

RESOLVED: That the President or any ~~Vice-President of the Corporation~~ _manager of Class Z shares of the Corporation, (currently Daniel Zanger)_ be and he hereby is authorized and empowered, for and on behalf of the Corporation, to buy, sell (including short sales) and otherwise deal in, on margin or otherwise, commodities, commodity futures contracts and commodity options; to receive on behalf of the Corporation account demands, notices, confirmations, reports, statements of account and communications of every kind; to receive on behalf of the Corporation account money, securities and property of every kind, and to dispose of same; to make on behalf of the Corporation account agreements relating to any of the foregoing matters and to terminate or modify same or waive any of the provisions thereof; and generally to deal with Goldman Sachs Execution & Clearing, L.P. ("GSEC") on behalf of the Corporation account ~~as fully and completely as if he~~ ~~or she alone were interested in said account~~, all without notice to the other or others interested in said account; and to execute and deliver to GSEC the customer agreement and all other related documents on behalf of the Corporation. The authority hereby conferred shall remain in force until written notice of its revocation addressed to GSEC and delivered at its office; and it was further

RESOLVED: That any and all past transactions of any kind herein authorized, which may have been heretofore made on behalf of this Corporation through or with GSEC is hereby ratified; and it was further

RESOLVED: That GSEC is authorized to act upon the authority of these resolutions until receipt by it of a certificate showing rescission or modification thereof signed by the Secretary of this Corporation and under its seal, and that GSEC is also authorized to recognize and deal with the officers of the Corporation whose names are set forth below, until receipt by said firm of a further certificate, setting forth the names of another person or persons as such officers.

| NAME | TITLE |
|---|---|
| _Roslyn O'Brien_ | _Secretary_ |
| _George B. Szele_ | _President_ |

IAM 000005

<u>The Independent Fund Limited</u>

<u>Written Resolutions of the Directors</u>
Pursuant to § 63 of the Bye-Laws

We, the undersigned, being all of the Directors for the time being of The Independent Fund Limited (the "Company"), pursuant to Bye-law 63 of the Company's Bye-laws, do HEREBY CONSENT to the following action and adopt the resolutions set out below. This Written Consent may be executed in counterparts, and a copy shall be inserted into the Company's Minute Book. Any action taken herein shall be of the same force and effect as if the same had been passed by a Meeting of the Board of Directors duly called and constituted.

<u>Goldman Sachs Execution & Clearing, L.P.</u>

RESOLVED that the President or any Manager of Class Z Shares of the Corporation currently Daniel Zanger, be and he hereby is authorised and empowered, for and on behalf of the Corporation, to buy, sell (including short sales), and otherwise deal in, on margin or otherwise, commodities, commodity futures contracts and commodity options; to receive on behalf of the Corporation account demands, notices, confirmations, reports, statements of account and communications of every kind; to receive on behalf of the Corporation account money, securities and property of every kind, and to dispose of same; to make on behalf of the Corporation account agreements relating to any of the foregoing matters and to terminate or modify same or waive any of the provisions thereof; and generally to deal with Goldman Sachs Execution & Clearing, L.P. ("GSEC") on behalf of the Corporation account, all without notice to the other or others interested in said account; and to execute and deliver to GSEC the customer agreement and all other related documents on behalf of the Corporation. The authority hereby conferred shall remain in force until written notice of its revocation addressed to GSEC and delivered at its office; and it was

FURTHER RESOLVED that any and all past transactions of any kind herein authorised, which may have been heretofore made on behalf of this Corporation through or with GSEC is hereby ratified; and it was

FURTHER RESOLVED that GSEC is authorised to act upon the authority of these resolutions until receipt by it of a certificate showing recision or modification thereof signed by the Secretary of this Corporation and under its seal, and that GSEC is also authorised to recognize and deal with the officers of the Corporation whose names are set forth below; until receipt by said firm of a further certificate, setting forth the names of another person or persons as such officers.

Dated this 7th day September, 2005

_____
George B. Szele

_____
John McCorvey

_____
Andrew Collins

IAM 000006

2

# POWER OF ATTORNEY

Customer hereby authorizes __Daniel Zanger__
(Name of Trading Manager)

__4872 Topanga Canyon Blvd PMB #401 Woodland Hills CA 91364__
(Address of Trading Manager)

as Customer's manager ("Trading Manager") to buy and sell physical commodities, forward contracts, futures contracts and commodity options (including options on futures contracts) and to make or take delivery in fulfillment of such contracts or options for Customer's account and risk through Goldman Sachs Execution & Clearing, L.P. ("GSEC"). Customer hereby indemnifies GSEC and its directors, officers, employees and agents from and against all liability arising directly or indirectly, from following Trading Manager's instructions and will pay GSEC promptly, on demand, any losses arising from such trades and any debit balance resulting therefrom.

In all such purchases, sales or trades, GSEC is authorized to follow Trading Manager's instructions in every respect and Trading Manager is authorized to act for Customer with the same force and effect as Customer might do with respect to such purchases, sales or trades and all things necessary or incidental to the furtherance of such purchases, sales or trades. GSEC is directed to send to Trading Manager a copy of all statements that GSEC sends to Customer concerning Customer's account, including, but not limited to, monthly statements, confirmations and purchase and sale agreements. Customer hereby ratifies and confirms any and all transactions with GSEC heretofore and hereafter made by Trading Manager for Customer's account

Trading Manager is not authorized to withdraw from Customer's account any monies, securities or any property either in Customer's name or otherwise unless such withdrawal or payment is specifically authorized in writing by Customer. However, Customer authorizes GSEC to deduct from Customer's account and pay Trading Manager's fees upon presentation of a bill therefore. Customer acknowledges that GSEC has no responsibility to determine or verify the accuracy of any such bills.

This Power of Attorney shall remain in full force and effect until GSEC receives from Customer written notification of Customer's revocation thereof.

