UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **INDEPENDENT ASSET MANAGEMENT, LLC,**<br><br>                              **Plaintiff,**<br><br>    - against -<br><br>**DANIEL ZANGER,**<br><br>                              **Defendant.** | 1:07-CV-06431-JSR<br><br>ECF<br><br>**PLAINTIFF'S STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1** |

      Pursuant to Civil Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, Plaintiff Independent Asset Management, LLC ("Plaintiff" or "IAM"), by its attorneys, Balestriere Lanza PLLC, state that there is no genuine issue with respect to the following material facts:

      1.    In September 2004, IAM and Defendant Daniel Zanger ("Defendant" or "Zanger") communicated with one another about the prospect of entering into a relationship in connection with the management of the Independent Fund Limited ("IFL"), a Bermuda hedge fund for which IAM served as the trading manager. (Szele Dep. 5:8-13, Mar. 5, 2008, attached as Lanza Decl. Ex. B.)

      2.    On or about October 24, 2004, IAM and Zanger signed an agreement (the "Agreement"). (Agreement, attached as Lanza Decl. Ex. D.)

      3.    IFL's administrator was Butterfield Fund Services (Bermuda) Limited. (BFS Letter, attached as Lanza Decl. Ex. H.)

4. IFL's broker was Goldman Sachs Execution & Clearing, L.P. ("GSEC"). (Prime Broker Agreement, attached as Lanza Decl. Ex. E.)

5. Zanger had a domestic hedge fund called Westwood Capital Partners L.P. (Zanger Dep. 7:17-21, attached as Lanza Decl. Ex. C.).

6. At the time that Zanger entered into the Agreement with IAM, Zanger did not have an offshore hedge fund. (Zanger Dep. 7:17-21).

7. The Agreement contemplated that IAM would market Zanger's performance to interested investors. (Zanger Dep. 55:5-10).

8. The Agreement allowed Zanger to get both an offshore hedge fund and marketing. (Agreement at 1-2).

9. While trading for IFL, Zanger was unaware of the rules, regulations, guidelines and policies of the Prime Broker, GSEC. (Zanger Dep. 44:22-49:8.)

10. Zanger never employed a compliance officer while trading for IFL. (Zanger Dep. 47:18-48:48:9.)

11. As of March 21, 2008, Zanger could not recognize the agreement that outlined GSEC's rules. (Zanger Dep. 44:4-11.)

12. While trading Class Z shares for IFL, Zanger induced precisely 115 margin calls. (Email Communications at 51, 52, attached as Lanza Decl. Ex. F; Mot. Dismiss Am. Compl. 2, 7, 8.)

13. A margin call can be prevented by maintaining sufficient liquidity. (Zanger Dep. 52:14-25.)

14. Zanger covered 115 margin calls while trading for IFL. (Email Communications at 51, 52; Mot. Dismiss Am. Compl. 2, 7, 8.)

15. Zanger failed to keep drawdowns below 20%. (Zanger Dep. 37:2-13, Instant Message Communications at 13, 14, 16, 19, 31-32, 41, 44, and 56, attached as Lanza Decl. Ex. G.)

16. Zanger created a large day trading call on November 10, 2006. (Email Communications at 53; Instant Message Communications at 60.)

17. Zanger refused to cover the November 10, 2006, day trading call. (Email Communications at 22-27, 53; Instant Message Communications at 60.)

18. One of Zanger's reasons for refusing to cover the November 10, 2006, day trading violation was that Zanger was unhappy with the rules of the administrator, Butterfield Fund Services. (Instant Message Communications at 60; Zanger Dep. 57:25-58:16.)

19. The November 10, 2006, day trading call lead to the fund having its day trading buying power reduced to 2:1 for a period of five business days. (Email Communications at 26.)

20. On November 17, 2006, when time expired for Zanger to cover the November 10, 2006, margin call, the account was restricted to trading on a cash available basis, which would last up to 90 days or until the call was met. (Email Communications at 29.)

21. Zanger caused another large day trading call on November 30, 2006. (Email Communications at 30, 53.)

22. Zanger refused to cover the November 30, 2006, day trading call. (Email Communications at 40, 53.)

23. While trading for IFL, Zanger assumed full responsibility for the trading. (Agreement at 1; Zanger Dep. 12:21-25, 15:21-23.)

24. In October 2006, Zanger caused a margin call which he attempted to cover by wiring funds into IFL's account directly from his own personal account.

25. After the October 2006 margin call mentioned in the preceding paragraph had been met, Zanger attempted to withdraw monies from IFL without permission from IFL. (Email Communications at 16-21; BFS Letter at 1, attached as Lanza Decl. Ex. H.)

26. Zanger did not cover all margin calls immediately. (Email Communications at 3, 5-6, 8; Instant Messenger Communications at 60.)

27. IFL's account was "closed for multiple Day Trading or Equity day trading violations" on December 11, 2006. (Email Communications at 42-50.)

28. In early 2006, Ola Holmstrom ("Holmstrom") invested approximately $450,000 in IFL's Class Z shares. (Szele Dep. 41:11-13, Mar. 5, 2008.)

Dated: New York, New York  
      April 14, 2008

Respectfully submitted,

*/s Craig Stuart Lanza*  
Craig Stuart Lanza (CL-2452)  
John Balestriere (JB- 3247)  
**BALESTRIERE LANZA PLLC**  
225 Broadway, Suite 2700  
New York, NY 10007  
Telephone:   (212) 374-5400  
Facsimile:   (212) 208-3613  
*Attorneys for Plaintiff*

4

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document was served on the following counsel of record on April 14, 2008, via the methods listed below:

**By ECF and First Class Mail**
Thomas H. Sear, Esq.
Jones Day
222 East 41st Street
New York, NY 10017
*Attorneys for Defendant*

*/s Craig Stuart Lanza*
Craig Stuart Lanza (CL-2452)
**BALESTRIERE LANZA PLLC**
225 Broadway, Suite 2700
New York, NY 10007
Telephone:   (212) 374-5400
Facsimile:    (212) 208-3613
*Attorneys for Plaintiff*