UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

| | |
|---|---|
| INDEPENDENT ASSET MANAGEMENT LLC and OLA HOLMSTROM,<br><br>            Plaintiffs,<br><br>vs.<br><br>DANIEL ZANGER,<br><br>            Defendant. | Case No. 1:07-cv-06431-JSR<br><br>ECF |

------------------------------------------------------------ x

### LOCAL CIVIL RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Civil Rule 56.1, Daniel Zanger ("Zanger"), by and through its attorneys, submits that the following are facts as to which there is no material dispute, and that, as a consequence, Zanger is entitled to partial summary judgment. All documents cited below are attached to either the Declaration of Daniel Zanger (the "Zanger Decl."), dated April 28, 2008 or the Declaration of Michael D. Silberfarb (the "Silberfarb Declaration"), dated April 28, 2008, filed concurrently herewith.

1. Szele knew that Zanger was a successful chart trader prior to entering the Agreement.[1]

    (Zanger Decl. ¶ 2.)

---

[1] Capitalized terms defined herein assume the meaning prescribed to them in Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment and in Support of Defendant's Cross Motion for Summary Judgment.

1

2. Before entering the Agreement, Szele failed to reveal to Zanger that, by its own admission, prior to speaking to Zanger, IAM was on the "brink of financial ruin" and had lost all of its previous investors. (Zanger Decl., at ¶ 3; Silberfarb Decl. Exh. A, at 37:19-39:7.)

3. In early 2005, Zanger wired a $5 million investment into IFL's Class Z shares. (Zanger Decl. ¶ 8.)

4. In February 2005, Zanger provided $100,000 of working capital to IAM. (Silberfarb Decl. Exh. A, at 168.)

5. In 2005, Zanger's trading resulted in an increase of over $4 million in Class Z shares value. This equates to a roughly 84% increase in share value. (Zanger Decl. At ¶ 9, Exh. C.)

6. On April 17, 2005, Zanger entered an Addendum Agreement with IAM under which he agreed to provide an additional $50,000 to IAM for its working capital needs. He fulfilled this obligation immediately. (Zanger Decl. ¶ 10.)

7. In 2006, Zanger provided an additional $50,000 to IAM to fund IAM's agreement with R Capital Advisers, LLC, who IAM represented would provide marketing resources. (Zanger Decl. ¶ 11.)

8. In October 2006, Szele and Porco instructed Butterfield Fund Services to redeem $1.45 million from the fund to Zanger. (Zanger Decl. ¶ 23; Silberfarb Decl. Exh. 23.)

9. Szele constantly monitored Zanger's trading activities. (Zanger Decl. ¶ 24.)

10. IAM continuously represented to Zanger that it could and would attract investors to the fund. (Zanger Decl. ¶ 12.)

11. IAM was unable to attract any outside investors to the fund. (Silberfarb Decl. Exh. A, at 68:19-68:25.) The only investment not from Zanger came from an owner at IAM, who invested approximately $450,000 in early 2006. (Id.)

12. On November 4, 2005 in an instant message conversation, Szele said to Zanger, "you are considered a gunslinger in some ways – some people want and love that – we'll find them." (Zanger Decl. Exh. E.)

13. In early 2006, Szele informed Zanger during an instant message conversation that Zanger had had a "great year". (Zanger Decl. Exh. F.)

14. On September 17, 2006, in an email to Zanger, Szele stated: "Let's hang in there and be patient – it's only a matter of time before people realize your/our added value, especially if you kick some beeehind [sic] between now and year end." (Zanger Decl. Exh. G.)

15. On September 26, 2006, Szele sent an email to Zanger stating: "please give this 6 months, listen to me – do not give up." (Zanger Decl. Exh. H.)

16. During the relationship between Zanger and IAM, Szele never informed Zanger orally or in writing that Zanger breached the Agreement by creating margin calls that were ultimately met. (Zanger Decl. at ¶ 24)

17. During the relationship between Zanger and IAM, Szele never informed Zanger orally or in writing that Zanger breached the Agreement for any reason. (Zanger Decl. at ¶ 24)

18. GSEC never indicated that Zanger's creation of margin calls (aside from two November 2006 day trading calls) violated any of its rules or regulations. (Zanger Decl. at ¶ 26.)

19. In December 2006, the trading on behalf of Class Z shares effectively shut down because Zanger exercised his right to redeem his shares. (Silberfarb Decl. Exh 1 at 181:22-182:9).

20. The only document which purports to create a GSEC rule or regulation is the Prime Broker Agreement. (Silberfarb Decl. Exh. B, at 274:19-275:4, Exh. G.)

21. Aside from the two day trading calls in November 2006, Zanger met every margin call on behalf of the fund before the due date. (Silberfarb Decl. Exh. B, at 271:16-273:4; Exh. L.)

22. IAM failed to pay maintenance fees to Zanger from May 2006 through December 2006. (Silberfarb Decl. Exh. C, at 40:6-43:25, Exh. A, at 170:13-171:12.)

23. The maintenance fees that have not been paid to Zanger amount to approximately $57,000 (Silberfarb Decl. Exh. A, at 173:13-171:12; O).

24. George Szele admitted that Zanger was not required under the agreement to invest $50 million dollars in the fund. (Silberfarb Decl., Exh. D, at 71:25-72:5).

Dated: April 28, 2008                    Respectfully submitted,

*s/* Matthew E. Szwajkowski
Thomas H. Sear (TS-5570)
Michael D. Silberfarb (MS-9678)
Matthew E. Szwajkowski (MS-8362)
JONES DAY
222 East 41st Street
New York, NY 10017-6702
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
msilberfarb@jonesday.com

*Attorneys for Defendant Daniel Zanger*

4

5

Case 1:07-cv-06431-JSR    Document 41-2    Filed 04/28/2008    Page 5 of 5

5