# Exhibit A


IAM/DZ Agreement          CONFIDENTIAL                    Page - 1 -

October 19, 2004

**AGREEMENT between**

Mr. Daniel Zanger ("DZ")
4872 Topanga Canyon Blvd
PMB #401
Woodland Hills, CA 91364

And,

**Independent Asset Management, LLC ("IAM")**
Att: George Szele
Managing Director
177 Broad Street, Suite 1051
Stamford, CT 06901

This document shall constitute a binding agreement (the "Agreement") between Independent Asset Management, LLC ("IAM") currently located at 177 Broad Street, Suite 1051, Stamford, CT 06901 USA, and Mr. Daniel Zanger ("DZ"), located at 4872 Topanga Canyon Blvd, PMB #401, Woodland Hills, CA 91364, whereby the parties agree to the following terms and conditions.

Whereas, IAM is the trading manager of an existing Bermuda based offshore Fund, the Independent Fund Limited ("IFL"), and IAM and DZ desire to have DZ manage a specific Class of Share of IFL, in this case Class Z shares (called "Class Z shares") which IAM is willing and immediately able to provide through its Fund IFL, and

Whereas, IAM has spent considerable time, money and other resources over the past few years, to develop, establish and promote alternative investment strategies and vehicles, including IFL, primarily in the offshore domain, and

Whereas, IAM and DZ may introduce assets or may wish to raise assets for either DZ's, IAM's or other managers' strategies within IFL or its product(s) by introducing investors directly or indirectly, and

Whereas, it is understood by IAM that DZ wishes to arrange for the investment and transfer of at least USD 5 million and up to 50 million into an existing vehicle such as IFL in order to commence management and trading of DZ's methodology, and

IAM/DZ Agreement                CONFIDENTIAL                Page - 2 -

Whereas, the Agreement contemplates that IAM and DZ will work together to efficiently manage this Agreement for which each of the parties herein will be entitled to receive certain types of Fees as outlined herein.

It is therefore further agreed by IAM and DZ as follows:

1. Commencing from the date of execution hereof and continuing until the termination or expiration as provided for herein, IAM grants DZ the right to manage Class Z shares within IFL upon the transfer and IFL's receipt of at least USD 5 million and up to 50 million into said Class Z shares. Throughout this Agreement, DZ hereby guarantees and promises to stay within the management boundaries of IFL's risk limits and parameters as outlined in the IFL offering memorandum and also agrees to the following points:

   a. Leverage shall be limited to 4 to 1 initially but may be promptly modified as performance results are monitored and as Prime Broker and IAM feel comfortable with strategy.
   b. Liquidity is important under any market condition - if illiquidity exists, IAM shall be promptly notified by DZ.
   c. If any amounts are redeemed within one year, 2% of such amounts shall be forfeited to IAM.
   d. Full disclosure of positions will be necessary at all times.
   e. DZ shall remain in full compliance at all times with Prime Broker limits, rules or guidelines.
   f. DZ must remain transparent and compliant on all levels at all times to IFL and IAM.
   g. If DZ is not able to keep drawdowns below 20%, this Agreement may be terminated by IAM.

2. DZ agrees that IAM and DZ will share percentages of all Management and Performance Fees received by IAM as a result of DZ's management of Class Z shares as follows:

    i) IAM will be allocated <u>50%</u> of the 2% Management Fee (or 1 of the 2%) and <u>25%</u> of the 20% Performance Fee (or 5 of the 20%), on the capital managed by DZ in Class Z shares. The remaining percentages (1 and 15) shall be allocated to DZ.
Payments shall be paid to DZ and IAM within twenty (20) business days of IAM's receipt of such fees from IFL. IAM may share its fees with any IAM contacts or business associates.

    ii) DZ shall place USD 100 thousand with IAM immediately for working capital needs, in exchange for EITHER a) IAM waiving its share of the Management Fee for 18 months on USD 10 million in Class Z shares OR b) IAM agreeing to return the entire 100 thousand to DZ first before taking any portion of any Fees as described herein.

