**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INDEPENDENT ASSET MANAGEMENT, LLC, | Index No. 07-CV-6431 (JSR) |
| Plaintiff, | ECF |
| - against - | |
| DANIEL ZANGER, | |
| Defendant. | |

**DECLARATION OF CRAIG STUART LANZA IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE CONCERNING DEFENDANT'S NON-IFL MARGIN CALLS AND TO DRAW AN ADVERSE INFERENCE FROM DEFENDANT'S NON-PRODUCTION OF SUCH EVIDENCE**

I, Craig Stuart Lanza, declare under penalty of perjury as follows:

1.      I am an attorney at the law firm of Balestriere Lanza PLLC, attorneys for Plaintiff Independent Asset Management ("IAM").  I submit this declaration in support of Plaintiff's Motion *In Limine* to Preclude Evidence Concerning Defendant's Non-IFL Margin Calls and to Draw and Adverse Inference from Defendant's Non-Production of Such Evidence.

2.      Attached to this declaration, under the identified exhibit tabs, are true and correct copies of the following documents:

Exhibit A – IFL Margin Report

Exhibit B – Zanger Deposition (excerpts)

Exhibit C – Document Requests

Exhibit D – March 1, 2006, Instant Message Communication

3.     IAM has attempted to ascertain whether Defendant has similarly caused a high level of margin calls in his other trading accounts, namely Westwood Capital Partners L.P. (*See* Document Requests, attached hereto as Exhibit C.)

4.     Despite repeated requests by IAM, Defendant not produced any record of Defendant's margin activity in non-IFL trading accounts.

5.     Defendant did not produce any documents to IAM concerning Defendant's non-IFL trading activities, including the commission of margin calls, within the time prescribed under the Federal Rules of Civil Procedure.

6.     After numerous discussions, on April 29, 2008, Defendant made available for inspection a handful of monthly statements relating to Defendant's trading activity outside of IFL.

7.     Despite requests being made on April 29, 2008, for Defendant to copy and deliver to Plaintiff's counsel certain documents that were reviewed on April 29, 2008, Defendant declined to turn over, or make available for further inspection, any documents relating to Defendant's non-IFL trading activities.

8.     Defendant has not yet produced any documents concerning the occurrence of margin calls in any of his non-IFL trading accounts.

9.     During the period of time relevant to this litigation, IAM's prime broker was Goldman Sachs Execution & Clearing, L.P. ("GSEC").

10.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on: July 21, 2008
             New York, New York

                        *s/ Craig Stuart Lanza*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served on the following counsel of record on July 21, 2008, via the methods listed below:

**By ECF**
Mike Silberfarb
MSilberfarb@JonesDay.com
*Attorneys for Defendant*

_s/ Craig Stuart Lanza_____
Craig Stuart Lanza
**BALESTRIERE LANZA PLLC**
225 Broadway, Suite 2900
New York, NY 10007
Telephone:    (212) 374-5404
Facsimile:    (212) 208-2613
*Attorneys for Plaintiff*

