# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INDEPENDENT ASSET MANAGEMENT LLC,<br><br>Plaintiff,<br><br>- against -<br><br>DANIEL ZANGER,<br><br>Defendant. | 1:07-CV-06431-JSR<br><br>FIRST SUPPLEMENT TO PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES |

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Procedure, and the Local Civil Rules for the Southern District of New York, Plaintiff Independent Asset Management LLC ("IAM" or "Plaintiff"), by its attorneys, Balestriere Lanza PLLC, submit this First Supplement to Plaintiff's Response to Defendant Daniel Zanger's ("Zanger" or "Defendant") First Set of Interrogatories, under oath, upon information and belief as follows.

## GENERAL STATEMENT AND OBJECTIONS

1. Plaintiff reiterates each and every general and specific objection to Defendant's Interrogatories contained in Plaintiff's initial response as if fully contained herein.

2. Plaintiff is continuing to search for information responsive to Defendant's requests and therefore reserves the right to supplement its responses to each interrogatory with additional information if and when such information becomes

available to Plaintiff's counsel. Plaintiff also reserves the right to object to the future disclosure of any such information.

## DEFINITIONS

3. The "Fund Administrator" means Butterfield Fund Services (Bermuda), the administrator for IFL.

4. "IAM" means Plaintiff Independent Asset Management LLC, the entity that served as fund manager for IFL.

5. "IFL" means the Independent Fund Limited, the hedge fund operated by IAM for which Defendant Zanger served as the trading manager.

6. The "Prime Broker" means Goldman Sachs, the entity that served as IAM's prime brokerage firm in connection with IFL.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 2**

Provide the computation of each category of damages alleged.

**SUPPLEMENT TO RESPONSE TO INTERROGATORY NO. 2**

Due to the inseverable nature of the effect of Defendant's breach of contract and breach of fiduciary duty, Plaintiff objects to this Interrogatory to the extent that it requests a separate calculation of damages for each of Plaintiff's causes of action. However, subject to and without waiving any objection, Plaintiff submits the following computations for the compensatory, economic damages as alleged in its Complaint:

**Lost Fees:** As discussed below, because Defendant failed to fulfill his obligations under the five year Agreement, Plaintiff lost the opportunity to earn both management

2

fees and performance fees for the AUM and the returns on IFL's investments for the time remaining under the term of the Agreement.

**Lost Management Fees:** IAM was entitled to an annualized 1% of AUM for the term of the Agreement. Pursuant to Defendant's suggestion to place $50 million into IFL, and pursuant to Holmstrom's $450,000 investment, IAM lost a minimum of $1,513,500, which excludes the likelihood that IAM would attract additional investors.

**Lost Performance Fees:** IAM was entitled to an annualized 5% of all returns. Pursuant to Defendant's placement of $50 million and Holmstrom's investment into IFL, and in consideration of Defendant's historical trading success, IAM lost a minimum of $1,891,875, which excludes the likelihood that IAM would attract additional investors.

**Lost Trading Revenue:** Pursuant to Defendant's failure to place the required amount into IFL in compliance with the Agreement, based on actual trading records up to the point that Defendant fully subscribed to IFL in the amount of $5 million, which occurred on or about March 2, 2005, IAM lost approximately $100,000.

**Information Technology Costs:** In connection with the management of IFL, IAM incurred approximately $20,000 costs in implementing the information technology necessary to operate a hedge fund. Because Defendant's actions shut down IFL, IAM was unable to realize the value of information technology investment.

**IAM's Unpaid Debts:** In connection with Defendant's actions, IAM incurred approximately $690,595 in debts which were rendered unable to be repaid due to IFL being shut down by the Prime Broker and the Fund Administrator.

**IAM's Potential Liability:** IAM faces potential legal liability to other IFL investors in the amount of $450,000.

**Moving Costs:** Because IFL was shut down, IAM was forced to vacate its offices and, in so doing, incurred moving costs of approximately $5,000.

**General Damage to IAM:** Because Defendant's actions shut down IFL, IAM suffered tremendous reputational damage, which encumbered IAM's ability both to attract new investors to IFL and, subsequent to termination by the Fund Administrator and the Prime Broker, to secure any other relationship with other fund administrators or prime brokers. IAM was damaged in an amount not less than $10 million.

Dated: New York, New York
February 23, 2008

Respectfully submitted,

By: /s/ Craig Stuart Lanza
Craig Stuart Lanza (CL-2452)
John Balestriere (JB-3247)
**BALESTRIERE LANZA PLLC**
225 Broadway, Suite 2700
New York, NY 10007
Telephone 212-374-5404
Email: clanza@balestriere.net
*Attorneys for Plaintiffs*

4