Customer understands that GSEC is in no way responsible for any loss to Customer occasioned by actions of the individual or organization named above and that GSEC does not, by implication or otherwise, endorse the operation or methods of such individual or organization.

CUSTOMER NAME: __The Independent Fund Limited__

By: __[signature]__   DATE: __8/25/05__
Authorized Signature __George Szele, Director__

PRINT NAME AND TITLE: __George Szele, Director__

## TRADING MANAGER'S ACCEPTANCE

IAM 000007

3

The undersigned acknowledges receipt of a copy of the foregoing Power of Attorney and a copy of the Futures and Options Customer Agreement between Goldman Sachs Execution & Clearing, L.P. ("GSEC") and Customer and hereby accepts appointment as Customer's Trading Manager.

Trading Manager also represents and warrants to GSEC that Trading Manager is:

___(a) a Commodity Trading Advisor ("CTA") registered as such pursuant to the Commodity Exchange Act, as amended ("CEAct"), and a member of National Futures Association and has furnished Customer with a copy of its CTA disclosure document, which disclosure document fully complies with the requirement of CFTC Regulation Section 4.34; or

___(b) a CTA exempt from registration pursuant to the CEAct; or

√ (C) excluded from the definition of CTA.

**Check (a) or (b) or (c). If (b) or (c) is checked, state the basis for exemption or exclusion.**

_____

_____

The undersigned agrees promptly to give GSEC written notice if any of the representations or warranties set forth above become inaccurate or in any way ceases to be true, complete and correct.

The following officers or employees of Trading Manager are authorized to buy, sell, exchange and otherwise deal in any and all securities, options, futures and contracts for the purchase or sale of commodities on margin and/or otherwise. The power to sell includes the power to sell "short". GSEC may absolutely rely on all instructions, whether verbal or written, received by it from such officers or employees with respect to any of the transactions referred to above without further inquiry until it receives written notice of a change from the Trading Manager or Customer.

(ONLY) Daniel Zanger | Trader | ~~Signature~~
Name | Title | Signature

_____ | _____ | _____
Name | Title | Signature

_____ | _____ | _____
Name | Title | Signature

NAME OF TRADING MANAGER: Daniel Zanger

By: George Szele          DATE: 8/25/05
    Authorized signature

PRINT NAME AND TITLE: The Independent Fund Limited, George Szele Director

**CUSTOMER ACKNOWLEDGMENT OF
DISCRETIONARY ACCOUNT TERMS**

IAM 000008

4

The undersigned has carefully examined the provisions of the documents by which we have given trading authority or control over our account with Goldman Sachs Execution & Clearing, L.P. to:

<u>Daniel Zanger, Topanga Canyon Blvd PMB#401 Woodland Hill CA 91364</u>
(Name and Address of Trading Manager)

and understand fully the obligations which we have assumed by executing that document.

We hereby acknowledge that:

\_\_\_\_\_ We have received a copy of the disclosure document of the party named above prepared pursuant to Regulation 4.34 adopted by the CFTC.

\_✓\_ The party named above has not furnished us with a disclosure document prepared pursuant to Regulation 4.34 because said party has advised that he/she is not registered with the CFTC as a Commodity Trading Advisor and is not required to be so registered.

**[please check the appropriate box]**

CUSTOMER NAME: <u>The Independent Fund Limited</u>

By: <u>George Szele</u>  ✓        DATE: <u>8/25/05</u>
    Authorized Signature

PRINT NAME AND TITLE: <u>George Szele    Director</u>

IAM 000009

5

# Goldman Sachs Execution & Clearing, L.P.

## Futures Account Application
Corporation, Partnership and Limited Liability Company Accounts

**Account Title And Mailing Address** — New Address:
The Independent Fund Limited
Butterfield Fund Services
Rosebank Center, 11 Bermudiana Rd
Pembroke, Bermuda HM08
Bermuda Contact: Siu Kei Chung 441-294-2030
CT USA Contact: George Szele 203-355-1160

**Full Corporate or Partnership Name**

**Account Description**
__ Corporation
__ Partnership
__ Limited Liability Company
__ Pension Plan (include Plan and supplement Form
__ Trust (Include Trust Agreement)
✓ Other Offshore Fund
Bermuda Limited Liability Co.

| Tax Identification Number | Tax ID Applied For | Business Phone Number | Principle Business of Account: |
|---|---|---|---|
| NA Offshore Exempt | Date NA Offshore Exempt | (203) 355-1160 | Hedge Fund |

**REGISTERED WITH THE CFTC AS:**
__ FCM  __ FLOOR BROKER  ✓ CPO  __ CTA  __ B/D  __ INVESTMENT ADVISOR

**MEMBER OF NFA:** ✓ YES, NFA ID # 310602  __ NO

**INVESTMENT OBJECTIVES:**
No Speculation
No Spreading
No Other
✓ Hedging — ONLY
N/A Arbitrage

**DUPLICATE STATEMENTS TO:**
Independent Asset Management LLC
177 Broad Street
Stamford CT 06901

Does this account, or do any principals of this account:
- Control the trading of any other accounts with us?  __ Yes __ No
- Have a financial interest in the trading of any other accounts with us?  __ Yes __ No
- Have any other futures accounts with us?  __ Yes __ No
  (If yes, provide names and numbers of other accounts below)

Do any other non-related persons or entities:
- Control the trading of this account?  __ Yes __ No
  (If yes provide name and address below)
- Have a financial interest in this account?  __ Yes __ No
  (If yes, provide name, address and % of financial interest below.)
- Guarantee this account?  __ Yes __ No

**FOR EXCHANGE MEMBERS ONLY:**

| OWN | LEASE | EXCHANGE | ACRONYM |
|---|---|---|---|
| | | CBOT | |
| | | | AM |
| | | | GIM |
| | | AMEX | |
| | | | COM |
| | | | NYFE |
| | | | NYSE |
| | | | PHBT |
| | | | PHLX |
| | | | CBOE |
| | | | IDEM |
| | | | CME |
| | | | IMM |
| | | | IOM |
| | | | KCBT |
| | | | CBOE |
| | | | PSE |
| | | | OTHER |

Have any participants in this account now or in the past, whether or not this was publicly disclosed, been suspended, expelled, fined, barred, censured or otherwise disciplined by any regulatory body or by any securities or commodities exchange or association or been refused membership therein?  __ Yes __ No
 If Yes, explain on separate sheet.
have any participants in this account ever been subject to federal or state bankruptcy proceedings, receivership, or similar proceedings (voluntary or involuntary)  __ Yes __ No
If Yes, explain on separate sheet.