3. It is understood and agreed by IAM that DZ currently trades and intends to continue trading his personal account as well as any existing relationships of DZ.

4. It is understood by all parties that DZ will be the sole manager on assets it has brought in for Class Z and IAM has no intention to replace or terminate DZ from the management of Class Z shares so long as DZ remains within the guidelines outlined herein and is not in breach. If for some reason IAM needs to terminate this Agreement and/or DZ as manager, DZ is free to redeem or remove all capital it has raised or brought into Class Z shares for the purposes of DZ's management program, within the terms and guidelines of this Agreement. IAM acknowledges that DZ has control of - redeeming from or remaining in IFL - the assets it has placed or raised into Class Z, under the terms and guidelines of this Agreement.

IAM/DZ Agreement          CONFIDENTIAL                  Page - 3 -

5. It is agreed by IAM and DZ that they will disclose to each other and to IFL, in strict confidentiality, all the names and specifics of entities invested or desiring to invest in Class Z shares of IFL, in order to avoid potential problems of money laundering and such. It is also understood by all parties that all investors or potential investors shall be thoroughly scrutinized by IAM and IFL's Administrator, Citigroup.

6. It is understood by IAM that higher leverage is perhaps desirable and appropriate for DZ and IAM will make a very effort to quickly allow higher leverage limits either through IFL or through IAM's BVI offshore Fund.

7. The term of this Agreement shall commence on the date of execution hereof and shall continue for a period of five (5) years from such date, and shall be automatically renewed for successive five (5) year periods, unless written notice to the contrary is given by either party to the other not less than sixty (60) days prior to the end of such period. However, this Agreement may be terminated sooner by written notice, at the option of IAM or DZ, if the other party breaches this Agreement by failure to perform any obligation assumed by it under this Agreement or violated any provision of this Agreement and such failure and/or violation remains uncorrected for thirty (30) days or more after receipt of written notice of same from the non-breaching party.

8. If this Agreement expires or is terminated for any reason, and DZ continues to manage the Fund(s) or any other client trading account opened due to IAM or IAM contacts' efforts during or after the term of this Agreement, then IAM shall continue to receive the Management and Performance Fees received by DZ as described herein for as long as DZ manages those Fund(s) or accounts.

9. Neither party will hold, or attempt to hold, the other party liable for any damages or losses suffered as a result of the other party's conduct as contemplated hereunder, except to the extent that such conduct constitutes willful malfeasance, fraud, theft, or gross negligence. In particular, but without affecting the generality of the preceding, IAM will not hold DZ liable for any trading losses in its accounts, unless due to fraud, theft, or gross negligence of DZ.

10. Neither IAM nor DZ shall divulge the contents of this Agreement to any third party except for their respective attorneys, authorized regulatory authorities or unless required to do so by a court of competent jurisdiction or by law.

11. IAM and DZ each warrant and represent that they have the right, power and authority to enter into this Agreement and to grant all rights granted and that they are not under any disability, restriction or prohibition whether contractual or otherwise with respect to the rights granted or which would interfere with or derogate from the full enjoyment of all the rights granted to the other party.

12. Failure of any party hereto to insist upon strict compliance with any of the terms, covenants and conditions hereof shall not be deemed a waiver or relinquishment of any similar right or power hereunder at any subsequent time or of any other provisions herein.

13. IAM and DZ each agree to stay in compliance with all U.S. federal, state and local laws, as well as any applicable rules and regulations of Bermuda or Internationally, and of the CFTC and NFA, and IAM and DZ further agree to comply with all rules and regulations of any exchanges on which they trade.

IAM/DZ Agreement      CONFIDENTIAL             Page - 4 -

14. IAM and DZ agree to conform with all reasonable requests of the other with respect to this Agreement and operations relating thereto, including requests to see financial and performance records, and to sign and promptly deliver all documents reasonably intended to effectuate the terms set forth herein and as may be required. Non-compliance with any reasonable request shall be considered a breach of this Agreement.