# Exhibit A



To
MARGIN
CALLS



45 MARGIN CALLS

| DATE | DATE | ACCOUNT | ACCOUNT | ACCOUNT NAME | | AMOUNT |
|------|------|---------|---------|--------------|---|--------|
| 1/6/06 | 1/11/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 394,412.00 |
| 1/9/06 | 1/12/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 1,505,395.00 |
| 1/11/06 | 1/13/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 157,451.00 |
| 1/17/06 | 1/18/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 3,668.00 |
| 1/17/06 | 1/20/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 653,978.00 |
| 1/17/06 | 1/20/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 2,119,650.00 |
| 1/27/06 | 2/2/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 260,494.00 |
| 2/3/06 | 2/8/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 11,757.00 |
| 3/30/06 | 3/31/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 858,781.00 |
| 3/31/06 | 4/3/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 1,215,918.00 |
| 3/29/06 | 4/4/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 1,945,404.00 |
| 4/4/06 | 4/7/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 194,163.00 |
| 4/7/06 | 4/10/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 1,592,387.00 |
| 4/17/06 | 4/18/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 3,265.00 |
| 4/19/06 | 4/24/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 851,440.00 |
| 4/24/06 | 4/26/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 20,397.00 |
| 4/25/06 | 4/27/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 833,632.00 |
| 6/2/06 | 6/6/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 787,678.00 |
| 6/5/06 | 6/8/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 89,485.00 |
| 6/6/06 | 6/9/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 201,101.00 |
| 6/8/06 | 6/12/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 1,729,991.00 |
| 6/21/06 | 6/23/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 1,205,889.00 |
| 6/28/06 | 6/29/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 554,309.00 |
| 7/3/06 | 7/6/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 931,787.00 |
| 7/5/06 | 7/6/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 143,277.00 |
| 7/7/06 | 7/11/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 425,397.00 |
| 6/19/06 | 7/12/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 834,740.00 |
| 8/18/06 | 8/21/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 89,885.00 |
| 8/22/06 | 8/23/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 154,072.00 |
| 9/19/06 | 9/20/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 67,619.00 |
| 9/26/06 | 9/29/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | NY | $ 244,640.00 |
| 9/28/06 | 9/29/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 409,126.00 |
| 9/14/06 | 9/26/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 411,221.00 |
| 10/3/06 | 10/4/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | NY | $ 764,165.00 |
| 10/4/06 | 10/10/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 93,063.00 |
| 10/6/06 | 10/11/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 362,403.00 |
| 10/12/06 | 10/12/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | NY | $ 1,600,050.00 |
| 10/12/06 | 10/17/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 391,397.00 |
| 10/17/06 | 10/17/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 33,052.00 |
| 10/13/06 | 10/16/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 25,522.00 |
| 10/24/06 | 10/25/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 4,005.00 |
| 1/8/06 | 1/16/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 1,477,881.00 |
| 11/8/06 | 11/9/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 161,822.00 |
| 11/13/06 | 11/16/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 641,169.00 |
| 11/21/06 | 11/21/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 320,828.00 |
| 11/22/06 | 11/28/06 | GSEC | 4LG0 | 37832G | Independent Fund Limited | H | $ 449,966.00 |



T = Regulation T Call
H = House Call
NY = NYSE Call

00116

DAY TRADING VIOLATIONS

| GSEC | 601 | 378328 | 4L60 | INDEPENDENT FUND LIMITED | 8-Nov-06 | 18-Nov-06 | $ | 134,272 |
| GSEC | 601 | 378326 | 4L60 | INDEPENDENT FUND LIMITED | 30-Nov-06 | 7-Dec-06 | $ | 2,550,481 |

00117

# Exhibit B

ZANGER                                                    44

2      correct?

3            A      Correct.

4            Q      You said that you didn't recognize

5      the document, am I correct, that you did not

6      recognize the document?

7            A      I don't recognize the document.

8            Q      You have never seen this document

9      before?

10           A      I don't recall seeing this

11     document before.

12           Q      Were you aware that Goldman Sachs'

13     execution in clearing had an agreement with

14     Independent Funds Limited?

15           A      The mere assumption.  I can only

16     assume that he had one.

17           Q      You assume that there was an

18     agreement, but you have never seen it?

19                  MR. SEAR:  Objection.  He

20                  testified three times on his

21                  recollection.

22           Q      We will move on.  You knew that

23     Goldman Sachs' execution in clearing had rules

24     and regulations; is that correct?

25           A      They had various rules and various

1

2       regulations.

3              Q       Had you ever taken a look at them?

4              A       I don't recall ever taking a look

5       at them.

6              Q       Specifically, were you aware of

7       their regulations with regards to margins?

8              A       Again, they have various

9       regulations, rules and they seem to float.

10             Q       What do you mean by that?

11             A       Well, they just seem to be

12      modified periodically.

13             Q       Okay.  How do you know that they

14      are modified periodically?

15             A       Well, at times, I have been able

16      to go out beyond two to one on margin and they

17      never said anything.

18             Q       But you have never been aware of

19      their specific rules; is that correct?

20                     MR. SEAR:  Objection to the form.

21             A       I am not aware of their specific

22      rules insofar as the way that you are stating

23      it.

24             Q       Is it safe to say that you

25      concluded that their rules changed because

1

2          Q      But you had a number of margin

3    calls with IFL; is that correct?

4          A      Yes.

5          Q      And when you were trading with

6    IFL, were you trading in other accounts as

7    well?

8          A      Trading other accounts that were

9    not associated with IFL?

10          Q      Correct.

11          A      Yes.

12          Q      What was the liquidity like in

13    those accounts?

14                MR. SEAR:  Objection to the form.

15          Answer as best that you can.

16          A      Well, pretty much the same as IFL.

17          Q      So let's take, for example,

18    Westwood Partners.  Did you have the same

19    margin issues with Westwood Partners that you

20    had with IFL?

21                MR. SEAR:  Objection to the form.

22          Answer as best that you can.

23                THE WITNESS:  Repeat the question.

24                (Whereupon, the referred to

25          question was read back by the Reporter.)