**SLK EQUITY ACCOUNT #** _____

**CUSTOMER CONTACTS:**

George Szele — Director of Fund — 203.355.1160 / 203.422.2988
Officer Responsible for Account Relationship   Title   Phone

Trader: Daniel Zanger — Trader — 305-484-1711
Operations: — — 425.766.2722 / 800-901-2500

Fax Number (203) 355 1169   *818-712-0500 ✓

**BROKER IS AUTHORIZED TO DEBIT ACCOUNT FOR CHARGES INCLUDING BUT NOT LIMITED TO:**
__ Membership Lease Payment    __ Floor Brokerage
__ Insurance                   __ Telecommunications
__ Rent                        __ Jackets & Printing
Other _____

Signature: George Szele, Director   Date: 8/25/05

**INCLUDE COPY OF PARTNERSHIP AGREEMENT OR LIMITED LIABILITY COMPANY AGREEMENT AND MOST RECENT AUDITED FINANCIAL STATEMENT AND UNAUDITED STATEMENT, FOCUS REPORT OR FORM 1-FR.**

IAM 000010

6

# Goldman Sachs Execution & Clearing, L.P.

**Customer Futures and Options Agreement**

In consideration of the acceptance by Goldman Sachs Execution & Clearing, L.P., of one or more accounts of the undersigned customer ("Customer") (if more than one account is carried by GSEC, all are covered by this Agreement and are referred to collectively as the "account") and GSEC's agreement to act as Customer's broker for the execution, clearance and or carrying of transactions for the purchase and sale of commodity futures contracts, forward contracts, commodity options and physical commodities (collectively, "commodity interests"), Customer agrees as follows:

### 1. PAYMENTS TO GSEC;
Customer agrees to pay to GSEC
(a) commission and service charges at rates established by GSEC from time to time for each transaction in connection with the account;
(b) funds which may be advanced by GSEC for the account, and any other costs incurred by GSEC occasioned by effecting commodity interest transactions for Customer or carrying the account;
(c) the amount of any debit balance or any other liability that may result from transactions executed for the account; and
(d) Interest on any funds advanced by GSEC at the rates then charged by GSEC and service charges, together with any reasonable costs and attorneys fees incurred in collecting any such debit balance or liability.

GSEC may debit the account to collect such payments and if, in the sole discretion of GSEC, the account is not sufficient for such purpose, Customer shall make such payments immediately following GSEC's request for payment. Payments shall be made in immediately available U.S. dollars to GSEC at the address shown at Section 8 herein or as GSEC shall notify Customer. Customer acknowledges that GSEC does not have any obligation to establish uniform commission rates and that GSEC therefore determines such commission rates in such manner as it may determine.

### 2. MARGINS; PREMIUMS;
Customer agrees at all times to maintain adequate margins in the account so as continually to meet the original and maintenance margin requirements established by GSEC in its sole discretion from time to time. GSEC's margin requirements may exceed the margin requirements set by any exchange or other regulatory authority and need not be uniform as among customers or commodities. Customer agrees to pay to GSEC the amount of the premium for every option purchased for the account. Customer agrees to deposit margins and pay premiums immediately upon GSEC's request. Payments shall be made in immediately available U.S. dollars to GSEC at the address shown at Section 8 herein or as GSEC shall notify Customer. GSEC shall have the right to retain any interest with respect to any cash margins deposited in the account.

### 3. DELIVERY; OPTION EXERCISE;
(a) Customer acknowledges that making or taking delivery on a commodity interest contract may involve a much higher degree of risk than liquidating a position by offset and that GSEC has no control over and makes no warranty with respect to grade, quality of tolerances of commodities to and for the account of Customer delivered or to be delivered.
(b) Customer agrees to give GSEC timely notice and immediately on request to inform GSEC if Customer intends to make or take delivery under any commodity interest contract or to exercise any option contract. If so requested, Customer shall provide GSEC with satisfactory assurances that Customer can fulfill Customer's obligation to make or take delivery under any such contract. Customer shall furnish GSEC with property deliverable by it under any such contract in accordance with GSEC's instructions and shall deposit with GSEC the full dollar value of commodities or securities to be delivered immediately upon demand therefor.
(c) GSEC shall not have any obligation to exercise any long option contract unless Customer has furnished GSEC with exercise instructions and sufficient initial margin with respect to each underlying futures contract not less than two (2) business days prior to the last day of trading in such option.

### 4. FOREIGN CURRENCY;
If GSEC enters into any commodity interest transaction for an account which is effected in a foreign currency:
(a) Any profit or loss caused by changes in the rate of exchange for such currency shall be for Customer's account and risk; and
(b) unless another currency is designated in the confirmation for such transaction, all margin for such transaction, any profit or loss on the liquidation of such transaction and any other payment between the Customer and GSEC under this Agreement shall be in United States dollars at a rate of exchange determined by GSEC in its sole discretion on the basis of then prevailing market rates of exchange for such foreign currency.