15. No party shall hold itself out contrary to the terms of this Agreement and no party shall become liable for any obligation, act or omission of the other party contrary to the provisions of this Agreement.

16. All notices to be given to the parties shall be sent to the addresses set forth above or to such other addresses as either party may designate in writing to the other. All notices shall be delivered by hand or registered or certified mail, return receipt requested, and the date of delivery shall be deemed the date of giving notice therefore.

17. The covenants and provisions in this Agreement which, by their terms, require their performance by any party after the expiration or other termination of this Agreement, shall be enforceable notwithstanding said expiration or other termination this Agreement for any reason whatsoever.

18. Any dispute, controversy or claim arising out of or in connection with this Agreement or the breach, termination or invalidity thereof, shall be settled by arbitration in New York in accordance with its rules as in force at the time when initiating such arbitration.

19. This Agreement shall be construed in accordance with the laws of the state of New York. If any terms or provisions herein or its application thereof to any person, entity or circumstance shall be held contrary to law or otherwise invalid or unenforceable, the remaining terms and provisions of this Agreement or its application thereof to persons, entities or circumstances shall not be effected and shall be fully enforceable as permitted by regulation or law.

20. This Agreement comprises the entire understanding between the parties and supercedes all other oral or written agreements.

If the foregoing correctly states the understanding and agreement as to the terms and conditions stated herein, each party should indicate its acceptance by signing in the space provided for below. Each party shall receive an executed copy of this Agreement. This document shall not constitute an offer or an agreement until agreed, accepted and signed by IAM and DZ.

Agreed and Accepted:                    Agreed and Accepted:
Mr. Daniel Zanger                       Independent Asset Management, LLC

By:_____              By:_____
Dan Zanger                              George Szele
                                        Managing Director

OCT-19-2004 TUE 12:01 PM SOFITEL NEW YORK    FAX NO. 212 782 3004    P. 01
OCT-18-2004  15:49    SEA CARRIERS CORP.    3325610527    P.05

IAM/DZ Agreement    CONFIDENTIAL    Page - 4 -

14. IAM and DZ agree to conform with all reasonable requests of the other with respect to this Agreement and operations relating thereto, including requests to see financial and performance records, and to sign and promptly deliver all documents reasonably intended to effectuate the terms set forth herein and as may be required. Non-compliance with any reasonable request shall be considered a breach of this Agreement.

15. No party shall hold itself out contrary to the terms of this Agreement and no party shall become liable for any obligation, act or omission of the other party contrary to the provisions of this Agreement.

16. All notices to be given to the parties shall be sent to the addresses set forth above or to such other addresses as either party may designate in writing to the other. All notices shall be delivered by hand or registered or certified mail, return receipt requested, and the date of delivery shall be deemed the date of giving notice therefore.

17. The covenants and provisions in this Agreement which, by their terms, require their performance by any party after the expiration or other termination of this Agreement, shall be enforceable notwithstanding said expiration or other termination this Agreement for any reason whatsoever.

18. Any dispute, controversy or claim arising out of or in connection with this Agreement or the breach, termination or invalidity thereof, shall be settled by arbitration in New York in accordance with its rules as in force at the time when initiating such arbitration.

19. This Agreement shall be construed in accordance with the law of the state of New York. If any terms or provisions herein or its application thereof to any person, entity or circumstance shall be held contrary to law or otherwise invalid or unenforceable, the remaining terms and provisions of this Agreement or its application thereof to persons, entities or circumstances shall not be affected and shall be fully enforceable as permitted by regulation or law.

20. This Agreement comprises the entire understanding between the parties and supercedes all other oral or written agreements.

If the foregoing correctly states the understanding and agreement as to the terms and conditions stated herein, each party should indicate its acceptance by signing in the space provided for below. Each party shall receive an executed copy of this Agreement. This document shall not constitute an offer or an agreement until agreed, accepted and signed by IAM and DZ.

Agreed and Accepted:    Agreed and Accepted:
Mr. Daniel Zanger    Independent Asset Management, LLC
By: _____    By: _____
Dan Zanger    George Szulc
10-20-04    Managing Director