ZANGER

54

1

2    THE WITNESS:  Well, um, I don't

3    see them as issues.

4    Q    Well, let me change to the same

5    margin calls with Westwood Partners that you

6    had with IFL.

7    MR. SEAR:  Objection to the form.

8    Answer as best that you can.

9    A    I can't give you a precise count,

10   so I couldn't say if it was exact.

11   Q    Did you have similar margin calls?

12   A    Um, merely an assumption, I would

13   assume so, but not -- I wouldn't say that I

14   can absolutely, factually say, you know, what

15   the numbers were, whether it was ten, twenty,

16   thirty, fifty or two.

17   Q    All right.  Point D, we discussed

18   that before about full disclosure of

19   positions.  Did you ever disclose your

20   positions to IAM while trading for them or

21   trading for IFL?

22   MR. SEAR:  Objection to the form.

23   Answer as best that you can.

24   A    Did I disclose them?

25   Q    That's correct.

ZANGER                                                    57

2    that I would harm IFL.

3         Q    You are done with your answer?

4         A    I believe so.

5         Q    You never threatened to drain the
6    fund?

7         A    I don't have that recollection.

8         Q    Let's turn to November of 2006.
9    You had a day trading call on November 30th of
10   2006; is that correct?

11        A    What date was that?

12        Q    November 30th.

13        A    Of 2006?

14        Q    Yes.

15        A    A day trading call on
16   November 30th?

17        Q    Yes.

18        A    There was a day trading call.

19        Q    And you chose not to cover that
20   day trading call; is that correct?

21             MR. SEAR:   Objection to the form.
22        Answer it as best that you can.

23        A    Yeah, I chose not to send in
24   payment for that call.

25        Q    And the reason that you chose not

ZANGER                                        63

1

2          documents from that fund and we were

3          told that there are no trading records

4          for it.

5               Q      Let me ask you this:  Do you have

6     a fund administrator for Westwood?

7               A      I believe so.

8               Q      Who is that?

9               A      Goldman Sachs.

10              Q      Does Westwood have an attorney?

11              A      Not really.

12              Q      Who handles marketing for

13    Westwood?

14              A      Nobody.

15              Q      Do you have any trading records

16    for Westwood Capital Partners from 2004 to

17    2006?

18              A      I don't believe in the existence

19    that I can recall.

20              Q      Did Westwood have any margin calls

21    in 2004 as a result of your trading?

22              A      I can probably say that it did.

23              Q      Do you know how many?

24              A      I really have no idea.

25              Q      Were they covered on time?

ZANGER                                        64

1

2          A       Um, from what I can remember, they

3     were.

4          Q       Were there any that were not

5     covered?

6          A       None that I remember.

7          Q       Did you ever describe IFL as your

8     offshore fund?

9          A       I never described, that I can

10    recall, IFL as my offshore fund.

11         Q       Did you ever discuss with a

12    potential investor the benefits of Westwood as

13    opposed to IFL or vice versa?

14         A       I don't recall ever discussing a

15    "benefit" to an individual.

16         Q       Let's turn to IFL.  While you were

17    working with IFL, would you say that you took

18    your business and professional obligations

19    seriously?

20         A       Very seriously.

21         Q       Would you say that you

22    characterized the way that you handled

23    yourself professionally?  Would you say that

24    you were sort of professional in your

25    demeanor?

# Exhibit C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**INDEPENDENT ASSET MANAGEMENT**
**LLC and OLA HOLMSTROM,**

                    **Plaintiffs,**

    **- against -**

**DANIEL ZANGER,**

                    **Defendant.**

**1:07-CV-06431-JSR**

**ECF**

## <u>PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS</u>

Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure and Local Rules 26.2 and 26.3 of this Court, Plaintiff Independent Asset Management LLC ("IAM") hereby requests that Defendant Daniel Zanger ("Zanger") produce for IAM's inspection and copying the documents described below within thirty days after service hereof.

These document requests are continuing. If at any time after service of answers hereto, and prior to the trial of this action, Defendant obtains or becomes aware of additional information pertaining to any of these document requests, the disclosure of which may be required pursuant to Rule 26(e) of the Federal Rules, Defendant shall, within thirty days, and in no event later than five days before trial, serve upon the undersigned such additional information and documents.

1

## INSTRUCTIONS

A.      Whenever a request calls for information which is not available to you in the form requested, but is available in another form or can be obtained, at least in part, from other data in your possession, so state and either supply the information requested in the form in which it is available or supply the data from which the information requested can be obtained.