### 5. POSITION LIMITS;
Customer acknowledges and agrees that GSEC has the right at its sole discretion to limit the number of open positions (net or gross) which Customer may execute, clear and/or carry with or acquire through it. Customer agrees
(a) not to make any trade which would have the effect of exceeding the limitations thus imposed on it and
(b) that GSEC may require Customer to reduce open positions carried with GSEC or may refuse to accept any order from Customer which establishes a new position.

GSEC may require such limitation, reduction or refusal whether or not such limitation, reduction or refusal is required by applicable regulations or exchange rules (as defined in Section 22). Customer shall comply with all position limits established by any regulatory or self-regulatory authority or any exchange. In addition, Customer agrees to notify GSEC promptly if Customer is required to file position reports with any regulatory or self-regulatory authority or with any exchange.

### 6. GSEC DUTIES; LIABILITY;
Customer acknowledges and agrees:
(a) That the commissions which GSEC receives are consideration solely for the execution, clearance and reporting of Customer's trades and the carrying of positions resulting from those trades until they are liquidated. GSEC assumes no other duty or responsibility, fiduciary or otherwise, to Customer, except with respect to the safekeeping of Customer's funds, securities or other property deposited with GSEC;
(b) That the agency relationship between Customer and GSEC extends only to the foregoing and that, as to margins, value of commodities bought and sold, and all other sums due, or which may become due, to GSEC from Customer, the relationship of Customer to GSEC is that of debtor and creditor;
(c) To waive any claims, rights or causes of action which Customer has or may have against GSEC and its partners, directors, officers, employees and agents arising in whole or in part, directly or indirectly, out of any act or omission of any person, whether or not legally deemed an agent of GSEC, who refers or introduces Customer to GSEC or places orders with GSEC for Customer;
(d) To waive any claims or rights it may have against GSEC and its partners, directors, officers, employees or agents for any punitive damages and to limit any claims or rights arising out of this Agreement or the account to direct consequential damages;

IAM 000011

7

(e) That if Customer has authorized any third party or parties to place orders or effect transactions in the account, such party has been selected by Customer based on its own evaluation and assessment of such party and that such party is solely the agent of Customer; any designation or change of designation by Customer or persons authorized to trade for the account or otherwise to give instructions to GSEC with respect to the account, shall be effective only when given by Customer in writing and acknowledged by GSEC in writing;

(f) That any trading recommendations or market or other information furnished to Customer by GSEC are incidental to the conduct of GSEC's business as a futures commission merchant and do not constitute an offer to sell (or buy) or the solicitation of an offer to buy (or sell) any commodity interest; any such recommendation and/or information, although based upon sources deemed by GSEC to be reliable, may be incomplete or unverified and may be changed by GSEC without notice to Customer, and accordingly, GSEC makes no representation, warranty or guaranty as to the accuracy or completeness of any trading recommendation or other information furnished to Customer,

(g) That GSEC, and its partners, directors, officers, employees and agents may have a position in and may buy or sell commodity interests which are the subject of information or recommendations furnished to Customer, and that the position or transactions of GSEC or any such persons may or may not be consistent with recommendations furnished to Customer by GSEC; and

(h) That Customer will not commence any legal proceeding against GSEC or its partners, directors, officers, employees and agents arising directly or indirectly out of this Agreement until all debit balances in the account have been paid to GSEC; provided that such payment shall be without prejudice to Customer's right to claim that such debit balance is not correct.

**7. EXTRAORDINARY EVENTS;**
Customer shall have no claim against GSEC for any loss, damage, liability, cost, charge, expense, penalty, fine or tax caused directly or indirectly by

(a) governmental, court, exchange, regulatory or self-regulatory restrictions or rulings,
(b) suspension or termination of trading,
(c) war, civil or labor disturbance,
(d) delay or inaccuracy in the transmission or reporting of orders due to a breakdown or failure of transmission nor communication facilities,
(e) the failure or delay for any reason of any broker selected by GSEC on behalf of Customer to fulfill its obligations or to pay in full amounts owed to GSEC in respect to contracts,
(f) failure or delay by any exchange or related clearing organization to enforce its rules or to pay to GSEC any margin due in respect of Customer's account, or
(g) any other cause or causes beyond GSEC's control.

**8. COMMUNICATIONS;**
Any notice, instruction or other communication required or permitted to be given hereunder (other than orders to buy or sell a commodity interest which may be oral) shall be in writing, unless expressly provided otherwise in this Agreement, and addressed to the respective parties as follows:

(a) If to the Customer:   As set forth in the accompanying Futures Account Application.
(b) If to GSEC:   Goldman Sachs Execution & Clearing, L.P.
Attention: Compliance Department
30 Hudson Street
Jersey City, NJ 07302
Telecopy:   (917) 343-3293
Telephone:   (212) 357-0517

or to such other address as Customer or GSEC herewith shall specify to the other in writing.

**9. CONFIRMATION CONCLUSIVE;**
Confirmation of trades, statements of account, and any other notices sent to Customer shall be conclusive and binding on Customer unless Customer notifies GSEC to the contrary (i) in the case of an oral report, at the time received by Customer or his agent or (ii) in the case of a written report, prior to opening of trading on the business day next following receipt of the report. In addition, if within three business days after Customer has placed an order to buy or sell a commodity interest, and has not been informed or believes that such order has been or should have been executed, but has not received a written confirmation thereof, Customer shall immediately communicate by telephone such fact to GSEC and further shall immediately send written notification of such fact, and the details thereof, to GSEC by hand delivery, telex, telefax or telegram. Failing in this regard, Customer shall conclusively be deemed estopped to object and to have waived any such objection to the failure to execute or cause to be executed any transaction for any account of Customer. Nothing in this Section 9 withstanding, neither Customer nor GSEC shall be bound by any transaction or price reported in error.