B.      Zanger shall produce all documents in his possession, custody or control, including documents in the possession of those purporting to act or to have acted on behalf of Zanger or those who may have obtained information for or on behalf of Zanger in regard to the subject matter of this case.

C.      Each and every document request shall be construed independently. No request shall be construed by reference to any other request if the result is a limitation of the scope of the response to such a request.

D.      If Zanger objects to any request, or part thereof, Zanger must state with specificity all grounds for objecting and respond to the request to the extent that Zanger does not object.

E.      Each document request shall be set forth separately and shall be accorded a separate response. Each response shall first set forth verbatim the document request to which it is responsive, followed by Zanger's response.

F.      No part of a document request shall be left unanswered merely because an objection is interposed to another part of the document request.

2

G.    If Zanger is unable to answer any document request, the reasons for IAM's inability to answer shall be separately stated in detail for each document request.

H.    This Request is continuing in nature. Zanger must supplement its responses to this Request as and when additional responsive documents become known or available to Zanger prior to trial.

## DEFINITIONS

In addition to the definitions contained in Rule 26.3 of the Local Civil Rules, the following definitions and instructions shall apply to each of the Interrogatories:

A.    "BFS" means Butterfield Fund Services, IFL's fund administrator.

B.    "Business relationship" means any joint venture, partnership, employment relationship, either as an employer or an employee, and any other type of similar relationship, including relationships with any brokers, clearing houses, and any other trading or execution related service providers.

C.    "Communication" means shall include without limitation emails, letter correspondence, instant messages, etc.

D.    "Educational institution" means any school, college, university, or other place of learning.

E.    "IFL" means The Independent Fund Ltd., the fund managed by Zanger.

F.    "Lawsuit" means include civil complaints, arbitration, mediations, as well as complaints filed by and investigations commenced by the SEC, FINRA, the NYSE, NASD, and any other regulatory or self-regulatory authority.

3

## REQUESTS FOR DOCUMENT PRODUCTION

1.      Any and all communications between Zanger and IAM.

2.      Any and all documents memorializing communications between Zanger and IAM.

3.      Any and all communications between Zanger and BFS.

4.      Any and all documents memorializing communications between Zanger and BFS.

5.      Any and all communications between Zanger and the Prime Broker.

6.      Any and all documents memorializing communications between Zanger and the Prime Broker.

7.      Any and all communications between Zanger and Ola Holmstrom.

8.      Any and all documents memorializing communications between Zanger and Ola Holmstrom.

9.      Any and all communications between Zanger and Jeff Robertson.

10.     Any and all documents memorializing communications between Zanger and Jeff Robertson.

11.     Any and all communications involving Zanger with respect to the subject matter of this litigation, IAM, BFS, Prime Broker, and/or Holmstrom.

12.     Any and all documents memorializing communications involving Zanger with respect to the subject matter of this litigation, IAM, BFS, the Prime Broker, and/or Holmstrom.

4

13. All documents concerning the payment or other transfer of money or other assets between and involving Zanger, IAM, and IFL.

14. All documents concerning Zanger's qualifications as presented to IAM prior to and during Zanger's relationship with IAM.

15. All documents regarding margin calls, day trading calls, and Zanger's covering of margin calls.

16. All documents relating to the Zanger's attendance at, graduation from, and disciplinary actions at any educational institution, and any other documents relating to Zanger's education.

17. All documents relating to any and all of Zanger's business relationships.

18. All documentation relating to all of Zanger's sources of employment.

19. All documents relating to any disciplinary action, investigation, legal matter, lawsuit, mediation, arbitration, or any potential legal controversy that Zanger has been involved in, as a plaintiff, defendant, respondent, or any other party.

20. All documents relating to Zanger's securities experience, dating back to at least 1989, when, upon information and belief, Zanger began trading securities.

21. All documents relating to accounting records produced by Zanger, or on Zanger's behalf.

22. All documents relating to filings with the Internal Revenue Service.

23. All documents relating to filings with any regulatory or self-regulatory body, including, but not limited to, the U.S. Securities and Exchange Commission, FINRA, NASD, and the New York Stock Exchange.

5

24.    All documents representing published works of Zanger.

25.    All documents concerning or indicating Zanger's knowledge of Victory Lane.

26.    All documents allegedly supporting or relied upon by Zanger in connection with the allegations set forth in Zanger's Answer.

27.    All documents allegedly supporting or reflecting the calculation of alleged damages set forth in the Zanger's counterclaims.