**10. SECURITY INTEREST;**
Customer hereby grants to GSEC a continuing lien, as security for the performance of its obligations to GSEC, upon all monies, securities, financial instruments, futures contracts, precious metals and other property, including, but not limited to, any credit balance (collectively, "property"), now or at any future time in Customer's account with or held for Customer by GSEC, by any GSEC affiliate or subsidiary or by any clearing futures commission merchant or organization through which trades of such Customer are executed by or on behalf of GSEC and any income and proceeds of any property. Any property may at any time or from time to time without notice or compliance with any condition precedent (which is hereby expressly waived) be set off, appropriated and applied by GSEC against any and all such obligations, including, but not limited to, any deficit balance in Customer's account, in such manner as GSEC in its discretion may determine.

**11. TRANSFER OF FUNDS;**
GSEC may at any time, and from time to time, without prior notice to Customer, transfer from one account to another account carried by GSEC in which Customer has any interest, such excess funds, equities, securities or other property as in GSEC's judgment may be required for margin, or to reduce any debit balance or to reduce or satisfy any deficits in such other accounts except that no such transfer may be made from an account subject to the Commodity Exchange Act to another account maintained by Customer unless either Customer has authorized such transfer in writing or GSEC is effecting such transfer to enforce GSEC's lien pursuant to Section 10. Notice of each transfer made pursuant hereto shall be promptly given in writing to Customer.

**12. LIQUIDATION OF CUSTOMER POSITIONS - If;**
(a) GSEC is directed or required by a regulatory or self-regulatory body or exchange on or subject to the rules of which commodity interests are traded for Customer;
(b) GSEC considers it necessary for its protection because of margin requirements or otherwise;
(c) Customer repudiates, violates, breaches or fails to perform on a timely basis any term, covenant or condition on its part to be performed under this Agreement;
(d) Customer dies or becomes incompetent or mentally disabled;
(e) a case in bankruptcy is commenced or a proceeding under any insolvency or other law for the protection of creditors or for the appointment of a receiver, liquidator, trustee, conservator, custodian or similar officer is filed by or against Customer or any affiliate of

IAM 000012

8

Customer, or any affiliate of Customer makes or proposes to make any arrangement or composition for the benefit of its creditors, or Customer (or any such affiliate) or any or all of its property is subject to any agreement, order, judgment or decree providing for Customer's dissolution, winding-up, liquidation, merger, consolidation, reorganization or for the appointment of a receiver, liquidator, trustee, conservator, custodian or similar officer of Customer, such affiliate or such property; or

(f) if an attachment or similar order is levied against an account or any other account maintained by Customer or any affiliate of Customer with GSEC;

then GSEC shall have the right to (i) satisfy any obligations (either directly or by way of guaranty or suretyship) due GSEC out of any Customer's property in GSEC's custody or control, (ii) liquidate any or all of Customer's commodity interest positions, (iii) cancel any or all of Customer's outstanding orders, (iv) treat any or all of Customer's obligations due GSEC as immediately due and payable, (v) sell any or all of Customer's property in GSEC's custody or control in such manner as GSEC determines to be commercially reasonable, and/or (vi) terminate any or all of GSEC's obligations for future performance to Customer, in each and every such case without any notice of default, demand for margin or additional margin, notice to Customer of sale or purchase, or other notice or advertisement and whether or not the ownership interest shall be solely Customer's or held jointly with others. It is understood that, in all cases, a prior demand, call or notice of the time or place of sale or purchase shall not be considered a waiver of GSEC's right to sell or buy without demand or notice as herein provided, that Customer shall at all times be liable for the payment of any debit balance owing in each account upon demand whether occurring upon a liquidation as provided under this Section 12 or otherwise under this Agreement, and that in all cases Customer shall be liable for any deficiency remaining in each account in the event of liquidation thereof in whole or in part together with interest thereon and all costs relating to liquidation and collection (including reasonable attorneys' fees).

**13. CUSTOMER REPRESENTATIONS, WARRANTIES AND AGREEMENTS;**

Customer represents and warrants to and agrees with GSEC that:

(a) Customer has full power and authority to enter into this Agreement and to engage in the transactions and perform its obligations hereunder and contemplated hereby and (i) if a corporation or a limited liability company, is duly organized under the laws of the jurisdiction set forth in the accompanying Futures Account Application, or (ii) if a partnership, is duly organized pursuant to a written partnership agreement and the general partner executing this Agreement is duly authorized to do so under the partnership agreement, and (iii) the execution, delivery and performance of this Agreement by Customer require no action by or in respect of or filing with any governmental body, agency or official;

(b) neither Customer nor any partner, director, officer, member, manager or employee of Customer nor any affiliate of Customer is a partner, officer, director, member, manager or employee of a futures commission merchant, introducing broker, exchange or self-regulatory authority or an employee or commissioner of the Commodity Futures Trading Commission ("CFTC"), except as previously disclosed in writing to GSEC;

(c) except as disclosed in writing to GSEC, Customer is acting solely as principal and no one other than Customer has any interest in any account of Customer;

(d) all information contained in the accompanying Futures Account Application or otherwise provided in writing by or on behalf of Customer to GSEC in connection with the opening of the account is true, complete and correct and GSEC may cause an investigation to be made concerning Customer's credit standing and reputation;

(e) Customer has determined that trading in commodity interests is appropriate for Customer, is prudent in all respects and does not and will not violate Customer's charter or by-laws (or other comparable governing document) or any law, rule, regulation, judgment, decree, order or agreement to which Customer or its property is subject or bound;

(f) Customer recognizes that representations or guarantees of profit or freedom from loss are impossible in trading commodity interests and acknowledges that it has received no such guarantees from or on behalf of GSEC, and has not entered into this Agreement and shall place no order hereunder in consideration of or in reliance upon any such guarantee or representation;