Dated:    New York, New York                  Respectfully submitted,
          January 13, 2008


                                             By: /s/ Craig Stuart Lanza
                                             Craig Stuart Lanza (CL-2452)
                                             John Balestriere (JB- 3247)
                                             **BALESTRIERE PLLC**
                                             225 Broadway, Suite 2700
                                             New York, NY 10007
                                             Telephone 212-374-5404
                                             Email:clanza@balestriere.net
                                             *Attorneys for Plaintiffs*

# Exhibit D

```
                                  mar 1 06 im
gbszele (10:59:59 AM): Dan - you saw the 500k in?
chartpattern (11:00:22 AM): no
chartpattern (11:00:31 AM): is it
gbszele (11:00:48 AM): should be - ask Gia if you talk to her
gbszele (11:01:05 AM): are you in Miami or NY?
chartpattern (11:01:09 AM): good idea for you to know for sure
chartpattern (11:01:23 AM): let me know when u know
gbszele (11:01:42 AM): i was told it should be there today - of course i will be
checking too
chartpattern (11:01:57 AM): let me know when its there
gbszele (11:02:37 AM): of course
gbszele (11:02:46 AM): are you in nyc?
chartpattern (11:02:52 AM): y
chartpattern (11:02:59 AM): leave tomorrow
gbszele (11:03:34 AM): to Miami?
chartpattern (11:03:45 AM):
http://detachedtrader.com/2006/02/detached-traders-list-of-5-traders.html
chartpattern (11:03:49 AM): you see this
chartpattern (11:05:40 AM): http://www.chartpattern.com/danboat/danboat.html
gbszele (11:07:21 AM): one sec -on phone
chartpattern (11:07:25 AM): k
gbszele (11:18:51 AM): excellent !!!
chartpattern (11:19:03 AM): :D
gbszele (11:19:06 AM): good for marketing - i think
gbszele (11:19:42 AM): call you later from office - i'll be in Miami for that
wedding..are you down there Fri/Sat?
chartpattern (11:20:18 AM): yes
gbszele (11:23:26 AM): how did you get into that article?
chartpattern (11:23:32 AM): have no idea
gbszele (11:23:40 AM): you are compared to legends
gbszele (11:23:46 AM): worth billions
chartpattern (11:23:54 AM): a trader here in NYC sent it to me as well as 800K for
my fund
chartpattern (11:24:01 AM): :D
gbszele (11:24:08 AM): we have some work to do to catch you up
gbszele (11:24:17 AM): who is the trader/
chartpattern (11:24:20 AM): I got some money from a guy Paul Packer
chartpattern (11:24:25 AM): you know this guy
chartpattern (11:24:36 AM): Globisfund
gbszele (11:24:49 AM): how did he hear about you - i know him
chartpattern (11:25:00 AM): from my trader frind
chartpattern (11:25:14 AM): I told him I have two funds
chartpattern (11:25:21 AM): one on and one off
chartpattern (11:25:31 AM): he chose the onshore
gbszele (11:25:32 AM): what did he say about that/
chartpattern (11:25:53 AM): that is wanted the on
chartpattern (11:25:56 AM): that was all
gbszele (11:26:16 AM): he put 800k into westwood/
gbszele (11:26:17 AM): ?
chartpattern (11:26:29 AM): he said he has plenty of money offshore and was only
interested in the on shore at this time
chartpattern (11:26:46 AM): no the trader raised 800k for me total
chartpattern (11:26:52 AM): paul was 200K
chartpattern (11:26:56 AM): another 100K
gbszele (11:26:57 AM): exceelent - it's all good to grow you
chartpattern (11:26:59 AM): another 250K
gbszele (11:27:00 AM): exceelent
chartpattern (11:27:04 AM): yup
gbszele (11:27:04 AM): excellent
chartpattern (11:27:17 AM): I raised 1 mil in feb
gbszele (11:27:21 AM): who is the trader - good for me to know him for marketing q's
chartpattern (11:27:30 AM): josh
chartpattern (11:27:39 AM): at Bass Trading
```

IAM 006392

mar 1 06 im
gbszele (11:27:52 AM): can you give me his contact info?
chartpattern (11:28:17 AM): I only have his email address
chartpattern (11:28:19 AM): and IM
gbszele (11:28:28 AM): that's good
gbszele (11:28:52 AM): Our Arab guys are interested – maybe in April they start with 5 -10 million
chartpattern (11:29:00 AM): good
gbszele (11:29:17 AM): can you ask Josh to call me or give me his email?
chartpattern (11:29:24 AM): ok
chartpattern (11:29:37 AM): not now
chartpattern (11:29:49 AM): I have a radio program in 3 minutes
gbszele (11:31:35 AM): i'll call you later
chartpattern (11:32:15 AM): k

IAM 006393