(g) GSEC, for and on behalf of Customer, is authorized and directed in its sole discretion to select floor brokers and, on markets where GSEC is not a clearing member, clearing brokers which will act as Customer's broker and agent in the execution, clearing and/or carrying of transactions for Customer, which brokers may be affiliates of GSEC or may be non-affiliated agents, and GSEC shall be responsible only for using good faith and reasonable care in the initial selection of such brokers;

(h) Unless GSEC is a party to a written give-up agreement, GSEC in its sole discretion, may, but shall not be obligated to, accept from other brokers contracts executed by such brokers on an exchange or market for Customer and proposed to be "given-up" to GSEC for clearance and/or carrying in the account;

(i) if Customer is subject to the Financial Institutions Reform, Recovery and Enforcement Act of 1989, the certified resolutions set forth following this Agreement have been caused to be reflected in the minutes of Customer's board of directors (or other comparable governing body) and this Agreement is and shall be, continuously from the date hereof, an official record of Customer;

(j) Customer consents to the electronic recording, at GSEC's sole discretion, of any or all telephone conversations with GSEC (without automatic tone warning device), the use of same as evidence by either party in any action or proceeding arising out of the Agreement and in GSEC erasure, at its sole discretion, of any recording as part of its regular procedure for handling of recordings;

(k) Customer shall furnish such financial statements to GSEC as GSEC reasonably requests from time to time;

(l) Customer promptly will notify GSEC if Customer opens an account with an FCM not named in the New Account Form and Customer agrees that GSEC may disclose information concerning the account to any other FCM with which Customer maintains an account and that any such FCM may disclose to GSEC any information requested by GSEC concerning Customer's business with such other FCM;

(m) Customer shall furnish a certificate of all persons who are authorized to furnish instructions to GSEC hereunder and GSEC shall be fully protected in relying upon any instructions whether oral or written received from any such person without any duty to make inquiry as to the genuineness of the instructions and, further, GSEC shall also be entitled to rely on instructions received from any person identifying himself or holding himself out as or stating that he is such a person, regardless of whether said instructions are actually given by such a person and, finally, GSEC's determination of the contents of any oral instructions shall be conclusive and binding on Customer;

(n) GSEC shall have no responsibility for compliance by Customer with any law or regulation governing Customer's conduct.

(o) GSEC, for and on behalf of Customer, is authorized and empowered to place orders for commodity interest transactions through one or more electronic or automated trading systems (each a "system") maintained or operated by or under the auspices of an exchange and that GSEC shall not be liable or obligated to Customer for any loss, damage, liability, cost or expense (including but not limited loss or profits, loss of use or incidental or consequential damages) incurred or sustained by Customer and arising in whole or in part, directly or indirectly, from any fault delay, omission, inaccuracy or termination of a system or GSEC's inability to enter, cancel or modify an order on behalf of Customer on or through a system; and

(p) Customer (i) is aware that CFTC Regulation § 1.35(a-2) (2) requires Customer to create, retain and produce upon the request of the CFTC, the United States Department of Justice and the applicable exchange documentation of cash transactions underlying exchanges of futures for cash commodities or exchanges of futures in connection with cash commodity transactions.

Customer shall promptly notify GSEC in writing if any of the warranties or representations contained in this Section 13 or if any information contained in the accompanying New Account Application or otherwise provided by or on behalf of Customer to GSEC becomes inaccurate or in any way cease to be true, complete and correct.

**14. CONTRACT TERMS AND CONDITIONS;**

The Customer acknowledges responsibility for acquainting itself with the material terms and conditions of any futures or options contracts which may be traded in the account. The Customer should consult with the relevant exchange or GSEC concerning these terms and conditions, particularly the

IAM 000013

9

exercise, expiration and related contract provisions which may be subject to exception or modification by the rules or procedures of the exchange or GSEC.

**15. INDEMNIFICATION OF GSEC;**
Customer hereby agrees to indemnify, defend and hold harmless GSEC and its partners, directors, officers, employees and agents from and against any loss, cost, claim, damage (including any consequential cost, loss or damage), liability or expense (including reasonable attorneys' fees) and any fine, sanction or penalty made or imposed by any regulatory or self-regulatory authority or any exchange as the direct or indirect result of:
(a) Customer's failure or refusal to comply with any provision of this Agreement or perform any obligation on its part to be performed pursuant to this Agreement;
(b) Customer's failure or refusal to deliver any security, commodity or other property previously sold, or subject to any call option sold, by GSEC for the account; or
(c) Any decline in value, for whatever reason, of any security or commodity of which GSEC takes delivery for the account.

**16. MODIFICATION OF AGREEMENT;**
This Agreement may only be altered, modified or amended by written agreement of the parties, except that if GSEC notifies Customer of any amendment to this Agreement and Customer continues to retain or thereafter places trades in accounts subject to this Agreement, Customer agrees that such action or inaction by Customer will constitute consent by Customer to such amendment. No employee of GSEC has any authority to alter, modify, or amend in any respect any of the terms of this Agreement and no supplemental or special understanding shall be binding upon GSEC unless one of GSEC's duly authorized officers shall have agreed thereto in writing. The rights and remedies conferred upon GSEC shall be cumulative, and its forbearance to take any remedial action available to it under this Agreement shall not waive its right at any time or from time to time thereafter to take such action.

**17. SUCCESSORS AND ASSIGNS;**
This Agreement shall inure to the benefit of GSEC, its successors and assigns, and shall be binding upon Customer and Customer's executors, trustees, administrators, successors and assigns, provided, however, that this Agreement shall not be assignable by Customer without the written consent of GSEC, without which consent any purported assignment shall be void.

**18. SEVERABILITY;**
If any term or provision hereof or the application thereof to any persons or circumstances shall to any extent be contrary to any exchange, government or self-regulatory regulation or contrary to any federal, state or local law or otherwise be invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to persons or circumstances other than those as to which it is contrary, invalid or unenforceable, shall not be affected thereby.

**19. CAPTIONS;**
All captions used herein are for convenience only, are not a part of this Agreement, and are not to be used in construing or interpreting any aspect of this Agreement.

**20. TERMINATION;**
This Agreement shall continue in force until written notice of termination is given by Customer or GSEC. Termination shall not relieve either party of any liability or obligation incurred prior to such notice. Customer, upon giving or receiving notice of termination, promptly will take all action necessary to transfer all open positions in each account to another futures commission merchant.

**21. ENTIRE AGREEMENT;**
This Agreement constitutes the entire agreement between Customer and GSEC with respect to the subject matter hereof and supersedes any prior agreements between the parties with respect to such subject matter.

**22. APPLICABLE RULES AND REGULATIONS;**
The account and each transaction therein shall be subject to the terms of this Agreement and to (a) all applicable laws, the regulations, rules and orders of all regulatory and self-regulatory organizations having jurisdiction (collectively "regulations"), and (b) the constitution, by-laws, rules, regulations, orders, resolutions, interpretations and customs and usage's (collectively 'rules') of the contract market, board of trade, other market and any associated clearing organization (each an 'exchange'), if any, on or subject to the rules of which such transaction is executed and/or cleared and neither GSEC, or any of its partners, directors, employees, officers or agents shall be liable to Customer for any action taken in compliance with applicable regulations or exchange rules. The reference in the preceding sentence to applicable regulations and exchange rules is solely for the protection of GSEC and GSEC's failure to comply therewith shall not constitute a breach of this Agreement or relieve Customer of any obligation or responsibility under this Agreement.

**23. GOVERNING LAW; CONSENT TO JURISDICTION;**
In case of a dispute between Customer and GSEC arising out of or relating to the making or performance of this Agreement or any transaction pursuant to this Agreement, (a) this Agreement and its enforcement shall be governed by the laws of the State of New York, without regard to principles of conflicts of law, and (b) if Customer has not signed the Arbitration Agreement set forth below or if such Arbitration Agreement is otherwise invalid or unenforceable, Customer will bring any legal proceeding Customer may initiate against GSEC in, and Customer hereby consents in any legal proceeding by GSEC to the jurisdiction of, any local, state or federal court located within the State and City of New York in connection with all legal proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from Customers account(s), transactions contemplated by this Agreement or breach thereof. Customer hereby waives any and all objections Customer may, at any time, have as to the propriety of the court in which any such legal proceedings may be commenced. Customer also agrees that any service of process mailed to Customer at any address specified to GSEC shall be deemed a proper service of process on Customer. In any event, Customer agrees that if any dispute or controversy between Customer and GSEC involves or includes securities transactions which are directly or indirectly incidental to or related to any transactions in which are the subject of a dispute or controversy arising under this Agreement, then both such disputes or controversies shall be heard and determined in the same forum.

If customer signs the Arbitration Agreement set forth below, then Customer agrees that any question relating to whether Customer or GSEC has commenced an arbitration proceeding in a timely manner, whether a dispute is subject to the Arbitration Agreement or whether a party (other than Customer or GSEC) has consented to arbitration and all proceedings to compel arbitration and to confirm or set aside an arbitration award shall be determined by a court as specified in Section 23(b).

**24. AUTHORIZATION TO TRANSFER FUNDS; (OPTIONAL)**
GSEC is hereby authorized, at any time without prior notice to customer, to transfer from the Customer's regulated commodity account(s) to any other account the customer maintains with GSEC such amount of excess funds which in GSEC's judgment may be reasonably required to avoid margin calls or to reduce a debit balance in such other accounts. It is understood that GSEC will, within a reasonable time thereafter, confirm in writing to the Customer any such transfer.

IAM 000014

**10**

"Regulated Commodity Account" means any account in which occur transactions in commodity futures or related options within the jurisdiction of the Commodity Exchange Act at the time of the transaction.

**25. AUTHORIZATION TO CROSS TRANSACTIONS; (OPTIONAL)**
Without prior notice to the Customer, the customer authorizes GSEC, any subsidiary or affiliate of GSEC, and their partners, directors, officers, employees, agents, and any floor broker acting on Customer's behalf in any transaction for the account, to take the other side of Customer's transaction through any account of such person subject to its being executed at prevailing priced in accordance with the Commodity Exchange Act and the rules and regulations promulgated thereunder, and applicable exchange rules.

**26. SUBORDINATION AGREEMENT; (applies only to accounts with funds held in foreign countries)**
Funds of customers trading on United States contract markets may be held in accounts denominated in a foreign currency with depositories located outside the United States or its territories if the customer is domiciled in a foreign country or if the funds are held in connection with contracts priced and settled in a foreign currency. Such accounts are subject to the risk that events could occur which hinder or prevent the availability of these funds for distribution to customers. Such accounts also may be subject to foreign currency exchange rate risks.

If authorized below, Customer authorizes the deposit of funds into such foreign depositories. For customers domiciled in the United States, this authorization permits the holding of funds in regulated accounts offshore only if such funds are used to margin, guarantee, or secure positions in such contracts or accrue as a result of such positions. In order to avoid the possible dilution of other customer funds, a customer who has funds held outside the United States agrees by accepting this subordination agreement that his claims based on such funds will be subordinated as described below in the unlikely event both of the following conditions are met: (1) the customer's futures commission merchant is placed in receivership or bankruptcy, and (2) there are insufficient funds available for distribution denominated in the foreign currency as to which the customer has a claim to satisfy all claims against those funds.

By signing the Subordination Agreement below, Customer agrees that if both of the conditions listed above occur, Customer's claim against GSEC's assets attributable to funds held oversees in a particular foreign currency may be satisfied out of segregated customers funds held in accounts denominated in dollars or other foreign currencies only after each customer whose funds are held in dollars or in such other foreign currencies receives its pro-rata portion of such funds. It is further agreed that in no event may a customer whose funds are held overseas receives more than its pro-rata share of aggregate pool consisting of funds held in dollars, funds held in a particular foreign currency, and non segregated assets of GSEC.

**27. ARBITRATION AGREEMENT; (OPTIONAL)**
Any controversy arising out of or relating to my account, to transactions with GSEC pursuant to the Customer Futures and Options Agreement between us or the breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of the National Futures Association, or the contract market upon which the transaction giving rise to the claim was executed or the New York Stock Exchange, Inc. If I do not make such election either at the time I notify GSEC that I intend to commence an arbitration or, if GSEC notifies me that GSEC intends to commence an arbitration, by registered mail addressed to you at your main office within forty-five days after demand by you that I make such election, then GSEC may make such election. GSEC agrees to pay any incremental fees which may be assessed by the forum chosen by me for the provision of a "mixed panel" of arbitrators, unless the arbitrators determine that I have acted in bad faith in initiating or conducting the proceedings. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

THREE FORUMS EXIST FOR THE RESOLUTION OF COMMODITY DISPUTES: CIVIL COURT LITIGATION, REPARATIONS AT THE COMMODITY FUTURES TRADING COMMISSION (CFTC) AND ARBITRATION CONDUCTED BY A SELF-REGULATORY OR OTHER PRIVATE ORGANIZATION.

THE CFTC RECOGNIZES THAT THE OPPORTUNITY TO SETTLE DISPUTES BY ARBITRATION MAY IN SOME CASES PROVIDE MANY BENEFITS TO CUSTOMERS, INCLUDING THE ABILITY TO OBTAIN AN EXPEDITIOUS AND FINAL RESOLUTION OF DISPUTES WITHOUT INCURRING SUBSTANTIAL COSTS. THE CFTC REQUIRES, HOWEVER, THAT EACH CUSTOMER INDIVIDUALLY EXAMINE THE RELATIVE MERITS OF ARBITRATION AND THAT YOUR CONSENT TO THIS ARBITRATION AGREEMENT BE VOLUNTARY.

BY SIGNING THIS AGREEMENT, YOU (1) MAY BE WAIVING YOUR RIGHT TO SUE IN A COURT OF LAW; AND (2) ARE AGREEING TO BE BOUND BY ARBITRATION OF ANY CLAIMS OR COUNTERCLAIMS WHICH YOU OR GSEC MAY SUBMIT TO ARBITRATION UNDER THIS AGREEMENT. YOU ARE NOT, HOWEVER, WAIVING YOUR RIGHT TO ELECT INSTEAD TO PETITION THE CFTC TO INSTITUTE REPARATIONS PROCEEDINGS UNDER SECTION 14 OF THE COMMODITY EXCHANGE ACT WITH RESPECT TO ANY DISPUTE WHICH MAY BE ARBITRATED PURSUANT TO THIS AGREEMENT. IN THE EVENT A DISPUTE ARISES, YOU WILL BE NOTIFIED IF GSEC INTENDS TO SUBMIT THE DISPUTE TO ARBITRATION. IF YOU BELIEVE A VIOLATION OF THE COMMODITY EXCHANGE ACT IS INVOLVED AND IF YOU PREFER TO REQUEST A SECTION 14 "REPARATION" PROCEEDING BEFORE THE CFTC, YOU WILL HAVE 45 DAYS FROM THE DATE OF SUCH NOTICE IN WHICH TO MAKE THAT ELECTION. YOU NEED NOT SIGN THIS AGREEMENT TO OPEN AN ACCOUNT WITH GSEC.

**OPTIONAL ELECTIONS-**
The following provisions, which are set forth in this agreement, need not be entered into to open an account with GSEC. Customer agrees that its optional elections are as follows:

| | |
|---|---|
| AUTHORIZATION TO TRANSFER FUNDS: (Agreement Section 24) | _____<br>Signature Required for Election |
| CONSENT TO CROSS TRANSACTIONS: (Agreement Section 25) | _____<br>Signature Required for Election |
| ARBITRATION AGREEMENT: (Agreement Section 27) | _____<br>Signature Required for Election |
| ACKNOWLEDGMENT OF SUBORDINATION AGREEMENT (Agreement Section 26) | _____<br>Required for accounts holding non U.S. currency |

IAM 000015

11

HEDGE ELECTION:   "Please initial if applicable"

Customer confirms that all transactions in the account will represent bona fide hedging transactions, as defined by the CFTC, unless, at the time we place an order, we notify GSEC otherwise. ____

Pursuant to CFTC Regulation 190.06(d), Customer specifies and agrees, with respect to hedging transactions in the account, that in the unlikely event of GSEC's bankruptcy, it prefers that the bankruptcy trustee (check appropriate box):

A.  Liquidate all open contracts without first seeking instructions either from or on behalf of Customer. ____

B.  Attempt to obtain instructions with respect to the disposition of all open contracts. ____

(If neither A or B is checked, Customer shall be deemed to elect A)

---

ACKNOWLEDGMENT OF RECEIPT OF RISK DISCLOSURE STATEMENTS-

The undersigned each hereby acknowledges its separate receipt from GSEC and its understanding of each of the following documents prior to the opening of the account:

- CFTC Regulation 1.55, 1.37 and 1.90.10 Risk Disclosure Statement for Futures and Options
- NYMEX ACCESS Disclosure statement
- Globex Customer Information
- CBOT Project Disclosure Statement
- CME Average Pricing System Disclosure Statement
- Special Notice to Foreign Brokers and Foreign Traders

*The Independent fund Limited*
*George Szele, Director*
**CUSTOMER NAME(S)**

*George Szele*                                   8/25/05
**AUTHORIZED SIGNATURE(S)**                      **DATE**

*Director*
**TITLE**

IAM 000016

**12**